# EXHIBIT E

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| LAW OFFICES OF TODD W. MUSBURGER, LTD. | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) ) | |
| GARRY MEIER, an individual, | ) ) | |
| Defendant. | ) ) | |

## VERIFIED COMPLAINT AND JURY DEMAND

Plaintiff the Law Offices of Todd W. Musburger, Ltd., by and through its attorneys McGuire Woods, LLP, as for its Complaint and Jury Demand against defendant Garry Meier, states as follows:

## PARTIES

1. Plaintiff the Law Offices of Todd W. Musburger Ltd. ("Plaintiff" or "Musburger") is an entertainment law firm that focuses on negotiating and drafting personal services contracts for broadcasters, writers, performers and directors, as well as negotiating and drafting contracts for entertainment projects in development. Plaintiff's offices are located at 142 East Ontario Street, Suite 500, Chicago, Illinois.

2. Defendant Garry Meier ("Defendant" or "Meier") is an on-air radio personality who formerly co-hosted the radio program commonly referred to as the "Roe and Garry" show with fellow on-air personality Roe Conn ("Conn"). Until February 19,

2004, Meier and Conn hosted the "Roe and Garry" afternoon talk show on WLS-AM radio ("WLS") in Chicago.

## JURISDICTION

3. Jurisdiction over Meier exists pursuant to 735 ILCS 5/2-209(a)(7) because Meier entered into a contract with Plaintiff in Illinois, the performance of which was to occur in Illinois.

## FACTUAL BACKGROUND

### A. Plaintiff and Meier Enter into a Contract.

4. In or about January 1998, Meier met with Plaintiff and requested that Plaintiff serve as Meier's agent and exclusive legal representative for the negotiating and drafting of Meier's multi-million dollar agreements with the entertainment fields of radio and television.

5. Consequently, on February 6, 1998, Plaintiff and Defendant entered into a contract (the "1998 Agreement") whereby Plaintiff agreed to provide its services as Meier's exclusive representative for negotiating and drafting of Meier's agreements in the entertainment fields of radio and television. Plaintiff also agreed to provide advice and counseling as needed, and to use its best efforts to locate other broadcast outlets that would be interested in Meier's services.

6. In return, Meier agreed to pay Plaintiff the sum of five (5) percent of the gross amount of the contracts negotiated by Plaintiff on Meier's behalf. Additionally, Meier agreed to pay all expenses incurred by Plaintiff on behalf of Defendant.

B. **Plaintiff's Representation of Meier.**

7. Immediately upon the execution of the 1998 Agreement, Musburger began intensive negotiations with WLS regarding the renewal of Meier's then contract with the radio station.

8. After months of rigorous negotiations, Musburger successfully negotiated a five-year (5) contract between Meier and WLS, in which Meier provided his services as a radio talk show host, and in exchange WLS paid Meier a significant signing bonus, large base salary that increased each year, and a yearly bonus, the amount of which depended upon the ratings of the "Roe and Garry" show.

9. The term of the contract began February 19, 1999 and expired on February 18, 2004. A true and accurate copy of the February 19, 1999 contract between Meier and WLS is attached hereto and incorporated as Exhibit A.

10. Meier was very satisfied with Musburger's achievements with respect to negotiating and securing the contract between Meier and WLS. In fact, in a March 1, 1999 letter to Musburger, Meier's wife, Cynthia Fircak ("Fircak"), who is intimately involved in her husband's career, stated:

> Once again, please know that [Meier and I] could never have completed [the contract between Meier and WLS] without your diligent efforts and expertise. It has been and I know will continue to be a pleasure to work with someone like you with that rare combination of kindness of heart and strength of mind. Your staff reflects that same integrity.

A true and accurate copy of Fircak's March 1, 1999 letter to Musburger is attached hereto and incorporated as Exhibit B. Musburger performed his work for Meier with the highest degree of attention and professionalism.

## C. Negotiations for a Renewal Contract for Meier.

11. In or about September 2002, which was approximately eighteen (18) months before Meier's contract with WLS was set to expire, Meier and Fircak once again hired Musburger to negotiate a renewal contract with WLS on behalf of Meier. Additionally, Meier and Fircak instructed Musburger to explore and investigate potential alternative deals with competing broadcast outlets interested in Meier's services.

12. Around the same time, Meier and Fircak also asked Musburger to contact Conn's agent, George Hiltzik ("Hiltzik"), and negotiate an informal agreement with him whereby Musburger would take the lead with respect to the negotiations with WLS and other broadcast entities, and would negotiate on behalf of both Meier and Conn.

13. With respect to the renewal contract with WLS, Meier and Fircak sought to triple Meier's salary and instructed Musburger to negotiate with WLS for such an increase.

14. While Musburger communicated to Meier and Fircak that he could not guarantee such a dramatic increase in salary for Meier, he agreed to begin negotiating with WLS. Furthermore, Musburger agreed to investigate other possible agreements with competing radio stations as both an alternative to WLS and to generate competitive interest.

15. At Meier's request, Musburger also contacted Hiltzik who agreed to allow Musburger to take the lead in negotiating a renewal contract for both Meier and Conn.

16. From September 2002 until mid September 2003, Musburger spent well over two hundred (200) hours aggressively and effectively negotiating with WLS and other radio stations for a renewal contract that was satisfactory to Meier. In doing so,

Musburger spent a large amount of time researching radio ratings and salaries for similar radio talk show hosts, developing comprehensive presentations for WLS and other radio stations, meeting with WLS officials and officials from other radio stations, and drafting various proposals for WLS.

