# EXHIBIT G

50606

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

LAW OFFICES OF TODD W.
MUSBURGER,

   Plaintiff/Counter-Defendant,

  v.

GARRY MEIER,

   Defendant/Counter-Plaintiff.

Case No. 04 L 003760

## DEFENDANT GARRY MEIER'S MOTION FOR LEAVE TO FILE THIRD AMENDED COUNTERCLAIM AND THIRD PARTY COMPLAINT

Now comes Defendant/Counter Plaintiff, GARRY MEIER ("MEIER"), by and through his attorneys, DICKER & DICKER and THE LAW OFFICES OF JAMES A. SMITH, and, pursuant to 735 ILCS 5/2-406 and 735 ILCS 5/2-616, prays for leave:

a.  To file a Third Amended Counterclaim against TODD W. MUSBURGER, LTD. ("MUSBURGER"), d/b/a LAW OFFICES OF TODD W. MUSBURGER, LTD., adding a new count, Count VI, alleging that MUSBURGER engaged in excessive, improper and fraudulent billing, and

b.  To file a Third Party Complaint against BRIAN MUSBURGER, with summons to issue, for aiding and abetting in the preparation of billing which was excessive, improper and fraudulent.

Copies of the proposed pleadings to be filed are attached hereto as Exhibits A and B, respectively.

In support of this motion, MEIER states as follows:

1.  MUSBURGER filed this action against MEIER to recover fees allegedly due and owing for services rendered in the course of an unsuccessful effort by MUSBURGER to negotiate, as MEIER"s agent, a follow-up agreement to the personal services contract between MEIER, a well-

known Chicago on-air radio personality, and MEIER's then employer, WLS-AM ("WLS") Talk Radio 98, which was set to (and did) expire in February, 2004.

2.    MEIER discharged MUSBURGER as his agent on September 22, 2003.

3.    On January 23, 2004, prior to the filing of this action, MUSBURGER sent to MEIER a letter enclosing a copy of a Statement demanding payment for legal services supposedly rendered by MUSBURGER to MEIER prior to September 22, 2003.  The Statement, which was on the letterhead of the Law Offices of Todd W. Musburger, Ltd., provided in relevant part, as follows:

"FOR PROFESSIONAL SERVICES

"Period ending September 22, 2003:

| | |
|---|---|
| 170 hours @ $475.00 per hour | $80,750.00 |
| 40 hours @ $300.00 per hour | $12,000.00 |
| BALANCE DUE: | $92,750.00 |

4.    Neither the Statement nor the accompanying letter disclosed that the line reading "40 hours @ $300.00 per hour - $12,000.00" was, in fact, a claim for services allegedly performed for MEIER by Brian Musburger, Todd Musburger's son, a non-attorney with whom MEIER had no separate or independent contractual relationship.

5.    At no point prior to the commencement of this litigation did MUSBURGER disclose to MEIER that the line reading "40 hours @ $300.00 per hour - $12,000.00" relates exclusively to services allegedly performed for MEIER by BRIAN MUSBURGER and MEIER did not learn of this fact until the depositions of Todd Musburger and Brian Musburger were taken in this litigation.

6.    After reviewing the depositions of Todd and Brian Musburger, counsel for MEIER have concluded:

-2-

- That there was no reasonable basis for the inclusion of a separate charge of $12,000.00 in the Statement for the services supposedly rendered by BRIAN MUSBURGER;

- That for MUSBURGER to seek a separate recovery for Brian Musburger's charges, in the absence of any agreement by MEIER to pay for those charges or any good-faith basis for imposing those charges on MEIER, was a violation by MUSBURGER and Todd Musburger of his fiduciary obligations to MEIER;

- That the Statement is, when fully understood, an exercise in proposed fee-splitting between a lawyer and non-lawyer, barred by Rule 5.4 of the Rules of Professional Conduct, and

- That Todd Musburger is liable for the damages sustained by MEIER as a result of the bringing of this claim for fraudulent and improper billing, as principal, and Brian Musburger is liable as an aider and abetter.

7.     The claim against BRIAN MUSBURGER could be filed as an independent action, but would clearly be subject to a motion to consolidate, which motion should be granted in the interests of judicial economy.

8.     735 ILCS 5/2-616(a) provides:

At any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as plaintiff or defendant, dismissing any party, changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim.

Additionally, 735 ILCS 5/2-406 provides, in pertinent part:

If a complete determination of a controversy cannot be had without the presence of other parties, the court may direct them to be brought in. If a person, not a party, has an interest or title which the judgment may affect, the court, on application, shall direct such person to be made a party.

The power to allow amendments should be freely exercised so that litigants may fully present their alleged cause or causes of action. *Sigma Companies, Inc. v. Regas*, 255 Ill.App.3d 857, 627 N.E.2d 256 (1st Dist. 1993).

WHEREFORE, Defendant/Counter-Plaintiff, GARRY MEIER, respectfully prays that this Honorable Court grant leave to him to file his Third Amended Counterclaim, *instanter*, his Third Party Complaint joining BRIAN MUSBURGER as a party defendant to said Counterclaim, with summons to issue, and for such other and further relief as may be just and equitable.

Respectfully submitted,

GARRY MEIER,

By: _____
    One of His Attorneys

Steven M. Dicker
DICKER & DICKER
300 W. Adams Street, Suite 330
Chicago, IL 60606
Phone: 312/853-3485
Fax:    312/853-3489
Cook County ID No. 52742

James A. Smith
LAW OFFICES OF JAMES A. SMITH
300 W. Adams Street, Suite 330
Chicago, IL 60606
Phone: 312/372-4952
Fax:    312/372-0609
Cook County ID No. 50606

Attorneys for Defendant/Counter-Plaintiff GARRY MEIER

-4-

50606

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

LAW OFFICES OF TODD W.           )
MUSBURGER,                        )
                                 )
        Plaintiff/Counter-Defendant,  )
                                 )
    v.                           )    Case No. 04 L 003760
                                 )    Calendar Y
GARRY MEIER,                     )
                                 )
        Defendant/Counter-Plaintiff.  )

## DEFENDANT GARRY MEIER'S
## THIRD AMENDED COUNTERCLAIM

Now comes Defendant/Counter Plaintiff, GARRY MEIER, by and through his attorneys,

DICKER & DICKER, and THE LAW OFFICES OF JAMES A. SMITH, and as and for this Third

Amended Counterclaim against TODD W. MUSBURGER, LTD., d/b/a LAW OFFICES OF TODD

W. MUSBURGER, LTD.. states as follows:

### COUNT I - PROFESSIONAL NEGLIGENCE

1.    GARRY MEIER ("MEIER") is an on-air radio personality who most recently co-

hosted an afternoon radio program known as the "Roe and Garry" show with Roe Conn ("Conn")

on WLS-AM radio ("WLS") in Chicago, Illinois. MEIER last hosted the Roe and Garry show on

January 9, 2004. MEIER has had a long and successful and award winning radio career in the

Chicagoland area.