17.     Through Musburger's diligent work, by early September 2003, WLS had provided Meier with a number of contractual offers, and three other stations had expressed interest in pursuing employment possibilities for Meier. In particular, WLS offered Meier a ten (10) year renewal contract pursuant to which Meier would be paid over $12,000,000. WLS' offer was more than double the salary Meier received under his prior contract with WLS.

### D.    Meier Terminates Plaintiff.

18.     Despite the fact that Musburger secured a firm offer from WLS for a renewal contract for Meier, on September 11, 2003, Meier informed Musburger that he wanted to discontinue all negotiations for one week and instructed Musburger to terminate all efforts during that time. Meier then requested a meeting with Musburger on September 23, 2003.

19.     On September 22, 2003, Meier sent Musburger a letter terminating Musburger as Meier's agent and legal representative. In the letter, Meier accused Musburger of breaching the attorney client privilege by speaking to Hiltzik and making untruthful statements. A true and accurate copy of the September 22, 2003, letter is attached hereto and incorporated as Exhibit C. At no time did Musburger make any untruthful statements, nor did he share any privileged material with Hiltzik or anyone else.

20. On January 23, 2004, Musburger sent Meier an accounting of the services provided to Meier by Musburger in connection with the negotiating of a renewal contract with WLS and alternative broadcast stations. The invoice totaled $92,750.00, which amounted to two hundred and ten (210) hours of work performed by Musburger – far less hours than Musburger actually performed for Meier. A true and accurate copy of the January 23, 2004 invoice is attached hereto and incorporated as Exhibit D.

E. **Meier Refuses to Pay Musburger for Musburger's Services.**

21. To date, Meier has failed and refused to pay any portion of the $92,750.00 rightfully owed to Musburger. In fact, in a letter dated February 27, 2004, Meier's attorney, Michael Pedicone ("Pedicone"), threatened to file counterclaims against Musburger if Musburger filed an action against Meier to recover the $92,750.00. Specifically, Pedicone stated:

> [I]f Mr. Musburger is contemplating filing a civil action against Mr. Meier for his attorney fee claim, I would fully expect that [Meier] would be filing and proceeding with a counterclaim against him . . .

A true and accurate copy of Pedicone's letter of February 27, 2004 is attached hereto and incorporated as Exhibit E.

## COUNT I
## BREACH OF CONTRACT

22. Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in paragraphs 1 thought 21 of this Complaint.

23. In September 2002, Plaintiff and Defendant entered into a contractual relationship whereby Musburger agreed to negotiate a renewal contract for Meier with WLS and also agreed to explore and investigate potential alternative deals with competing broadcast outlets interested in Meier's services.

24. In return, Meier agreed to pay Musburger for his services.

25. Musburger diligently negotiated with WLS and successfully generated competitive interest from other radio stations, thereby fully performing all of its obligations under the contract.

26. Meier breached his contractual obligations to Musburger by failing and refusing to pay the $92,750.00 rightfully owed to Musburger.

27. As a direct and proximate cause of Meier's breach, Musburger has suffered damages, including but not limited to, actual damages in excess of $92,750.00, plus incidental and consequential damages, the value of which is to be determined.

## COUNT II
## QUANTUM MERUIT

28. Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in paragraphs 1 thought 21 of this Complaint.

29. Plaintiff provided valuable services to Meier.

30. By accepting and retaining the services provided by Plaintiff, it would be inequitable under the circumstances of this case for Meier to retain the value of those services and benefits without payment for the value thereof.

31. Through the acceptance of these services and benefits, Meier had knowledge and appreciation of same, the value of which is in excess of $92,750.00. Plaintiff has not been adequately compensated for the services and benefits provided to Meier.

32. Plaintiff is entitled to reasonable compensation for the value of the services and benefits supplied to Meier.

## COUNT III
## UNJUST ENRICHMENT

33. Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in paragraphs 1 thought 21 of this Complaint.

34. As direct and proximate cause of Meier's failure to pay to Plaintiff for the services and benefits bestowed upon Meier, Meier has been unjustly enriched in an amount to be determined, but that is in excess of $92,750.

WHEREFORE, Plaintiff the Law Offices of Todd W. Musburger respectfully requests that this Court enter judgment in favor of Plaintiff and against Meier, and award Plaintiff actual damages in an amount in excess of $92,750.00, plus incidental and consequential damages, and attorney fees and costs.

### A TRIAL BY JURY IS DEMANDED

Respectfully submitted:

LAW OFFICES OF TODD W. MUSBURGER, LTD.

By: _____
One of its attorneys

Thomas R. Mulroy
Laura C. Scotellaro
McGuire Woods LLP
77 West Wacker, Suite 4400
Chicago, Illinois 60601
Telephone: (312) 641-2741
Facsimile: (312) 641-2742

## VERIFICATION

I, Todd W. Musburger of The Law Offices of Todd W. Musburger, Ltd., under the penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, certify that the allegations set forth in this Verified Complaint are true and correct to the best of my knowledge, information and belief, except as to matters herein stated to be on information and belief, and as to such matters, I certify as aforesaid that I verily believe the same to be true.

Executed: April 1, 2004

_____
Todd W. Musburger