2.    TODD W. MUSBURGER, LTD. ("MUSBURGER, LTD."). is an Illinois

professional corporation organized for the purpose of the practice of law. It has done business as

LAW OFFICES OF TODD W. MUSBURGER, LTD. MUSBURGER, LTD.. holds itself out as an

entertainment law firm that focuses on negotiating and drafting personal services contracts for


EXHIBIT
A

broadcasters, writers, performers and directors.

3.    Todd W. Musburger ("Musburger") is and was, at all relevant times, an attorney licensed to practice law in the State of Illinois, and was, at all relevant times, the principal of MUSBURGER, LTD.

4.    In or about January 1998, while employed as an on-air radio personality at WLS-AM radio in Chicago, MEIER retained Musburger's services as MEIER's agent and attorney in connection with negotiating a renewal of MEIER's agreement with WLS. MEIER's agreement with WLS was to expire on February 18, 1999.

5.    The terms and conditions of MEIER's retention of Musburger were set forth in a certain letter agreement dated February 6, 1998 (the "1998 Musburger Agreement"), a true and exact copy of which is attached hereto as Exhibit A.

6.    Under the 1998 Musburger Agreement, Musburger agreed to serve as MEIER's agent and exclusive legal representative for the negotiating and drafting of MEIER's agreements in the entertainment fields of radio and television, in exchange for a fee of five percent (5%) of the gross amount of any compensation payable to MEIER under each such agreement.

7.    In or about February 1999, MEIER entered into an agreement (the "1999 WLS Agreement") covering his services with WLS for the period from February, 1999 through February, 2004. Musburger represented MEIER in the negotiation of the 1999 WLS Agreement.

8.    In or about January 2003, TODD W. MUSBURGER, LTD. began work on MEIER's anticipated contract negotiations with WLS for a follow-on or renewal contract to the 1999 WLS Agreement, which was set to expire February 18, 2004.

9.    Although MEIER and Conn co-hosted the same afternoon radio show on WLS at all relevant times prior to January of 2004, they had separate contracts with WLS, and were represented,

in their dealings with WLS, by separate agents.  At all relevant times prior to September 22, 2003, MEIER was represented by Musburger, while Conn was represented by George Hiltzik of N. S. Bienstock, in New York City.

10.     Based on their experience in the negotiation of the 1999 WLS Agreement, MEIER and Musburger were aware that they were more likely to achieve the results they sought from WLS if they could present a unified front with Conn.  They were also aware that WLS might elect to pursue a strategy of "divide and conquer" with respect to MEIER and Conn.  Accordingly, at the end of May, 2003, while negotiations between MEIER and WLS for a follow-up contract to the 1999 WLS Agreement were still pending, MEIER directed Musburger to propose an agreement to Conn pursuant to which neither MEIER nor Conn would enter into an employment contract with WLS without the other's agreement.

11.     Exhibit B attached hereto is the draft of the proposed agreement between MEIER and Conn which Musburger drafted and sent to Conn's agent, George Hiltzik, for his approval and review, pursuant to MEIER's direction.

12.     MEIER is informed and believes that on or about May 29, 2003, Musburger did, in fact, send the document attached as Exhibit B hereto to Conn, through his agent, George Hiltzik, for his approval and Conn's signature.

13.     On a number of occasions between the end of May, 2003 and his discharge by MEIER on September 22, 2003,  Musburger represented to MEIER that the agreement with Conn had been "taken care of" or words to that effect, indicating to MEIER that Conn had signed the agreement.

14.     In fact, Conn never signed the proposed agreement.

15.     At all relevant times, MUSBURGER, LTD and Musburger owed to MEIER, their client, the following duties, defined by the Illinois Code of Professional Responsibility:

Rule 1.1  Competence

(a) A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation necessary for the representation.

* * * *

Rule 1.3  Diligence

A lawyer shall act with reasonable diligence and promptness in representing a client.

* * * *

Rule 1.4  Communications

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

16.     Between the end of May, 2003 and September 22, 2003, Musburger breached his duties to MEIER, as defined by the foregoing provisions of the  Illinois Code of Professional Responsibility, in one or more of the following respects:

a.     Failed to keep track of the fact that Conn had not, in fact, signed the proposed agreement, due to the lack of any form of "date-up," "follow-up" or "tickler" system in his office, a fact unknown to MEIER until it was disclosed by Brian Musburger in  the course of his deposition on March 31, 2006.

b.     In the alternative, knew and was advised by Conn and/or his agent, George Hiltzik, shortly after May 31, 20032, that Conn was not inclined to sign such an agreement, but did not, at any time, disclose this fact to MEIER.

c.     Affirmatively misrepresented to MEIER that the proposed agreement had been "taken care of" or signed by Conn when he knew that, in fact, it had not been signed by Conn.

17.     Had MEIER been advised between the end of May, 2003 and the time he discharged MUSBURGER on September 22, 2003 that Conn had not signed the proposed

-4-

agreement, he could and probably would have persuaded Conn to sign it.

18.     MUSBURGER did not discover that Conn had not signed the Agreement until after MEIER discharged MUSBURGER on September 22, 2003. By that time, the negotiating situation had changed materially, and MEIER's opportunity to persuade Conn to sign the proposed agreement was substantially reduced.

19.     As matters turned out, WLS did, in the Spring of 2004, submit an offer to Conn alone which Conn accepted, to the exclusion of MEIER from the show.

20.     As a direct and proximate result of MUSBURGER's professional negligence, MEIER became the victim of the very "divide and conquer" strategy which he and Musburger had sought to avoid by having Conn sign the proposed agreement, to MEIER's great personal and financial cost.

WHEREFORE, Defendant/Counter-Plaintiff GARRY MEIER respectfully prays that this Honorable Court grant judgment to him for compensatory damages in an amount in excess of the jurisdictional limit of the Law Division of the Circuit Court of Cook County, the exact sum to be proven by the evidence, together with the costs of this action.

## COUNT II - BREACH OF FIDUCIARY DUTY - DISOBEDIENCE OF CLIENT DIRECTIVES

1 - 8.   MEIER hereby repeats and realleges Paragraphs 1 through 8 of Count I of this Counterclaim as Paragraphs 1 through 8 of this Count II as though fully set forth herein.

9.     On or about August 6, 2003, TODD W. MUSBURGER, LTD. received a written proposal (the "August Proposal") from WLS for a contract renewal for MEIER.

10.     MEIER and Musburger concurred that the August Proposal was unacceptable for a number of reasons.

11.     Shortly after having received the August Proposal, MEIER and Musburger agreed that

their negotiation strategy with WLS would include an absence of contact with Zemira Jones, the President and General Manager of WLS for the time being.

12.    At all relevant times prior to September 10, 2003, this strategy of avoiding contact with Zemira Jones concerning MEIER's renewal remained in effect.

13.    On September 4, 2003, TODD W. MUSBURGER, LTD. sent a new fee agreement to Defendant which contained several new provisions, including the following language:

(a)    We may render similar services to others, including persons of the same general qualifications and eligibility for similar employment, and such representation shall not constitute a violation of our fiduciary or other obligations hereunder.

14.    A true and accurate copy of that proposed fee agreement dated September 3, 2003 is attached hereto as Exhibit C.

15.    MEIER refused to sign the proposed letter agreement which Musburger sent to MEIER on September 4, 2003.

16.    On September 10, 2003, MEIER left the following voice mail message with Musburger:

"Todd this is Garry, hey listen I've been thinking about this and I want to put everything on hold right now. I want you to take the next week and me take the next week, I want to think about all this and how I want to proceed with everything, so I don't want you to meet with anyone or have any further conversations with anyone until I can thoroughly think this through, so if you have anything scheduled with anyone regarding the future contract, I'd like you to cancel that until after next week, you can tell them you have a scheduling conflict, and then I'd like to schedule a time for us to talk on the 23rd after I'd had a time to process this, I haven't discussed this with Roe so I'd appreciate you handling this request with that in mind. You can email Cynthia on the 23rd when you're available to talk. Alright, thanks."

17.    Exhibit D submitted herewith is a true and exact transcript of the voicemail which MEIER left with Musburger on September 10, 2003.

18.    Later on September 10, 2003, Cynthia Fircak sent to Musburger the following email:

"Garry asked me to e-mail you to confirm a message that he left today on your voicemail. I am writing this from his notes to be absolutely clear.

"He wants to take the next week and think about how he wants to proceed with everything. He doesn't want you to meet with anyone or have any further conversations with anyone until he can thoroughly think this through.

"If you have anything scheduled with anyone regarding the future contract, he would like you to cancel that, until after next week, by saying that there is a problem with your schedule or whatever may allow him this time.

"He would like to schedule a time to talk with you the following week—perhaps Tuesday the 23rd in the morning—after he has had time to process this.

"He hasn't discussed this with Roe so he would appreciate you handling this request with that in mind.

"Please let me know if you are available to talk on the 23rd."

19.    Exhibit E attached hereto is a true and exact copy of the e-mail which Cynthia Fircak sent to Musburger on September 10, 2003.

20.    On September 11, 2003, Musburger sent to MEIER and Fircak, by messenger, two letters, the first of which stated as follows:

"As you know, we had a previously scheduled meeting today with Zemira and Mike Packer. It is evident that ABC is poised to finalize an agreement with us in the financial range that Garry is seeking. This would take the program to the highest level ever reached in Chicago radio.

"Again, I do not favor the two-week delay you are seeking. If you wish to talk on the 23rd, I will be pleased to see you. Please let me know what time is best. In the meantime, please be assured that if I am involved in any conversations concerning Garry's future, I will do only what is best to advance his interests. Also, please know that I am available at your convenience any time prior to the 23rd."

21.    Exhibit F attached hereto is a true and exact copy of the first letter Musburger sent to MEIER and Fircak, by messenger on September 11, 2003.

22.     On September 11, 2003, after sending to MEIER and Fircak the letter attached hereto as Exhibit F, Musburger sent to MEIER and Fircak, by messenger, a second letter stating the following:

"I have received your message that you would like me to speak with you on September 23rd to arrange a meeting.

"I am mystified as to the reasons for the delay. As you know, I feel we are in a sensitive time-period where we are nearing a conclusion, and a new deal for you, Garry, whether it is with ABC or one of the interested competitors. As we discussed last week Cynthia, the list is growing smaller and the likelihood of a renewal with ABC is strengthening. I am concerned that any delay in the process is antithetical to your best interests.

"Your avoidance of a personal conversation makes it appear that you are considering terminating our professional relationship. I would be extremely disappointed if that is so, both because I value my association with each of you, but also because of the enormous efforts that we have expended on your behalf. The energy put into this negotiation, which has involved multi-party interest in your show, balancing the restrictions in your present agreement, and finessing the always-difficult ABC management team is no small task. We have met these challenges head on and I can say unequivocally that the work for you has been performed with the highest degree of attention and professionalism, both with WLS and the competition. We have also eagerly advanced the interests of your on-air partnership wherever we could. I am very satisfied with and proud of the work that has been completed to date. We are on the eve of a resolution within your parameters Garry, leading to an agreement which you could fully endorse. You possess a strong bargaining position but the methods employed on your behalf will make the difference between the deal you want and a routine renewal. I feel equal to the task of successfully closing this matter and believe my previous work for you serves as an example of my ability to do so.

"Nevertheless, should you decided to make a change I will of course honor your decision. If you so decide, which again I would find regrettable, all that would be required is for the work that has been completed, including the final steps that have been prepared, to be properly and fully compensated. These amounts are in addition to what is owed for our work under your present ABC agreement. Obviously, this is something you should discuss in detail with a new representative, if one is hired. For many reasons, I hope sincerely that we are not confronted with such a scenario.

"I am sorry that you feel the meetings and conversations that I have scheduled should not be pursued at this time. Unfortunately, I have other business with Zemira Jones scheduled for today. Although I cannot reschedule, I will inform him of your wishes. We are also active with each of the other interested competitors on your list

and my other matters with them cannot be interrupted. However, we will tell them that we need more time in which to discuss your situation. I fear that when I inform them of your decision, they will misunderstand and misinterpret our goals. This could lead to a diminution of interest and negatively affect the negotiating process. George Hiltzik also needs to be completely informed. I am certain that you agree with me that these are but a few of the numerous factors which should keep us from delaying conversations on your behalf.

"I hope we can talk soon. You have made it clear through your choice of email and voice mail that you do not want to talk directly to me at this time. I am disappointed by this but will continue to respect your wishes."

23.     Exhibit G attached hereto is a true and accurate copy of the second letter Musburger sent to MEIER and Fircak, by messenger on September 11, 2003.

24.     On September 11, 2003, Musburger and his son, Brian Musburger, met with Zemira Jones, President and General Manager, of WLS, and Mike Packer, Operations Director of WLS, at Volari Restaurant in Chicago, Illinois. This meeting had been initiated by MUSBURGER.

25.     At the September 11, 2003 meeting at Volari Restaurant, Musburger did not disclose to Jones and Packer that MEIER had instructed him, only the day before, not to meet with Jones and Packer to discuss MEIER's future employment with WLS. Instead, he told Jones and Packer that something very wrong was going on internally, and he, MUSBURGER, was in trouble with MEIER.

25.     At the September 11, 2003 meeting at Volari Restaurant, Musburger discussed the terms of a potential deal for MEIER's future services with WLS with Jones and Packer, including the base compensation to be paid to MEIER, the bonus to be paid to MEIER, the length of the deal, whether the deal was to include one or more cycles, and the other terms and conditions of MEIER's prospective employment with WLS.

26.     On September 12, 2003, MEIER sent to Musburger the following letter:

"When I returned home yesterday evening, I received your letter which was sent via messenger to Cynthia and myself. Given its tone and content, I wanted to promptly respond.

"You indicate in your letter that our avoidance of a personal conversation makes it appear that I am considering terminating our professional relationship. Neither Cynthia nor I have avoided a personal conversation with you. What has happened is this. During our last telephone discussion you mentioned that you were sending an updated fee agreement. When Cynthia asked if you wanted to talk about it you declined. This written agreement was dated September 4, 2003 and Friday, September 5th and both Cynthia and I immediately called you to express our disappointment with both the document and the manner in which it was handled. Neither of us was able to speak with you personally and left voice mail messages. You called over the weekend, while we were out, and left a message of your own, recognizing that we were upset and suggested that we speak on Monday. Cynthia then sent you an email indicating that Monday was not good for her, acknowledging that she knew you were in New York on Tuesday and Wednesday, and asked if instead, we could schedule some time to talk on Thursday or Friday. That same morning you called me and left a message that you would use the "old agreement between us.""

In response to that suggestion of yours, I called you early Wednesday morning and left my voice mail message, explaining that I wanted to take next week and just think about how I wanted to proceed with everything. I told you that in the interim, I didn't want you to meet with anyone or have any further conversations with anyone and that if you had anything scheduled regarding my future contract, that I wanted you to cancel until we could reconnect. I thought it was important that I wanted to discuss with you, our view of what a new fee agreement should be rather than simply signing one which you sent to me without any prior discussion. Frankly, I think this really should have occurred earlier this year, rather than during this "sensitive time period" as you described it in your letter. Delaying having brought this matter to my attention until this point in time places me in the disadvantageous position of having to have to negotiate both with you, and also with ABC and the others. So, with this backdrop. Can you really be "mystified" as you wrote in your letter, as to the reasons for me wanting to take some time to consider my future?

"I also think that you would have to agree that I was hardly avoiding personal conversation with you when I asked you in my voice mail to please email Cynthia with what time you would be available to meet with us on September 23rd. You failed to sent Cynthia an email responding to this request and your letter was silent concerning it.

"I must say that I find it disturbing that you indicated in your letter that you planned on informing Zemira Jones of my "wishes." When last we had spoken substantively concerning this negotiations, we had decided that we were wasting our time with Zemira, given his current unfavorable posture, and that we were to avoid contact with him for the time being. In any event, your having contact with Zemira only undermines that negotiating strategy and disclosing my "wishes" is both contradictory to my expectation of confidentiality and inconsistent with my instructions to you in my voice mail message, that you should simply give anyone

with whom you have made an appointment, an excuse relative to scheduling conflicts.

"Finally, I was surprised that you viewed my interest in taking some time to consider matters to be the equivalent of choosing to terminate your services and that you believe I am required to "property and fully" compensate you for the work that has been performed to date. I was unaware that you were entitled to any compensation in addition to that which you have been receiving, for the work which you have done to date. To the extent that you believe you have such a right to compensation, and I don't agree that you do, please (a) explain in writing the basis for that position, (b) provide me with detailed and itemized records of time expended on my behalf with descriptions fo the work performed and (c) the amount claimed to be due. Kindly provide all of this to me sufficiently prior to our meeting on September 23rd so that I can carefully review it, if you are in fact able to meet with us on that date. At that time, we can discuss any remaining issues raised in your letter and the future of our professional relationship.

"Once again, I am requesting that you refrain from meeting with or engaging in conversations with any of the parties involved with ABC or the interested competitors concerning my interests; that includes George Hiltzik [the agent for Roe Conn]. To the extent that contact is inadvertent or unavoidable, please inform the party that you are present that day to discuss only your other client's affairs and not mine.

"Cynthia is familiar with my schedule for the 23rd and looks forward to hearing from you regarding a specific time when we can meet that day."

27.     Exhibit H attached hereto is a true and accurate copy of the letter which MEIER sent to Musburger on September 12, 2003.

28.     On September 13, 2003, Cynthia Fircak sent Musburger the following e-mail:

"We received your second letter dated September 11th and Garry and I remain very concerned that you appear to be insisting on continuing to engage in discussions regarding Garry's future, on the basis that you are "doing what is best to advance his interests," rather than following his clear and unequivocal direction to you not to meet with anyone or have any further discussions concerning them until after our meeting on the 23rd. Garry made clear his position concerning this in both his September 10th voice mail and his September 11th letter to you, which was delivered to our office yesterday morning.

"You stated that ABC is "poised" to meet Garry's number. I can only assume, given the history of our involvement with Zemira, that you have those numbers in writing from ABC. Otherwise, I am hard pressed to believe that you could, in good faith, use the word "poised" in relationship to their current position, given that you

-11-

yourself have said that you can't take Zemira's word for anything. Indeed, the last offer from him was truly insulting.

"Therefore, if those numbers are in hand, please forward them to Garry and me immediately. If you do not have anything in writing from Zemira, Garry does not want you to now contact him, in light of our earlier requests. Also, please provide us with an e-mail setting forth in detail what occurred when you spoke with Zemira

and Mike Packer on Thursday, including any representations which were made as to a specific dollar amount.

"Garry and I are available to talk with you at 9:00 a.m. on September 23rd."

29.     Exhibit I attached hereto is a true and exact copy of the e-mail which Cynthia Fircak sent to Musburger on September 13, 2003.

30.     On September 15, 2003, MEIER sent Musburger the following letter, to which a copy of Cynthia Fircak's September 13, 2003 e-mail was attached:

"Attached you will find a copy of an email that was sent to you on Saturday, September 13th, at my request, by Cynthia.  Please respond to this request immediately.

31.     Exhibit J attached hereto is a true and accurate copy of the letter which MEIER sent to Musburger on September 15, 2003.

32.     The records of phone conversations maintained by MUSBURGER reflect two telephone conversations on September 16, 2003 between Musburger and George Hiltzik, the agent for Roe Conn, each of which is described as lasting half an hour.

33.     Exhibit K  attached hereto is a true and accurate copy of a log of phone contacts maintained by MUSBURGER for September 16, 2003, reflecting two phone contacts that day by George Hiltzik.

34.     Exhibit L  attached hereto is a true and accurate copy of a time reconstruction prepared by MUSBURGER with respect to services performed for MEIER for the month of September, 2003 , reflecting two phone conversations on September 16, 2003,, each of .5 hours'

length, with George Hiltzik.

35.    The records of phone conversations maintained by MUSBURGER reflect a telephone conversation on September 16, 2003 between Musburger and Zemira Jones which is described as lasting a full hour.

36.    Exhibit K submitted herewith is a true and accurate copy of a log of phone contacts maintained by MUSBURGER for September 16, 2003, reflecting a phone contact that day by Zemira Jones.

37.    Exhibit L attached hereto is a true and accurate copy of a time reconstruction prepared by MUSBURGER with respect to services performed for MEIER for the month of September, 2003 , reflecting a phone conversation on September 16, 2003, of 1 hour's length, with Zemira Jones.

38.    The records of phone conversations maintained by MUSBURGER reflect two telephone conversations on September 17, 2003 between Musburger and George Hiltzik, the agent for Roe Conn, each of which is described as lasting half an hour.

39.    Exhibit K attached hereto is a true and accurate copy of a log of phone contacts maintained by MUSBURGER for September 17, 2003, reflecting two phone contacts that day by George Hiltzik.

40.    Exhibit L attached hereto is a true and accurate copy of a time reconstruction prepared by MUSBURGER with respect to services performed for MEIER for the month of September, 2003 , reflecting two phone conversations on September 17, 2003, each of .5 hours' length, with George Hiltzik.

41.    On September 18, 2003, Musburger and his son, Brian Musburger, met with Zemira Jones and Mike Packer at Sears Tower.

42.    The September 18, 2003 meeting between Musburger, Brian Musburger, Jones and Packer was initiated by Musburger as an "emergency" meeting.

43.    Musburger did not advise Jones or Packer, at any time prior to the September 18, 2003 meeting, that MEIER had directed him not to meet with Jones, Packer or any other WLS representative to discuss the terms or conditions of MEIER's future employment at WLS.

44.    Musburger did not advise MEIER or Cynthia Fircak that he was meeting with Jones and Packer on September 18, 2003.

45.    At the September 18th meeting, Musburger did discuss with Jones and Packer the terms and conditions of MEIER"s future employment with WLS

46.    At no time prior to September 22, 2003 did Musburger respond to the request that MEIER made in his letter of September 12, 2003 that Musburger (a) explain in writing the basis for his position that he was entitled to compensation for the work he was performing in addition to the monies he was already receiving from MEIER, (b) provide MEIER with a detailed and itemized records of time expended on MEIER's behalf with descriptions of the work performed and (c) set forth the amount claimed to be due

47.    At no time prior to September 22, 2003 did Musburger respond to the demand set forth in Cynthia Fircak's e-mail of September 13, 2003 and reiterated in MEIER's letter of September 15, 2003, that Musburger provide MEIER with numbers from ABC verifying Musburger's claim that ABC was "poised" to meet Garry's number.

48.    On September 22, 2003, MEIER sent to Musburger the following letter:

"I've read your email from Friday advising that you were looking forward to our meeting Tuesday morning.  I have been waiting for more than a week for you to provide us with an email setting forth in detail what occurred when you spoke with Zemira and Mike Packer on September 11th.  We also requested that you provide us with whatever you had in writing from ABC which leads you to conclude that they

were 'poised to finalize an agreement with us in the financial range" which I am seeking. We asked for this information 'immediately' and you have provided us with nothing – 9 days later. Your conduct is unacceptable.

"I have tried to work with you and provide you with an opportunity to continue our professional relationship. Beginning as early as spring of this year, we spoke with you regarding your ongoing lack of availability and effectiveness. We let you know that these were problems and each time we spoke concerning this, you assured us that things would change. You promised that things would move in a more positive direction, yet they never did.

"Despite our repeated requests, you have persisted in failing to consistently provide us with documentation of meetings. In the very beginning of September, I had asked that you write Zemira a letter following a meeting; you failed to do so. At a time when you should have been totally focused on my business interests, your focus instead was preparing and sending me a new agreement for your fees, which would also have required me to have permitted you to have conflicts of interest. Your failure to send Zemira the letter I requested put me at a disadvantage when Zemira called me into his office and characterized the state of the negotiations in a manner in which he couldn't have done, had the letter been sent as requested.

"My September 12th letter and our September 13th email set forth other instances of you refusing to respect my requests and instructions. Particularly, in my September 12th letter which was hand delivered to you that morning, I repeated my direction to you that pending our meeting on the 23rd, you were to refrain from meeting with or engaging in conversations with any of the parties involved in the negotiations, including George Hiltzik. I named him specifically. Not only did you thereafter speak with Mr. Hiltzik, contrary to my explicit instructions, your utterances as I understand them, were untruthful and violated both my attorney-client privilege, and other fiduciary duties which you owe me as a client.

"Under the circumstances, the meeting which I had hoped to have with you on the 23rd is now pointless and is canceled. I no longer have faith or trust in you as my attorney, representative or advisor and therefore am terminating your services under our letter agreement dated February 6, 1998. You must discontinue having contact with persons on my behalf and have no further conversations with anyone regarding my interests. Finally, I am also terminating immediately, any authority which you had under our February 6, 1998 agreement to incur expenses on my behalf in connection with your representation.

"Kindly provide me with any and all documents relating to your firm's representation of me within 48 hours. Pending your compliance with my request, without waiving any of my rights, I anticipate, that you will continue to receive payments under my current contract which expires February 19, 2004. I trust that you will keep Cynthia's and my discussions with you confidential as required by law.

-15-

"While I have no interest in initiating an adversarial relationship with you, I will not hesitate to act to enforce Cynthia's and my rights as my be necessary."

49.    Exhibit M attached hereto is a true and accurate copy of the letter MEIER sent to Musburger on September 22, 2003.

50.    At all relevant times, MUSBURGER, LTD. and Musburger owed MEIER, their client, the following duties defined by the Illinois Code of Professional Responsibility:

Rule 1.2    Scope of Representation

(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter.

Rule 1.4    Communications

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

51.    The course of conduct in which MUSBURGER, LTD. and Musburger engaged between September 11, 2003 and September 22, 2003 breached the foregoing duties in one or more of the following respects:

a.    Refused to abide by MEIER's decisions concerning the objectives of their representation of him, or the means by which those objectives were to be pursued, by engaging in meetings and phone conversations with executives from WLS and representatives of other interested parties, such as Roe Conn, at a time when they knew and were well aware that MEIER did not wish them to be having such meeting or engaging in such contacts.

b.    Refused and failed to keep MEIER reasonably informed about the status of their representation of him by failing to disclose to him, in timely fashion, the existence of the September 18, 2003 meeting, the contents of the discussions held at the meetings of September 11, 2003 or September 18, 2003, or the existence and contents of the telephone contacts he had with executives of WLS and with George Hiltzik between September 11, 2003 and September 22, 2003.

-16-

c.   Refused and failed to comply in timely fashion with the requests for information which MEIER made, directly and through Cynthia Fircak, on September 12, 2003, September 13, 2003 and September 15, 2003.

d.   Made misrepresentations to MEIER about, and attempted to conceal from MEIER, the fact that between September 11, 2003 and September 22, 2003, they attempted, without authority or consent from MEIER, to negotiate, on his behalf, a renewal contract for his services with WLS, at a time when they knew that MEIER had expressly forbidden them to engage in such negotiations.

52.   The course of conduct in which MUSBURGER, LTD. and Musburger engaged between September 11, 2003 and September 22, 2003 constituted a series of serious and repeated breaches of their fiduciary duties of honesty and loyalty to MEIER.

53.   At and after the date MEIER discharged MUSBURGER, LTD. and Musburger, he was making payments to them, under the terms of the 1999 Musburger Agreement, equal to five percent (5%) of the compensation paid to him under the 1999 WLS Agreement. These payments totaled the sum of $19,264.46.

54.   By virtue of their breach of their fiduciary duties to MEIER, MUSBURGER, LTD. and Musburger have forfeited all claim to these payments, and should be required to disgorge them.

55.   Additionally, by virtue of their breach of their fiduciary duties to MEIER, MUSBURGER, LTD. and Musburger have forfeited all claim to any compensation for services supposedly rendered to MEIER in their attempts to negotiate a renewal of the 1999 WLS Agreement.

WHEREFORE, Defendant/Counter-Plaintiff GARRY MEIER respectfully prays that this Honorable Court:

a.   Find and declare that MUSBURGER, LTD. and Musburger breached their fiduciary duties of honesty and loyalty to MEIER;

b.   Require the disgorgement, by MUSBURGER, LTD. and Musburger, of any and all monies paid by MEIER to MUSBURGER, LTD. and Musburger on and after September 22, 2003;

c.   Find and declare that MUSBURGER, LTD. and Musburger have, by virtue of their

breaches of fiduciary duty, forfeited, and are not entitled to, any compensation for any services supposedly rendered to MEIER in their attempts to negotiate a renewal of the 1999 WLS Agreement; and

d.    Award MEIER damages proven to have been caused by said breaches of fiduciary duty, in an amount to be shown by the evidence at trial, and

e.    Grant such other and further relief as may be just and equitable.

## COUNT III - PROFESSIONAL NEGLIGENCE - FAILURE TO DISCLOSE NEW OFFER

1 - 45.  MEIER hereby repeats and realleges Paragraphs 1 through 45 of Count II of this Counterclaim as Paragraphs 1 through 45 of this Count III as though fully set forth herein.

46.    Musburger has subsequently testified, at his deposition in this cause, that at the September 18, 2003 meeting, WLS orally communicated to Musburger the substance of an offer to retain MEIER's personal services for a period of ten (10) years, at an initial salary of $1.5 million to $1.6 million per year, with bonuses and a signing bonus.

49.    At no time prior to or after September 22, 2003 did Musburger communicate to MEIER the substance of the terms which he testified in his deposition had been offered to him by WLS at the September 18, 2003 meeting at Sears Tower with Jones and Packer.

50.    Had MUSBURGER, LTD. and Musburger communicated the terms of the offer made at the September 18, 2003 meeting to MEIER, MEIER would have given it the utmost serious consideration, and would, in all likelihood, have accepted such an offer.

51.    Subsequent to the termination of the services of MUSBURGER on September 22, 200, MEIER relied upon, Cynthia Fircak to negotiate with WLS and other broadcast entities for an agreement following the expiration of the 1999 WLS agreement.

52.    WLS did not present an offer having the numbers referenced in Musburger's deposition testimony to Ms. Fircak until late in the Spring of 2004, by which time the circumstances

had changed drastically, MEIER had been taken off the air, and the attractiveness of such an offer to MEIER was substantially less than it would have been in September of 2003. As a result, MEIER was unable to effect a renewal of the WLS 1999 Agreement, and has been without employment since February 24, 2004.

53.    At all relevant times, MUSBURGER, LTD. and Musburger owed MEIER, their client, the following duties defined by the Illinois Code of Professional Responsibility:

Rule 1.4    Communications

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

54.    The failure of MUSBURGER, LTD. and Musburger to communicate to MEIER the terms and conditions of the offer made to him on September 18, 2003 was a breach of the foregoing duties which they owed to MEIER.

55.    As a direct and proximate result of the breach by MUSBURGER, LTD. and Musburger of their professional duties and obligations to MEIER, MEIER sustained damages including, but not limited to, the loss of an employment opportunity worth a minium of $1.5 million to $1.6 million per year for ten years.

WHEREFORE, Defendant/Counter-Plaintiff GARRY MEIER respectfully prays that this Honorable Court grant judgment to him for compensatory damages in an amount in excess of the jurisdictional limit of the Law Division of the Circuit Court of Cook County, the exact sum. to be proven by the evidence, together with the costs of this action.

## COUNT IV - PUBLIC DISCLOSURE OF PRIVATE FACTS

1 - 50. MEIER hereby repeats and realleges Paragraphs 1 through 50 of Count III of this

Counterclaim as Paragraphs 1 through 50 of this Count IV as though fully set forth herein.

51.    Subsequent to the termination of the services of MUSBURGER on September 22, 200, MEIER relied upon, Cynthia Fircak to negotiate with WLS and other broadcast entities for an agreement following the expiration of the 1999 WLS agreement.

52.    As of April 1, 2004, MEIER continued to be in sensitive and difficult contract negotiations with WLS, WGN and WSCR.

53.    On April 1, 2004, MUSBURGER filed a complaint against MEIER in the Circuit Court of Cook County seeking payment of legal fees claimed to have been incurred in connection with the negotiation of a broadcast agreement intended to be effective following the expiration of MEIER's 1999 WLS agreement.

54.    MUSBURGER attached as Exhibit A to its Complaint, a complete copy of MEIER's 1999 WLS contract, thereby making public the financial terms and conditions of his recently expired broadcast agreement.

55.    Exhibit A was a confidence and secret of MEIER's, the disclosure of which violated MEIER's attorney-client privilege and was prohibited from disclosure by Illinois Supreme Court Rules of Professional Conduct.

56.    The disclosure of Exhibit A was not necessary to establish or collect the fee sought by MUSBURGER.

57.    The filing of the Complaint by MUSBURGER resulted in immediate widespread publicity in both the Chicago Tribune and Chicago Sun-Times newspapers.

58.    Upon information and belief, MUSBURGER, or its agents informed news media representatives of the filing of the complaint..

59.    The disclosures made in Exhibit A to the Complaint were, on their face, private and

not public facts.

60.    The disclosures made in Exhibit A to the Complaint were intended to, and did, have a disruptive effect upon MEIER's efforts to negotiate a new employment contract for himself with both WLS and with other radio stations.

WHEREFORE, Defendant/Counter-Plaintiff GARRY MEIER respectfully prays that this Honorable Court enter judgmennt in favor of Defendant-Counter Plaintiff and against Plaintiff-Counter Defendant TODD W. MUSBURGER, LTD. d/b/a LAW OFFICES OF TODD W. MUSBURGER, LTD. in an amount in excess of the jurisdictional limit of the Law Division of the Circuit Court of Cook County.

## COUNT V – BREACH OF FIDUCIARY DUTY – CONFLICT OF INTEREST

1 - 8.    MEIER hereby repeats and realleges Paragraphs 1 through 8 of Count I of this Counterclaim as Paragraphs 1 through 8 of this Count V as though fully set forth herein.

9.    In or about 2003, MEIER and TODD W. MUSBURGER, LTD. agreed that in addition to negotiating with WLS for a renewal of the agreement which would expire on February 18, 2004, TODD W. MUSBURGER, LTD. would pursue broadcasting opportunities for MEIER with WGN radio and WSCR radio in Chicago.

10.    At all times material hereto, Rule 1.7 of the Illinois Supreme Court's Rules for Professional Responsibility governing the conduct of attorneys provided as follows:

Rule 1.7. Conflict of Interest: General Rule

(a)    A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

   (1)    the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

   (2)    each client consents after disclosure.

(b)     A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

    (1)     the lawyer reasonably believes the representation will not be adversely affected; and

    (2)     the client consents after disclosure.

(c)     When representation of multiple clients in a single matter is undertaken, the disclosure shall include explanation of the implications of the common representation and the advantages and risks involved.

11.     At all times material hereto, Dan Bernstein was an afternoon sports talk show host at WSCR.

12.     At all times material hereto, MUSBURGER, LTD. represented Dan Bernstein in connection with his engagement with WSCR and his interests in other broadcast outlets.

13.     Beginning in 2003, and at all times material hereto with respect to WSCR, MUSBURGER, LTD.'s representation of Dan Bernstein was directly adverse to that of MEIER.

14.     At no time did MUSBURGER, LTD. or Musburger disclose to MEIER that it represented Dan Bernstein.

15.     At no time did MUSBURGER, LTD. or Musburger obtain MEIER's consent to the representation of Dan Bernstein.

16.     MUSBURGER, LTD and Musburger did not reasonably believe that the representation of Dan Bernstein would not adversely affect the relationship with MEIER.

17.     MUSBURGER, LTD.'s and Musburger's representation of MEIER was materially limited by TODD W. MUSBURGER, LTD.'s responsibilities to Dan Bernstein.

18.     MUSBURGER, LTD.'s and Musburger's representation of MEIER was materially limited by TODD W. MUSBURGER, LTD.'s own financial interests attributable to maintaining Dan

Bernstein at WSCR.

19.    On September 4, 2003, MUSBURGER, LTD. and Musburger sent a new fee agreement to MEIER which contained several new provisions, including the following language:

(a)    We may render similar services to others, including persons of the same general qualifications and eligibility for similar employment, and such representation shall not constitute a violation of our fiduciary or other obligations hereunder.

A true and accurate copy of that proposed fee agreement dated September 3, 2003 is attached hereto and incorporated herein as Exhibit C.

20.    At the time MUSBURGER, LTD. and Musburger sent MEIER Exhibit C, they failed to advised MEIER to obtain independent legal advice concerning said agreement, notwithstanding that MUSBURGER LTD. and Musburger owed already MEIER fiduciary duties and the timing of the proposed agreement was coercive in the context of the negotiations with WLS radio.

21.    MEIER refused to sign Exhibit C, and, on September 22, 2003, discharged MUSBURGER, LTD. and Musburger.

22.    After MEIER discharged MUSBURGER, LTD. and Musburger on September 22, 2003, MEIER relied upon, Cynthia Fircak to negotiate with WLS and other broadcast entities for employment for MEIER to follow the expiration of the 1999 WLS agreement.

23.    As of April, 2004, MEIER continued to be in sensitive and difficult contract negotiations with WLS, WGN and WSCR.

24.    In April and May of 2004, following his filing of the Complaint in this action and his public disclosure of MEIER's compensation from WLS under the 1999 Agreement, and at a time when MEIER was still engaged in negotiations with WLS for a renewal of his employment following the expiration of the 1999 WLS Agreement, Musburger approached WLS with the proposal that his

client, Dan Bernstein, co-host the afternoon radio show formerly co-hosted by MEIER.

25.     At all relevant times while MUSBURGER, LTD. and Musburger were engaging in a conflicted representation of MEIER, MEIER was making payments to them, under the terms of the 1999 Musburger Agreement, equal to five percent (5%) of the compensation paid to him under the 1999 WLS Agreement.

26.     By virtue of their breach of their fiduciary duties to MEIER, MUSBURGER, LTD. and Musburger have forfeited all claim to these payments, and should be required to disgorge them.

27.     Additionally, by virtue of their breach of their fiduciary duties to MEIER, MUSBURGER, LTD. and Musburger have forfeited all claim to any compensation for services supposedly rendered to MEIER in their attempts to negotiate a renewal of the 1999 WLS Agreement.

WHEREFORE, Defendant/Counter-Plaintiff GARRY MEIER respectfully prays that this Honorable Court:

a.     Find and declare that MUSBURGER, LTD. and Musburger breached their fiduciary duties of loyalty to MEIER;

b.     Require the disgorgement, by MUSBURGER, LTD. and Musburger, of any and all monies paid by MEIER to MUSBURGER, LTD. during the period in which his representation was conflicted.

c.     Find and declare that MUSBURGER, LTD. and Musburger have, by virtue of their breaches of fiduciary duty, forfeited, and are not entitled to, any compensation for any services supposedly rendered to MEIER in their attempts to negotiate a renewal of the 1999 WLS Agreement;

d.     Award MEIER damages proven to have been caused by said breaches of fiduciary duty, in an amount to be shown by the evidence at trial, and

e.     Grant such other and further relief as may be just and equitable.

## COUNT VI - BREACH OF FIDUCIARY DUTY-
## EXCESSIVE, IMPROPER AND FRAUDULENT BILLING

1-49.   MEIER hereby repeats and realleges Paragraphs 1 through 8 of Count I of this Counterclaim and Paragraphs 9 through 49 of Count II of this Counterclaim as Paragraphs 1 through 49 of this Count VI, as though fully set forth herein.

50.   On January 23, 2004, MUSBURGER sent to MEIER a letter enclosing a copy of a Statement demanding payment for legal services supposedly rendered by MUSBURGER to MEIER in attempting to negotiate a renewal of the 1999 WLS Agreement. True and exact copies of the letter and statement are attached hereto as Exhibits N and O, respectively.

51.   The Statement, which was on the letterhead of the Law Offices of Todd W. Musburger, Ltd., provided in relevant part, as follows:

"FOR PROFESSIONAL SERVICES

"Period ending September 22, 2003:

| | |
|---|---|
| 170 hours @ $475.00 per hour | $80,750.00 |
| 40 hours @ $300.00 per hour | $12,000.00 |
| BALANCE DUE: | $92,750.00 |

52.   Neither the Statement nor the accompanying letter disclosed that the line reading "40 hours @ $300.00 per hour   $12,000.00" related exclusively to services allegedly performed for MEIER by Brian Musburger.

53.   Brian Musburger is the son of Todd Musburger, and affiliates and associates himself with Todd Musburger in the representation of Todd Musburger's clients.

54.   At no point prior to the commencement of this litigation did MUSBURGER disclose to MEIER that the line  reading "40 hours @ $300.00 per hour - $12,000.00" relates solely and exclusively to services allegedly performed for MEIER by Brian Musburger, and MEIER did not

learn of this fact until the depositions of Todd and Brian Musburger were taken in this litigation.

55.    Brian Musburger is not, and has never been, an attorney licensed to practice law in the State of Illinois or any other jurisdiction.

56.    The 1998 Musburger Agreement did not call for the provision of services by Brian Musburger, or for the payment of same by MEIER.

57.    The 1998 Musburger Agreement was a personal services contract calling for the performance solely by Todd W. Musburger of all legal services contemplated therein.

58.    MEIER never entered into any separate agreement with either MUSBURGER or with Brian Musburger calling for the payment by MEIER of fees for work which Brian Musburger might perform for him, as an associate or affiliate of MUSBURGER or otherwise.

59.    On one occasion, when MEIER and Cynthia Fircak noted the presence of Brian Musburger at a meeting and asked Todd Musburger what Brian was doing, there, Todd responded that Brian was just there to "learn the business."

60.    MEIER is informed and believes that at no time did Brian Musburger perform substantial services for MEIER, and he did not actively participate in any negotiations between MUSBURGER and WLS or any other third party in connection with matters concerning MEIER.

61.    At all relevant times, MUSBURGER, LTD. and Musburger owed MEIER all of the fiduciary duties stemming from the nature of the attorney-client relationship.

62.    The fiduciary duties which MUSBURGER, LTD. and Musburger owed MEIER included, among other things, compliance by MUSBURGER, LTD. and Musburger to the following provisions of the Illinois Supreme Court's Rules for Professional Responsibility governing the conduct of attorneys:

Rule 1.5    Fees

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

> (3) the fee customarily charged in the locality for similar legal services;

> (4) the amount involved and the results obtained;

> (5) the time limitations imposed by the client or by the circumstances;

> (6) the nature and length of the professional relationship with the client;

> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

> (8) whether the fee is fixed or contingent.

\* \* \* \*

Rule 5.4    Professional Independence of a Lawyer

(a) A lawyer or law firm shall not share legal fees with a nonlawyer, except that:

> (1) an agreement by a lawyer with the lawyer's firm, partner, or associate may provide for the payment of money, over a reasonable period of time after the lawyer's death, to the lawyer's estate or to one or more specified persons;

> (2) a lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that proportion of the total compensation which fairly represents the services rendered by the deceased lawyer or may make payments in accordance with Rule 1.17; and

> (3) a lawyer or law firm may include nonlawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement.

(b) A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law.

63. In asserting a separate and distinct claim against MEIER for the value of the services supposedly rendered by Brian Musburger, MUSBURGER, LTD. and Todd Musburger violated their fiduciary duties to MEIER in one or more of the following respects:

a. There was never any understanding or agreement between the parties that Brian Musburger's services, if any, were to be compensated separately for any services rendered or to be rendered by him to MEIER;

b. Because Brian Musburger was not, at any relevant time, an attorney, the assertion of a separate claim for fees on his behalf was an exercise in fee-splitting between a lawyer (Todd Musburger) and a non-lawyer (Brian Musburger), which is expressly prohibited by Rule 5.4;

c. Todd Musburger never, at any time, disclosed to MEIER that it was his intent to bill MEIER separately for the services, if any, performed by Brian Musburger, a non-attorney, or to split with Brian Musburger, a non-attorney, any fees he might receive in connection with his representation of MEIER;

d. The Statement was drafted and presented in such a way as to conceal, rather than disclose, the fact that the claim made therein for "40 hours @ $300.00 per hour $12,000.00" relates exclusively to services allegedly performed for MEIER by Brian Musburger, a non-attorney with whom MEIER had no separate contractual relationship;

e. To the extent that the Statement was intended to be a claim by Todd Musburger for the reasonable value of his services as an attorney in light of his discharge by MEIER, pursuant to the rule set forth in *Rhoades v. Norfolk & Western Railway Co.*, 78 Ill.2d 217, 399 N.E.2d 969 (1979), that rule did not extend to Brian Musburger, a non-attorney;

f. To the extent that the Statement was intended to be a claim by Brian Musburger for the reasonable value of his services (a claim not enunciated the Statement), Brian Musburger had no reasonable expectation of being paid for his services separate and apart from any fee agreement between MEIER and Todd Musburger.

g. Brian Musburger's services were not, under any circumstances, worth $300.00 per hour.

64.    The claim for Brian Musburger's services which was worked (without clear enunciation or attribution) into the Statement was, in fact, nothing more than an effort to obtain money to which neither MUSBURGER, nor Todd Musburger, nor Brian Musburger was entitled, in breach of Todd Musburger's fiduciary duties and through false and fraudulent pretenses.

65.    MEIER has not paid any portion of the claim for fees made by MUSBURGER, LTD. and Todd W. Musburger in the Statement, including the portion relating to Brian Musburger. MUSBURGER and Todd W. Musburger, have, however committed an additional and continuing violation of their fiduciary obligations by including and incorporating that meritless and improper claim into the overall claim for *quantum merit* they are making in this litigation.

66.    Because MUSBURGER and Todd W. Musburger, have continued to breach their fiduciary duties by asserting, in this litigation, the false, fraudulent and improper claim for $12,000.00 in services rendered by Brian Musburger as part of their overall claim, MEIER has sustained actual damages in that he has been forced to retain counsel to defend himself against that aspect of the claim, and to conduct discovery and other activities relating thereto, which activities have caused, and continue to cause, MEIER to incur substantial outlays

67.    MUSBURGER, LTD. and Todd Musburger asserted the claim against MEIER for $12,000.00 in billing for Brian Musburger's services with full knowledge and awareness that the billing in question was excessive, unethical, and un-agreed to and was wantonly, maliciously and in knowing violation of their fiduciary obligations under Rules 1.5 and 5.4, and their conduct in this regard fully justifies an award of punitive damages.

WHEREFORE, Defendant/Counter-Plaintiff GARRY MEIER respectfully prays that this Honorable Court enter judgment in his favor against Plaintiff-Counter-Defendant TODD W. MUSBURGER, LTD. d/b/a LAW OFFICES OF TODD W. MUSBURGER, LTD.

a.   For actual damages, in an amount to be proven by the evidence at trial, and

b.   For an award of punitive damages, in an amount sufficient to punish and deter this and other defendants from engaging in similar conduct in the future.

## A TRIAL BY JURY IS DEMANDED

Respectfully submitted,

GARRY MEIER,

By: James A. Smith

One of His Attorneys

Steven M. Dicker
DICKER & DICKER
300 W. Adams Street, Suite 330
Chicago, IL 60606
Phone: 312/853-3485
Fax:    312/853-3489
Cook County ID No. 52742

James A. Smith
LAW OFFICES OF JAMES A. SMITH
300 W. Adams Street, Suite 330
Chicago, IL 60606
Phone: 312/372-4952
Fax:    312/372-0609
Cook County ID No. 50606

Attorneys for Defendant/Counter-Plaintiff GARRY MEIER

## VERIFICATION

STATE OF ILLINOIS )
                  ) SS.
COUNTY OF _COOK_ )

_Garry Meier_, being first duly sworn on oath, deposes and states that he/she is the Defendant/Counter-Plaintiff in the above-captioned matter; that he/she has read the foregoing Defendant/Counter-Plaintiff GARRY E. MEIER's Third Amended Counterclaim, that he is familiar with the facts pleaded in said Third Amended Counterclaim, and that the facts pleaded therein are true, correct and complete, except where alleged on information and belief, in which case they are true, correct and complete to the best of his/her knowledge and belief.

SWORN TO and SUBSCRIBED to before me
me this _27th_ day of _October_, 2006:

Notary Public

"OFFICIAL SEAL"
Concheita Richardson
Notary Public, State of Illinois
My Commission Exp. 02/23/2008

-31-