# EXHIBIT L

Page 1

STATE OF ILLINOIS   )

                    ) SS:

COUNTY OF C O O K   )

    IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

         COUNTY DEPARTMENT - LAW DIVISION


  LAW OFFICES OF TODD W.        )

  MUSBURGER, LTD.,              )

       Plaintiff,              ) Case No. 04 L 3760

    vs.                         )

  GARY MEIER, an               )

  individual,                  )

       Defendant.             )



       REPORT OF PROCEEDINGS at the hearing of

the above-entitled cause before the Honorable

RONALD F. BARTKOWICZ, Judge of said Court, on the

22nd day of January, 2007 at the hour of 10:00

o'clock a.m.



Reported by:  Christine M. Pina, CSR, RPR

License No.:  084-003785

McCORKLE COURT REPORTERS, INC.
CHICAGO, ILLINOIS (312) 263-0052

Page 2

```
1    APPEARANCES:
2       MCGUIRE WOODS
3       BY: MR. CARLIN R. METZGER
4           and
5           MR. JONATHAN P. HARMON
6       77 West Wacker Drive, Suite 4100
7       Chicago, Illinois 60601
8       (312) 849-8100
9           on behalf of the Plaintiff,
10
11      DICKER AND DICKER
12      BY: MR. STEVEN M. DICKER
13          and
14          MR. JAMES A. SMITH
15      300 West Adams Street, Suite 330
16      Chicago, Illinois 60606
17      (312) 853-3485
18          on behalf of the Defendant.
19
20
21
22
23
24
```

Page 3

```
1       THE COURT: Our next case is Musburger versus
2    Meier. We're here this morning to do several
3    things; first, for the Court to rule on the
4    Defendant's Motion To File An Amended Counterclaim
5    and An Affirmative Defense, and then, I think to go
6    through the Motions In Limine and all other
7    preliminary matters and pick the jury tomorrow. I
8    read through the material and --
9       MR. DICKER: Your Honor, did you see they sent
10   a Response over the weekend, and we hand-delivered
11   a Reply this morning?
12      THE COURT: It came in about ten minutes ago.
13      MR. DICKER: Okay. By the way, Steven Dicker
14   for the Defendant.
15      MR. SMITH: James Smith for the Defendant.
16      MR. METZGER: Carlin Metzger on behalf of the
17   Law Offices of Todd Musburger.
18      MR. HARMON: John Harmon on behalf of the Law
19   Offices of Todd Musburger.
20      THE COURT: Essentially what the Defendant is
21   trying to convince me to do is to dismiss the
22   lawsuit on the basis that the Law Offices of
23   Musburger didn't comply with the statutory
24   provision contained in 225 ILCS 515, 1.
```

Page 4

```
1       Essentially what that provision says is that
2    someone who's going to represent another person for
3    purposes of securing employment must follow certain
4    statutory requirements in terms of filings and
5    other matters. And I went through the statute, and
6    in Section 1, the statute confers power in the
7    agency to license, said standards, issue rules and
8    regulations, set application for a fee schedule,
9    and also requires the agency to conduct a hearing
10   or investigation into the fitness of the purpose of
11   the person to conduct employment activities. It
12   also requires that a bond be posted in Section 2.
13   It provides in Section 10.3 that any violation is a
14   Class A Misdemeanor. It provides in Section 13
15   that under certain circumstances the agency would
16   have the power of arrest. And in Section 12, it
17   says the enforcement of the act is delegated to the
18   particular agency; the Labor Department I think it
19   is. It's also interesting to note that if you look
20   at Section 9.1, it has a provision in there about
21   domestic service employees. In 10.0, it has
22   procedure in there to ensure that female help is
23   not directed towards employment for which there be
24   a bad reputation. And Section 10.1 deals with farm
```

Page 5

```
1    workers.
2       You know, everybody here knows that
3    Illinois has three separate independent units of
4    government; judicial, the legislative, and the
5    executive. The judicial branch has responsibility,
6    as under the constitution, to license and monitor
7    the activities of attorneys who are performing
8    their legal responsibilities and has a statutory or
9    rule scheme by which an attorney's activities are
10   regulated, and also provides a procedure by which
11   attorneys, if they violate these rules, could be
12   subject to certain disciplinary action.
13      So, in my view what we have here is two
14   parallel regulations that, I believe, directly
15   conflict with each other. And it's my conclusion
16   after reading through the material that I'm not
17   going to apply the act in 225 ILCS 513.01 in this
18   particular case because I believe that the conduct
19   and activities of the Plaintiff are governed by the
20   Supreme Court Rules and Regulations on Professional
21   Conduct, and that any attempt to impose upon an
22   attorney who's conducting a legal practice and
23   representing clients in the negotiation of
24   contracts would be an unconstitutional application
```

2 (Pages 2 to 5)

## Page 6

1 of that provision. That's the conclusion I've
2 reached after looking through the materials,
3 reading through the act, and also doing some
4 reading of the cases that you cited.
5     And there's one provision I want to put in
6 the record before you can make your comments. In
7 the National Towns Association case versus Holland
8 at 76 Illinois Appellate 3rd, 556. The court said
9 in Part B of its opinion, it conducted an inquiry
10 as to what would be the legislative intent of the
11 Private Employment Agency Act. And it said the
12 evils that were incident to private employment
13 agencies which statutes such as this as the
14 incident one were enacted correct were summarized
15 in a report issued by the Bureau of Labor. And it
16 was quoted in Supreme Court Case Adams versus
17 Tanner, 244 U.S., 590. And it lists like six
18 different activities that regulation such as this
19 were designed to correct. And one of them says
20 charging a fee in failing to make any effort to
21 find work for the applicant, sending applicants
22 where no work exists, sending applicants to distant
23 points where no work or where unsatisfactory work
24 exists, collusion between the agent and the

## Page 7

1 employer, charging exorbitant fees, reducing
2 workers who have been placed to leave, pay another
3 fee or get a better job. Other evils charged
4 against the employment agencies are the
5 congregating persons or gambling or other ego
6 practices, collusion of keepers of immoral houses,
7 sending of women applicants to houses of
8 prostitution and so on. And it went on to say that
9 the act, which is the Private Employment Agency
10 Act, consists primarily of regulations which are
11 designed to remedy such abuses. So, it seems that
12 even the case law indicates that the design or the
13 purpose of the particular act would not be to
14 regulate attorneys in the manner in which they
15 conduct negotiations on behalf of their clients for
16 employment contracts. Because essentially what we
17 would have then, if I ruled as requested, attorneys
18 would be regulated in their legal activities not
19 only by the judicial branch but also by the
20 executive branch. And my understanding when a
21 conflict exists between the two, the judicial
22 branch's regulations and rules would prevail.
23     So, those are the conclusions that I've
24 reached after examining all the briefs, and the

## Page 8

1 reasons why I reached the conclusion that I just
2 stated. So, the Movant then for whatever comments
3 you wish to make for the record, please do so.
4     MR. SMITH: Thank you, your Honor. James Smith
5 on behalf of Defendant Gary Meier.
6     Your Honor, I think the basic problem here
7 is that Mr. Musburger who has a law license and is
8 operating a law office is, in fact, operating under
9 two hats; one being an attorney and the other being
10 an employment clerk, an entertainment agency. And
11 you don't have to take my word for that. It's in
12 his own Answer to the Counterclaim where he
13 denies -- and I'm quoting here, Musburger denies
14 that it's organized only for the practice of law.
15 Further answering, Musburger states that in
16 addition to providing legal services, Musburger is
17 organized to provide services as an entertainment
18 agency, and admits that it holds itself out as an
19 entertainment agent but further answers that it
20 also holds itself out as an entertainment agent.
21     Now, of course, we have no problem with
22 your Honor taking the position that the legal
23 activities of lawyers including the legal
24 activities of lawyers that touch upon the

## Page 9

1 negotiation, the legal aspects of employment
2 contracts, are a fit and proper subject for
3 regulation by the Attorney Registration and
4 Disciplinary Commission by the Supreme Court of
5 Illinois. But where a lawyer has stepped outside
6 those traditional boundaries and placed himself in
7 the position not only of advising and counseling
8 but, as the facts in this case make it abundantly
9 clear, finding and seeking employment, that is a
10 different question. And the act speaks to that.
11 It could not be broader in its terms. It clearly
12 covers the activities that Mr. Musburger was
13 undertaking here. This is a case of first
14 impression in Illinois, as far as I can see. But
15 in California where there is a similar statute, it
16 is accepted and it's the position of the governing
17 agency that if a lawyer does step outside the
18 boundary as Mr. Musburger clearly has stepped
19 outside the boundaries, then at the very least he's
20 subject to not only the jurisdiction of the
21 traditional authorities but of those into whose
22 domain he stepped.
23     THE COURT: But isn't there a difference here
24 that Mr. Musburger is not only identifying possible

3 (Pages 6 to 9)

Page 10

1  employment sources, he's also negotiating the terms
2  and conditions. Whereas this statutory provision,
3  as I understand it, is agencies that are making
4  referrals over to employers who then make the final
5  decision as to whether they want to hire or not
6  hire and on what terms and conditions that person
7  would be working. So, there's a difference that I
8  didn't mention previously in the way in which the
9  law office conducts its activities in regard to
10 identifying and securing employment, and then, the
11 manner in which these employment agencies work.
12 They just make referrals over to it, and if that
13 person is accepted, then they get a fee. But if
14 that person goes over there and isn't accepted, my
15 understanding is they won't get a fee. And also
16 the terms and conditions under which that person is
17 going to work are then negotiated by that person
18 and the employer. So, there's a factual difference
19 also in the activities that, I believe, distinguish
20 the activities of an attorney from those of
21 employment agencies. And I forgot to mention that
22 in my initial presentation, so I just want to
23 supplement it. And I'm sorry for interrupting you,
24 counsel. Go ahead.

Page 11

1  MR. DICKER: No. I appreciate your Honor for
2  making the point, but I think the evidence in this
3  case would show that not even so much as the first
4  draft of a contract of employment ever landed on
5  the desk of Todd Musburger in this particular case.
6  There was nothing for him to counsel his client
7  about because the entire effort that was done in
8  this case was done with the idea of finding
9  employment either through a renewal of Mr. Meier's
10 existing contract with WLS or other broadcast
11 outlets. That was the entirety of the effort for
12 which the services that are at issue here were
13 being performed. There are perhaps less obvious
14 dangers to the applicant, to the employee, than the
15 ones that are referenced in the case cited by
16 your Honor. But there are, nevertheless, distinct
17 dangers to the employee. And I need only point in
18 that regard to the agreement between Mr. Musburger
19 and Mr. Meier which was the contract that purported
20 to govern their relationship all the way up from
21 February of '98 until the time Mr. Meier discharged
22 Mr. Musburger in September of 2003. That's
23 Exhibit H to the Appendix that we submitted. And
24 if your Honor will look at that contract, you'll

Page 12

1  see that Mr. Musburger made himself Mr. Meier's
2  exclusive agent for the representation of
3  Mr. Musburger in his deal in his agreements in the
4  fields of radio and television. Now, start
5  thinking about the ethical implications of a lawyer
6  making himself the exclusive agent.
7  THE COURT: Well, doesn't the same thing happen
8  when an attorney and client will sign an engagement
9  contract for purposes of representation if an
10 individual has suffered a personal injury?
11 MR. DICKER: At that point in time if the
12 employee wished to go out and get independent
13 advice, he has the right to go out and get
14 independent advice.
15 THE COURT: And he can terminate the attorney
16 any time he wants, right? Yes.
17 MR. DICKER: He need not terminate the attorney
18 in order to get the independent advice, but he
19 would have to under this contract.
20 THE COURT: Well, the Law of Contracts doesn't
21 strictly apply to attorney-client relationships
22 because the law says that the client should be free
23 at any time to seek other counsel and a contract
24 should not bind that one. But as long as the

Page 13

1  contract is in existence, the attorney is bound and
2  so is the client bound until they terminate that
3  relationship.
4  MR. DICKER: But Mr. Meier as a non-lawyer is
5  not going to know that where he has bound himself
6  to Todd Musburger as the exclusive legal
7  representative that he still has the right to go
8  out. And those are just the sorts of problems that
9  you get into whenever you're dealing with a
10 dual-hat situation, and this is a dual-hat
11 situation. And that's the point that we're making.
12 THE COURT: But, again, if there was any
13 misconduct that Mr. Musburger engaged in, my
14 position is he would be subject to the rules,
15 regulations, and sanctions of the Attorney
16 Registration Commission. And I don't believe that
17 it would be appropriate to say that
18 contemporaneously he would also be subject to
19 actions under the Labor Department. I do not
20 believe I could do that.
21 MR. SMITH: I would just point out to the
22 Court, first of all, there's no lawyer exemption in
23 this statute. Secondly, this case presents a
24 parallel to many situations where a person holding

Page 14

1 a law license must also, nevertheless, follow the
2 rules and regulations that are applicable to other
3 professions if he wishes to procure the benefits of
4 other professions. I, as a lawyer, can't go and
5 sell real estate and get a commission without
6 having a broker's license. I can't run a private
7 investigative agency without a private
8 investigator's license. The possession of a law
9 license simply doesn't immunize from those types of
10 regulation. There are areas of overlap. It's
11 inevitable, and we believe this is an appropriate
12 area of overlap. It may be a unique area of
13 overlap because the fact of the matter is I've
14 never before ever seen a law office answer in a
15 pleading that it is not only a law office but an
16 entertainment agency as well. And that's exactly
17 what they've done here. And if they're going to be
18 an entertainment agency, they should be regulated
19 as one.
20      THE COURT: Counsel, response.
21      MR. METZGER: Your Honor, very briefly. I want
22 to say that for the Defendant to suggest at this
23 point that the Law Offices of Todd Musburger did
24 not perform legal services for Mr. Meier is

Page 15

1 contradicted by all the evidence in the case as
2 well as the pleadings themselves and the
3 Defendant's own admissions. I would also just
4 point for additional support to an Illinois
5 Attorney General Case 1903 through 1904, Opinion of
6 Attorney General, 279. Now, as your Honor
7 recognized, this statute has been on the books for
8 a long period of time, over 100 years. And it was
9 designed, in fact, to regulate exactly those abuses
10 that you had mentioned earlier. This opinion of
11 the Attorney General highlights the reason why it
12 should not be applied in this case as well. In
13 this opinion, the Attorney General notes that the
14 statute is a penal statute and will be construed
15 strictly. And nothing will be construed in its
16 terms which does not clearly within it's spirit and
17 object. The title of this act indicates the object
18 and the intent of the legislature, and shows that
19 it was intended only to regulate employment offices
20 and agencies and not schools in this case where the
21 school had also procured employment for its
22 students as part of its function. The opinion of
23 the Attorney General was, therefore, that those
24 institutions which are engaged in other and

Page 16

1 different business than that of employment offices
2 and agencies, even though they may procure
3 employment for others incidental to their
4 businesses, are neither within the spirit or letter
5 of this statute and cannot be subjected to its
6 penalties for failure to take out a license as
7 required by Section 9 of the act.
8      Now, there is just no dispute that the Law
9 Offices of Todd Musburger represented Gary Meier as
10 an attorney, negotiated, drafted, reviewed
11 contracts on his behalf. And that is an additional
12 reason, besides those you've already discussed,
13 that this motion should be denied. Thank you.
14      MR. SMITH: Your Honor, for whatever authority
15 an Attorney General's opinion from 1904 has, the
16 fact of the matter is that the admissions in the
17 pleading in this case are plain. Musburger has
18 stated himself he was acting as an entertainment
19 agent. His son defines the work that was being
20 done -- and I might add that his son's work was part
21 of the claim in this case so it's far from a
22 third-party observation -- as getting jobs for
23 people. And if you're going to be in the business
24 of getting jobs for people, then you should be

Page 17

1 regulated by an institute that covers anyone who is
2 in the business of securing employment.
3      THE COURT: I might be persuaded to your line
4 of thinking if the record showed that all Musburger
5 did was call them and tell Gary Meier to go to the
6 various broadcasting places because they're
7 interested in him and perhaps they might be able to
8 work out an agreement. But the record, as I
9 understand the pleadings, are he actually sat down
10 with the agencies. He attempted to negotiate terms
11 and conditions of the contract, and then, convey
12 them on to Mr. Meier. And then the allegations are
13 that Meier told him to cease and assist, but he
14 continued to do these activities, continued to seek
15 out terms and conditions and negotiate provisions
16 of the contract. There's a world of difference
17 between those type of activities and the ones that
18 are contemplated by the employment act that we've
19 been referring to. And, plus, I'm very sensitive
20 to the fact that you have the branch of government,
21 which is the judicial branch, which has
22 responsibilities for regulating the conduct of the
23 attorneys and has the right to punish them for
24 their failures to do so, and then, an executive

5 (Pages 14 to 17)

Page 18

1  branch which would be attempting to monitor and
2  follow the acts of an attorney in the same way.
3  And to me, that's a clash between two levels of
4  government. And the primary source for monitoring
5  and disciplining attorneys, I believe, should
6  properly be with the judicial branch. So, that's
7  an additional reason why I don't believe that the
8  act should be applied.
9       So, respectfully then your motion for I
10 believe it's to file -- let's get this straight so
11 we can get the order in there entered, okay?
12      MR. SMITH: We made a Motion To Dismiss under
13 Section 219.1, we made a Motion For Leave To File A
14 Fourth Amended Counterclaim, and we made a Motion
15 For The Filing of the Fifth Affirmative Defense
16 just so we have everything that's before the Court
17 this morning.
18      THE COURT: Right. The 2-619 Motion To Dismiss
19 Count 2 will be denied for the reasons that the
20 Court stated. And the motion of the Defendant to
21 file a fourth amended counterclaim and fifth
22 affirmative defense will also be denied for the
23 reasons stated in open court.
24      Now, we're going to have to start talking

Page 19

1  about tomorrow. We're going to pick the jury
2  tomorrow. So, let's get a little less formal here,
3  and we'll start working on it. Have you exchanged
4  with each other your motions in limine?
5      MR. METZGER: Well, as a matter of fact, we
6  don't even have any motions in limine that we want
7  to file.
8      THE COURT: Let's just take two minutes.
9           (Whereupon, a short break was
10          taken.)
11          (Whereupon, a discussion was
12          had off the record.)
13 (Which were all the proceedings had at this date
14          and time.)
15
16
17
18
19
20
21
22
23
24

Page 20

1  STATE OF ILLINOIS )
2                   ) SS:
3  COUNTY OF C O O K )
4
5      CHRISTINE M. PINA, being first duly sworn,
6  under oath says that she is a court reporter doing
7  business in the City of Chicago; and that she
8  reported in shorthand the proceedings of said
9  hearing, and that the foregoing is a true and
10 correct transcript of her shorthand notes so taken
11 as aforesaid, and contains the proceedings given at
12 said hearing.
13
14 _____
15      CHRISTINE M. PINA, CSR, RPR
16      LICENSE NO. 084-003785
17
18 SUBSCRIBED AND SWORN TO
19 before me this_____day
20 2007.
21
22
23 _____
24    Notary Public

McCORKLE COURT REPORTERS, INC.
CHICAGO, ILLINOIS (312) 263-0052

1    STATE OF ILLINOIS   )

2                        )   SS:

3    COUNTY OF C O O K   )

4

5        CHRISTINE M. PINA, being first duly sworn,

6    under oath says that she is a court reporter doing

7    business in the City of Chicago; and that she

8    reported in shorthand the proceedings of said

9    hearing, and that the foregoing is a true and

10   correct transcript of her shorthand notes so taken

11   as aforesaid, and contains the proceedings given at

12   said hearing.

13                      *Christine M. Pina*

14                _____

15                CHRISTINE M. PINA, CSR, RPR

16                LICENSE NO. 084-003785

17

18   SUBSCRIBED AND SWORN TO

19   before me this 28 day

20   2007.

21

22

23   _____

24    Notary Public

                                           20

Official Seal
Jon Nawrocki
Notary Public State of Illinois
My Commission Expires 02/01/2011

# EXHIBIT M

04 L 3760   Law Offices of Todd W. Musburger.
vs.
Garry Meier

**VERDICT FORM A**

We, the jury, find for <u>Plaintiff, Law Offices of Todd W. Musburger, Ltd.</u> and against <u>Defendant, Garry Meier</u>.

8101

We assess the damages in the amount of $ 68,750.00
SIXTY-EIGHT THOUSAND SEVEN HUNDRED FIFTY DOLLARS

Signatures:

Judge Ronald F. Bartkowicz
**ENTERED**

JAN 29 2007

**Circuit Court - 193**

JAN 29 2007
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

LAW OFFICES OF TODD W.              )
MUSBURGER, LTD.                     )
    Plaintiff,                       )
                                    )
    v.                               )        No. 04 L 3760
                                    )
GARRY MEIER, an individual,         )
    Defendant.                       )

## JUDGMENT ORDER

This cause having proceeded to trial, the jury having returned a verdict in favor of the Plaintiff, Law Offices of Todd W. Musburger, Ltd. and against the Defendant, Garry Meier, and the jury having awarded damages to the Plaintiff in the amount of $68,750.00, the Court having jurisdiction and being fully advised in the premises, IT IS HEREBY ORDERED:

A final judgment is entered in favor of the Plaintiff, Law Offices of Todd W. Musburger, Ltd. and against Defendant, Garry Meier, for Sixty Eight Thousand Seven Hundred Fifty Dollars ($68,750.00). There is no just reason for delaying either enforcement or appeal or both of this judgment.

Judge Ronald F. Bartkowicz
ENTERED
The Honorable Judge Ronald Bartkowicz
JAN 3 0 2007

Circuit Court - 193

**Order prepared by:**
Carlin Metzger, Esq.
Jonathan Harmon, Esq.
McGuireWoods LLP
77 W. Wacker Drive, Suite 4100
Chicago, Illinois 60601
312-849-8100
Atty No. 40426

# EXHIBIT N

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

Law Offices of Todd W. Musburger,           )
                                            )
                    Plaintiff,              )
                                            )
        v.                                  )        Case No. 04 L 003760
                                            )
Garry Meier,                                )        Hon. Ronald F. Bartkowicz
                                            )        Judge Presiding - Calendar "Y"
                                            )
                    Defendant.              )

MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S POST-TRIAL MOTION

Now comes Garry Meier, Defendant (hereinafter referred to as "Meier"), by his attorney, Walter P. Maksym and submits the following argument and authorities in support of his Post-Trial Motion filed pursuant to 735 ILCS 5/2-1202:

ARGUMENT

I.      THE JUDGMENT WAS ENTERED WITHOUT NOTICE AND DUE PROCESS IN VIOLATION OF THE U.S. AND ILLINOIS CONSTITUTIONS, GENERAL ORDER 2.1 OF THE CIRCUIT COURT OF COOK COUNTY AND SUPREME COURT RULE 104(B), IS THEREFORE VOID *AB INITIO* AND MUST BE VACATED.

1.      That following the rendering of verdict and after the conclusion of jury trial and its adjournment on January 29, 2007, Defendant's counsel obtained entry of an *ex parte* judgment the next day, on January 30, 2007, without notice as is required by due process under the U.S. and Illinois Constitutions and General Order 2.1 of the Circuit Court of Cook County requiring prior notice of all motions show the title and number of the action, the name of the judge before whom, the time and date when, and the place where the motion will be presented and that copies of all papers presented to the court with the motion shall be served with the notice or the notice shall state that copies have been served.

Further, under Supreme Court Rule 104(b) notice of all papers filed was required to be given to opposing counsel and there be filed with the clerk a certificate of Plaintiff's counsel or other proof that copies have been served on this Defendant's counsel pursuant to said Rule which the record shows was not done.

In <u>Vortaiz v. Elmhurst Memorial Hospital</u>, 179 Ill. App. 3d 584 (1989) the appellate court held:

        "We agree...with plaintiff contention that the ... order was void because [he] had no notice. . ."

*Before a trial court enters a new order, a party must give notice to other parties ..., without such notice, the order is void.*

Plaintiff received *no notice* [of the] hearings.... The trial court's ... order was void..." (Emphasis supplied)

In the instant case the record is clear that no prior notice given of any request to have the January 30, 2007 judgment order entered and no proof of notice or service was ever filed as required by the rules. Therefore, the judgment order entered by this Court on January 30, 2007 is void *ab initio* and must be vacated.

II.    COUNT II OF MUSBURGER'S VERIFIED COMPLAINT FOR "*QUANTUM MERUIT*" FAILED TO STATE A CAUSE OF ACTION AND WAS NOT PROVEN

Because Count II of Musburger's Verified Complaint (hereinafter referred to as the "Complaint"), his so-called "*quantum meruit*" claim failed to state a cause of action, which that deficiency, i.e., failure to contain allegations to support a cause of action thus rendering it fatally defective, constitutes a legal deficiency may raise at any time, even after trial or on appeal. <u>Rauch v. Griffin</u>, 45 Ill. App. 3d 784, 359 N.E.2d 894 (1977), and <u>In re J.P.S.</u>, 198 Ill. App. 3d 633, 556 N.E.2d 268 (1990). See also <u>In re Janine M.A.</u>, 342 Ill. App. 3d 1041, 1045, 796 N.E.2d 1175 (2003) (a challenge is raised to the sufficiency of a pleading is an issue of law that can be reviewed even on appeal, *de novo*.)

In the instant case Count II of Musburger's Complaint fatally defective for one or more of the following reasons: a.) Musburger "*quantum meruit*" claim, other than conclusory alleging Meier accepted services "the value of which is in excess of $92,750.00 (Complaint, Count II, ¶ 31), in addition failing to make a prayer under that Count, failed to allege and at trial failed to prove that the billing invoice he sent Meier and on which he sued contained sufficiently detail to require payment. B.) Musburger had never obtained a valid license as was at all time relevant required by the Private Employment Agency Act (hereinafter referred to as "Employment Act"), in order procure employment for Meier or to charge him the fees claimed, c.) Musburger's complaint failed to factually detail the time, services, place and person performing them, and d.) Musburger failed to properly plead and prove he was at all times relevant an attorney duly licensed by and in good standing with the Illinois Supreme Court.

III.    THIS COURT ERRED BY DENYING MEIER'S § 2-619 MOTION TO DISMISS COUNT II

This court erred by denying Meier's § 2-619 Motion to Dismiss Count II of Musburger's Complaint and barring testimony and evidence including expert testimony at trial reasoning the Supreme Court's disciplinary scheme for lawyers to relive Musburger of the obligation to obtain

2

an additional licenses with right to get fees, not for legal but employment services legislative scheme Under the Employment Act the term "all persons" clearly includes persons that happen to be licensed attorneys. Lawyers enjoy no exemption from the Employment Act and are, like everyone else, obligated to comply with it or face the criminal penalties therein provided. Musburger's attempting to recover fees for attempting to procure employment for Meier, was barred by the employment act and public policy because of illegality and his lack of standing to sue for "*quantum meruit*". See also, <u>Glisson v. City of Marion</u>, 188 Ill.2d 211, 720 N.E.2d 1034 (1999). In addition to Musburger's his claim is void and unenforceable and against public policy because it violated the Employment Act and the Rules of Professional Conduct as stated in Meier's Expert's testimony and disclosures.

The question of whether a contract is illegal or unenforceable as a matter of public policy is a legal conclusion (<u>Zeigler v. Illinois Trust & Savings Bank</u>, 245 Ill. 180, 91 N.E. 1041 (1910)) and turns on the particular facts and circumstances of each case. <u>O'Hara v. Ahlgren, Blumenfeld & Kempster</u>, 127 Ill. 2d 333, 341, 537 N.E.2d 730, 734 (1989). Generally, courts will not enforce a private agreement that is contrary to public policy. *O'Hara*, 127 Ill. 2d at 341, 537 N.E.2d at 734. The public policy of this state is reflected in its constitution, its statutes and its judicial decisions as well as the Supreme court rules have the force of law and are indicative of public policy in the area of attorney conduct. <u>O'Hara</u>, 127 Ill. 2d at 341, 537 N.E.2d at <u>Marvin N. Benn & Associates, Ltd. v. Nelsen Steel & Wire, Inc.</u>, 107 Ill. App. 3d 442, 447, 437 N.E.2d 900, 904 (1982). The public policy and the law of this state, which govern the fees a discharged attorney, may recover. Rules 1.5(f) and 1.5(g) of the Rules of Professional Conduct (134 Ill. 2d Rs. 1.5(f), (g)) in pertinent part provide: "(f) *** [A] lawyer shall not divide a fee for legal services with another lawyer (let alone a non-lawyer) who is not in the same firm, unless the client consents to employment of the other lawyer by signing a writing... Rules 1.5(f) and 1.5(g) are expressions of public policy. The rule itself speaks of the client's consent to "employment of the other lawyer." 134 Ill. 2d R. 1.5(f).

A client may discharge an attorney at any time, with or without cause. <u>Rhoades v. Norfolk & Western Ry. Co.</u>, 78 Ill. 2d 217, 227-28, 399 N.E.2d 969, 974 (1979). When a client terminates her attorney, the contingent-fee contract ceases to exist, and the contingency term is no longer operative. <u>In re Estate of Callahan</u>, 144 Ill. 2d 32, 40, 578 N.E.2d 985, 988 (1991). A discharged attorney may be compensated for the services rendered before the discharge on a *quantum meruit* basis. <u>Rhoades</u>, 78 Ill. 2d at 230, 399 N.E.2d at 975. *Quantum meruit* literally means, "as much as he deserves." <u>First National Bank v. Malpractice Research, Inc.</u>, 179 Ill. 2d 353, 365, 688 N.E.2d 1179, 1185 (1997). In *quantum meruit* recovery, the former client is liable

for the *reasonable value* of the services received during the attorney's employment. Callahan, 144 Ill. 2d at 41, 578 N.E.2d at 938-89. However, it is the client's rights, not the attorney's remedies, that are central and a single focus animates our rules of professional conduct and the common law of this state: the client's best interest. See Corti v. Fleisher, 93 Ill. App. 3d 517, 417 N.E.2d 764 (1981). The right of the client to retain counsel of her own choosing and to pay fees commensurate with the services rendered and the responsibilities assumed are of paramount concern.

The pleadings and proofs at trial not only show a failure to detail and disclose who did what work, but established Musburger's attempt to bill fees for a non-lawyer on his law office letterhead and divide and share fees with his unlicensed non-attorney son. In Leoris v. Dicks, 150 Ill. App. 3d 350, 501 N.E.2d 901 (1986) an attorney was retained by a client to represent him in his personal injury claim on a contingency basis. The attorney commenced investigation. Then, six months later, the client discharged him without cause and retained another. They discharged attorney then sued his former client. On appeal, the court concluded that the trial court had properly dismissed his complaint. In so doing, it held it to be clear that Illinois public policy prohibits a discharged lawyer from receiving a percentage-based fee where said fee was not related to the value of services rendered or the client does not consent to the fee arrangement. Leoris, 150 Ill. App. 3d at 353. In the instant case the proofs are clear that Meier was neither advised of nor did he ever consent to the hourly rate the Musburgers attempted to charge.

Under 705 ILCS 205/1[1] (hereinafter referred to as "Attorney Act"), the legislature has mandated that only persons duly licensed by the Supreme Court to practice law may provide or charge for legal services (copy of statute attached) does not exempt relieve attorneys from complying with other licensure requirements the Illinois Legislature has proscribed if they should wish to engage in and charge fees for engaging in other licensed professional activities such as the other Professional and Occupational activities[2] not *also* regulated by the Supreme Court. In any event, should any person, whether or not an attorney, desire to engage in or practice any occupation so regulated, they must first fully comply with the law pertaining to that particular

---

[1] 705 ILCS 205/1 (from Ch. 13, par. 1)
     Sec. 1*No person shall be permitted to practice as an attorney or counselor at law within this State without having previously obtained a license for that purpose from the Supreme Court of this State. No person shall receive any compensation directly or indirectly for any legal services other than a regularly licensed attorney, nor may an unlicensed person advertise or hold himself or herself out to provide legal services.* (Emphasis supplied)

[2] See statutory list of other PROFESSIONS AND OCCUPATIONS regulated by the Illinois Legislature attached.

profession or occupation. Lawyers may render legal services once under the Attorney Act, they may not and a law license in no way entitles them render, nor is the A.R.D.C. constituted to regulate unlicensed surgical, medical, mortician, nursing, dental, carnival, architectural, cosmetological, real estate, employment agency services or the myriad of other non-legal service professions and occupations governed by Chapter 225 of the ILCS. Conversely, it would be ridiculous for any person who might hold a license under Chapter 225 to maintain that, because they hold one such license, they can provide legal services without a law license or are somehow exempt from the clear mandate of the Attorney Act.

In the instant case the record shows and Musburger plead and testified that he was primarily attempting to secure employment for Meier and charge him a percentage of his income a fee therefore, he failed to plead or prove and indeed conceded throughout the record, particularly in connection with Meier's Motion to Dismiss pursuant to § 2-619 his *quantum meruit*" Count 1 of his Complaint, that, though he alleged and testified in his deposition and at trial that he attempted to procure employment for Meier but was never licensed under the Employment Act, he at no time had procured a license therefor from the Illinois Department of Labor as is mandated under The Private Employment Agency Act[3] (copy of statute attached) in

_____

[3] The Private Employment Agency Act.
(225 ILCS 515/0.01) (from Ch. 111, par. 900) (Source P.A. 86-1324)
* * *
(225 ILCS 515/1) (from Ch. 111, par. 901) (Source P.A. 86-1324)
*No person* shall open, keep or carry on any employment agency in the State of Illinois, unless such person shall procure a license therefor from the Department of Labor. Any person who shall open up, or conduct any such agency without first procuring such license or without paying any fees required by this Act, shall be guilty of a Class B misdemeanor.

* * *
*It shall be unlawful for any employment agency to charge, collect or receive a greater compensation for any service performed by it than is specified in such schedule filed with the Department of Labor. It shall be unlawful for any employment agency to collect or attempt to collect any compensation for any service not specified in the schedule of fees filed with the department.*

* * *
(225 ILCS 515/4.) (from Ch. 111, par. 904)
Sec. 4. *It shall be unlawful for any person* to act as an employment counsellor, or to advertise, or assume to act as an employment counsellor, without first obtaining a license as such employment counsellor, from the Department of Labor. It shall be unlawful for any person to engage in, operate or carry on the business of an employment agency *unless each employee of such agency*, who furnishes information to any person as to where employees or employment may be obtained or found, is a licensed employment counsellor. Where the license to conduct an employment agency is issued to a corporation and any officer of the corporation performs any function defined as those to be performed by an employment counsellor, he shall be considered an employee of the corporation and shall be required to secure a license as an employment counsellor.

(225 ILCS 515/11) (from Ch. 111, par. 914)

order to attempt to procure employment for Meier or attempt to charge or collect a fee therefor. *See also* Ferrer v. Preston, No. B188997, 2006 WL 3438255 (Cal. Ct. App. Nov. 30, 2006) (an attorney claim against his client and TV personality Alex Ferrer (Judge Alex) for failure to pay fees. (Copy attached)

III.    THE JURY VERDICT RENDERED AND JUDGMENT ENTERED ON COUNT II OF
        MUSBURGER'S VERIFIED COMPLAINT FOR *"QUANTUM MERUIT"* WAS AGAINST
        THE LAW, THE PROOFS AND THE MANIFEST WEIGHT OF THE EVIDENCE

Assuming that the Musburger's factual allegations are true, his claim for *quantum meruit* fails on its face for essentially the same reason that his contractual claim failed - that is, because plaintiff has not adequately alleged that defendants obtained any identifiable, tangible benefit as a result of his legal services. Those cases that recognize a *quantum meruit* claim for a wrongfully discharged attorney who had been retained under a contingency-fee agreement presuppose that the client recovered something on his claim or otherwise tangibly benefited from the discharged lawyer's work. Here Musburger failed to plead or prove at trial that Meier obtained any specific,

---

Sec. 11. Definitions. When used in this Act, unless the context indicates otherwise:
    The term "employment agency" *means any person engaged for gain or profit in the business of securing or attempting to secure employment for persons seeking employment or employees for employers.*
                                        * * *
    *The term* "employer" *means any person employing or seeking to employ any person for hire.*
    *The term* "employee" *means any person performing or seeking to perform work or services of any kind or character whatsoever for hire.*
    *The term* "person" *means any person, firm, association, partnership or corporation.*
    *The term* "employment counsellor" *means employees of any employment agency who interview, counsel, or advise applicants or employers or both on employment or allied problems, or who make or arrange contracts or contacts between employers and employees. The term* "employment counsellor" *includes employees who solicit orders for employees from prospective employers.*
    *The term* "acceptance" *means a mutual agreement, verbal or written, between employee and employer as to starting salary, position, time and place of employment.*
    *The term* "applicant" *means any person who uses the services of an employment agency to secure employment for himself.*
    *The term* "department" *means the Department of Labor.*
    *The term* "Director" *means the Director of the Department of Labor.*
    *The term "fee" means money or a promise to pay money...*
                                        * * *
    *The term* "theatrical employment agency" *means and includes the business of conducting an agency, bureau, office or any other place for the purpose of procuring or offering, promising or attempting to provide engagements for persons who want employment in the following occupations: circus, vaudeville, theatrical and other entertainment, or exhibitions, or performances, or of giving information as to where such engagements may be procured or provided, whether such business is conducted in a building, on the street, or elsewhere.*
    *The term* "theatrical engagement" *means and includes any engagement or employment of a person as an actor, performer, or entertainer, in a circus, vaudeville, theatrical or any other entertainment, exhibition or performance. (Emphasis supplied)*
                                        * * *

6

identifiable, tangible benefit, i.e., a job as a result of his legal services. A requirement that a lawyer-plaintiff allege some benefit by the client-defendant (but not specifically plead or prove here) is fully consonant with the public-policy considerations that give rise to a client's privilege to terminate the attorney-client relationship for any reason without penalty. See IL. R. Prof. Conduct 1.2(a) Scope of Representation (a) A lawyer shall abide by a client's decisions concerning the objectives of the representation)

IV.    THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE EVIDENCE WAS UNCONTRADICTED THAT MEIER DISCHARGED MUSBURGER FOR CAUSE

The most critical aspect of the professional relationship between an attorney and a client is the trust and confidence of the person being represented. If the client were liable for the full contract price when he or she no longer has confidence in his attorney's handling of a case, the right to discharge the attorney would be of little value. Under the rule of *quantum meruit*, the client and the attorney are both protected. Dissatisfaction with the quality of the service rendered is not always the cause of discharge; rather, the discharge may result from the client's lack of faith and trust or confidence in the attorney.

Under *quantum meruit*, the client need not show cause or present evidence sufficient to constitute legal malpractice or negligence before he can discharge the attorney without full contract price liability. Without a quantum meruit approach, a dissatisfied client is forced to pursue a malpractice claim if he loses confidence in his attorney. Furthermore, the fact that an attorney-client contract is contingent does not mean the attorney has been vested with an interest in the case, nor does it affect the client's right to discharge the attorney. Fox & Assocs. Co., L.P.A. v. Purdon, 541 N.E.2d 448, 450 (Ohio 1989); see also, Kaushiva v. Hutter, 454 A.2d 1373 (D.C. 1983); MacInnis v. Pope, 285 P.2d 688, (Cal. Ct. App. 1955) (attorney may be discharged, even on the courthouse doorsteps.). It would be inequitable to force a client who has received incomplete service from the discharged attorney to pay the full price of the contract.

In Illinois, clients may discharge their attorney at any time, with or without cause. Warner v. Basten, 118 Ill. App.2d 419, 255 N.E.2d 72 (1969). See also, Leroy's Horse and Sports Place v. Racusin 21 Fed. Appx. 716, 718 (9th Cir. 2001) (holding that under Illinois law, '[w]hen a client terminates her attorney, the contingent-fee contract ceases to exist, and the contingency term in no longer operative. In such circumstances, the proper fee for the attorney is the quantum meruit value of the services."); Rhoades v Norfolk & W. Ry. Co., 399 N.E.2d 969 (Ill. 1979) (an attorney discharged without cause after a contingent-fee agreement had been executed was not entitled to collect the full stipulated fee, but rather was limited to a quantum meruit recovery for

7

the value of services rendered prior to the discharge). Like Illinois, the vast majority of jurisdictions today employ the modern approach to attorney recovery upon termination of a contingent fee contract, that of the attorney only being entitled to recover the "reasonable value" of services rendered the client prior to discharge on the basis of quantum meruit. See e.g., In re Complaint of Cap'n Rick Corp., 525 F. Supp. 31, (S.D.N.Y. 1981); Marquam v Vachon, 7 F.2d 607 (9th Cir. 1925); Sutton v. Subaru of Am., Inc., 771 F. Supp. 321 (D. Kan. 1991); Gaines, Gaines & Gaines, P.C. v. Hare, Wynn, Newell & Newton, 554 So. 2d 445 (Ala. Civ. App. 1989); Rosenberg v Levin, 409 So. 2d 1016 (Fla. 1982); Salem Realty Co. v Matera, 426 N.E.2d 1160 (Mass. 1981); Morris v. City of Detroit, 472 N.W.2d 43 (Mich. Ct. App. 1991); Plaza Shoe Store, Inc. v Hermel, Inc., 636 S.W.2d 53 (Mo. 1982); Glick v. Barclays De Zoete Wedd, Inc., 692 A.2d 1004 (N.J. Super. Ct. App. Div. 1997); Jaslow v United States, 308 F. Supp. 1164 (E.D.N.Y. 1970).

Meier had more than ample cause to discharge Musburger with being obligated to pay him any fee. Here, the proofs were uncontradicted that Musburger violated IL. R. Prof. Conduct 1.2(a) by refusing to abide by a Meier's decisions concerning the objectives of the representation. Specifically, he failed and refused to follow Meier's instructions, particularly, inter alia, to cease representing him. Moreover, failed to disclose and withheld information to him including offers, failed and refused to give him any detail or basis for his bill when request, secreted and promoted his son's unauthorized practice of law, failed to comply with Employment Act, represented conflicting interests of others and his own to his exclusion, split fees with his unlicensed son, attempting to obtain a conflict of interest waiver without full disclosure, as well as other disclosed, plead and testified to breaches of fiduciary duties.

Since, in the matter at bar, unrebutted testimony and documentary evidence admitted at trial that showed unequivocally that Meier discharged Musburger for cause he was not entitled to any fee under quantum meruit and the jury's verdict was erroneous.

V.    THIS COURT ERRED IN LIMITING MEIER'S EXPERT'S DISCLOSURES AND AMENDED DISCLOSURES AND DISALLOWING RELATED TRIAL TESTIMONY.

This court erred Entering an order striking portions of opinions disclosed by Defendant Garry Meier's Answers to Plaintiffs Rule 213(f)(3) Interrogatories and preventing testimony thereon as well as those disclosed by Defendant Garry Meier's Amended Answers to Plaintiffs Rule 213(f)(3) Interrogatories.

VI.    THE VERDICT WAS AGAINST THE LAW AND THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE JURY COULD NOT IGNORE MEIER'S EXPERT'S UNCONTRADICTED OPINIONS, PARTICULARLY "ZERO" VALUE

8

"A reasonable fee" must represent the "market rate" for attorneys' services. Beverly Bank v. Board of Review, 193 Ill. App. 3d 130, 138; Blum v. Stenson, 465 U.S. 886. As Meier's expert testified at trial, this must be "zero" since no specific and itemized reasonable legal services were provided to Meier prior to suit and were not described nor specified in detail in Musburger's bill. In determining the "market rate" it's appropriate to use a contingency fee as a benchmark. Indeed a contingency fee has a far greater claim to the "market" In Kirchoff v. Flynn, (786 F.2d 320) the court ruled: "A court's objective is to find the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. When the prevailing method of compensating lawyers for similar services *is the contingent fee, then the contingent fee is the market rate*".

Because Meier's expert provided necessary testimony on an issue for which the jury was not equipped to use its own interpretation, and because the jury could not have reasonably have disregarded or abandoned his opinion that the lack of any value of Musburgers' unspecified services shown on his bill. (Exhibit "D") See O'Keefe v. Greenwald, 214 Ill. App. 3d 926, 936 (1991) Testimony offered by expert witnesses is to be judged by the same rules of weight and credibility applied to other witnesses, which are questions of fact for a jury. See Cannell v. State Farm Fire & Casualty Co., 25 Ill. App. 3d 907, 912 (1975). Yet, while a jury might be able to disregard an expert's opinion or conclusion of fact on the basis of credibility considerations, it cannot disregard expert testimony when this testimony pertains to issues "beyond the understanding of a layperson." Piano v. Davison, 157 Ill. App. 3d 649, 675 (1987) (jury is generally "not bound" to accept expert opinion on issue, but must do so when issue requires expert testimony); see Turney v. Ford Motor Co., 94 Ill. App. 3d 678, 685 (1981). Thus, when an issue is presented in a cause of action for which the jury is not equipped to draw any conclusion without the assistance of expert testimony, the jury cannot "reasonably come to a conclusion different than that" of the expert, thereby ignoring the expert's conclusion and instead employing its own independent interpretation of the evidence to reach an ultimate conclusion on this issue. O'Keefe v. Greenwald, 214 Ill. App. 3d 926, 936 (1991) (jury could not "reasonably come to a conclusion different than" this expert testimony); accord Piano, 157 Ill. App. 3d at 675 (jury could not disregard expert witness's beyond jury's understanding).

Unlike a jury, in a bench trial judge's familiarity with the litigation allows him or her to independently evaluate the necessity and reasonableness of the legal services rendered and can rely on its own knowledge and experience to determine whether the hours claimed and work performed are reasonable. Heller Financial, Inc. v. Johns-Byrne Co., 264 Ill. App. 3d 681 (1994);

9

Wildman, Harrold, Allen & Dixon v. Gaylord, 317 Ill. App. 3d 590, 595 (2000); Heller Financial, Inc. v. Johns-Byrne Co., 264 Ill. App. 3d 681 (1994). However, in a jury trial jurors need expert guidance concerning such matters. Moreover, in this case, applying the instruction given on fees, even without expert testimony and beyond the pitiful lack of detail in the bill, the jury lacked sufficient evidence to evaluate the necessity and reasonableness of the legal services rendered and could not rely on its own lay knowledge and lack of legal experience to determine whether the hours claimed and work performed are reasonable.

In the instant case neither Musburger nor any expert offered no proof to contradict or impeach any of Meier's expert's testimony or opinions, particularly his opinion that Mr. Meier had no obligation to pay a bill lacking detail and that the value of Musburger's services as billed were "zero" since the bill failed to describe the services in sufficient, indeed, any detail as well as by whom and when and where they were let alone by whom they were rendered and that because it was so deficient the bill did not warrant the payment of any fee. Accordingly, in addition to lacking any other specific support in the pleadings or evidence, the jury's decision to award Musburger $67,750.00 was against the law, the facts and the manifest weight of the evidence.

Moreover, "[an] attorney cannot recover from the party that he has wronged for legal services where he has represented adverse, conflicting, and antagonistic interests in the same litigation." King v. King, 367 N.E.2d 1358 (Ill. App. 4th Dist. 1977) (attorney denied recovery of fees from client's spouse where spouse had contacted attorney two years earlier about marital problems and divulged confidential information). When an attorney breaches a fiduciary duty to a principal risks forfeiture of compensation. See In re Marriage of Pagano, 607 N.E.2d 1242, 1249-50 (Ill. 1992) (an attorney who breaches a fiduciary duty to a client forfeits compensation.) See IL R. Prof. Respon. 1.5:260 Forfeiture of Lawyer's Compensation

VII.    MUSBURGER'S BALD BILL, COMPLAINT AND PROOFS LACKED SUFFICIENT DETAIL AND THUS THE JURY'S AWARD OF FEES WAS AGAINST THE LAW AND THE MANIFEST WEIGHT OF THE EVIDENCE

Musburger's complaint and proofs for attorney fees failed to specify not only the services performed and who performed those services, but also should indicate the time involved and the hourly charge. Kaiser v. MEPC American Properties, Inc., 164 Ill. App. 3d 978, 984 (1987), citing Fiorito v. Jones, 72 Ill. 2d 73 (1978). Kaiser addressed the specificity of billing explanations required by an attorney seeking fees. Kaiser, 164 Ill. App. 3d at 983. Kaiser found the descriptions of the attorney's time to be insufficient. The Kaiser court ruled that without detailed information regarding the time spent on the legal tasks, who performed the legal work, how the work performed related to the litigation and whether the work was required it was

impossible to find that the fees were reasonable. Kaiser, 164 Ill. App. 3d at 986. Here, as in Kaiser, the Musburger's failed to plead or provided detailed time sheets describing the work performed. In Kaiser, contemporaneous time records and time slips were "lost". In this case, such an attempted but sketchy exhibit concocted for trial and not contained in the bill or provided to Meier records when he asked for billing details. Here as in Kaiser, there were no detailed time records relating to the fees or detailing the activity performed, the date of the activity, and the time spent on each activity or *by whom they were performed.*

    "Without a ruling on each billing entry.... there can be no way of determining what a reasonable fee might be" (Fitzgerald v. Lake Shore Animal Hospital, 183 Ill. App. 3d 655, 662). Other cases make clear that a "billing entry" is adequate only when it quantifies "what amount of time was expended on each task.... on a given day" (Mass v. Priester, 205 Ill. App. 3d 1060, 1065). Beyond the fact pleading and proof requirements needed to establish a garden variety *quantum meruit* claim, because Musburger was an attorney his complaint for legal fees was required to include records containing detailed facts and computations upon which the charges are based and specify the services provided, by whom, as well as the time expended and the hourly rate charged. Harris Trust & Savings Bank v. American National Bank & Trust Co. of Chicago, 230 Ill. App. 3d 591 (1992).

    Applying the requirements articulated in Kaiser, Fitzgerald, Mass and Harris, Musburger's bill, complaint and proofs at trial failed to provide sufficient documentation and detail to jury to support its verdict and thus it was against the manifest weight of the evidence and the complaint failed to state a cause of action. See also Mercado v. Calumet Federal Savings & Loan Ass'n, 196 Ill. App. 3d 483, 494 (1990), (bill did not contain "detailed records maintained during the course of the litigation.") See also Mars v. Priester, 205 Ill. App. 3d 1060 (1990) In Fiorito v. Jones, 72 Ill. 2d 73 (1978), the attorneys provided total hours expended but did not provide time sheets or affidavits. Like Musburger, they failed to provide evidence as to how the time was spent or who performed the work. The appellate court concluded the trial court lacked sufficient evidence as to how or upon what basis or standard the requested fee was computed. Fiorito, 72 Ill. 2d at 96. In re Marriage of Broday, 256 Ill. App. 3d 699 (1993), the attorney provided a "summary of services" but the appellate court once again found that the attorney failed to provide the trial court with a specific account of time expended. Broday, 256 Ill. App. 3d at 707.

    Unlike a jury, in a bench trial judge's familiarity with the litigation allows him or her to independently evaluate the necessity and reasonableness of the legal services rendered and can rely on its own knowledge and experience to determine whether the hours claimed and work

performed are reasonable. Heller Financial, Inc. v. Johns-Byrne Co., 264 Ill. App. 3d 681 (1994); Wildman, Harrold, Allen & Dixon v. Gaylord, 317 Ill. App. 3d 590, 595 (2000); Heller Financial, Inc. v. Johns-Byrne Co., 264 Ill. App. 3d 681 (1994).

In the absence of a contract between an attorney and a client, the client shall owe the attorney a reasonable fee. Cripe v. Leiter, 703 N.E.2d 100, 106 (Ill. 1998). The primary method used to determine a reasonable fee is to assess the fair value of the attorney's services. This is accomplished by assessing the nature of the attorney's work, and applying the *quantum meruit* doctrine. The burden of proof rests with the attorney to prove the reasonable value of his or her services. In re Marriage of Shinn, 729 N.E.2d 546, 551 (Ill. App. Ct., 4th Dist. 2000). Here both Musburger's complaint and trial evidence failed to do so or overcome Meier's expert's testimony.

The reasonable value of the services is determined by considering several factors. These include the standing and skill of the attorney involved, the nature of the case and the novelty and difficulty of responsibility involved in the management of the case, the time and labor required, the usual and customary charge in the community and the benefits resulting to the client. Id. at 552. The determination of reasonableness is a matter for the trial court's discretion. Esker, 2001 Ill. App. LEXIS 793, *13. Once the factors have been weighed, an award of attorney fees may be considered reasonable to a court, even if the fee is disproportionate to the monetary amount of the obtained result. Id. In order to recover fees based on these factors, an attorney must present accurate records kept over the course of the representation, which contain detailed facts upon which the claims are predicated. Id. at 551. The attorney must also specify the services performed, by whom the services were performed, the time spent, and the rate charged. Kruse v. Kuntz, 683 N.E.2d 1185, 1188 (Ill. App. Ct., 4th Dist. 1996).

In determining how much time was spent on a particular matter, the attorney does not need to provide contemporaneous records and may construct a record of fees based on telephone bills and logs, correspondence and other file documents, and the recollection of the attorney and his employees. However, a contemporaneous record of events is generally more accurate. Muller v. Jones, 613 N.E.2d 271, 275 (Ill. App. 4th Dist. 1993). Deficiencies in documentation warrant a reduction in the fee, not a complete denial of fees. In re Marriage of Malec, 562 N.E.2d 1010, 1023 (Ill. App. 1st Dist. 1990). Notwithstanding the foregoing, the attorney must provide sufficient specificity of the nature of the work on any given date so that the trial court can determine whether the work was necessary and whether the time expended was reasonable. Muller, 613 N.E.2d at 275.

Courts do not countenance a coin-toss or a lottery when important rights are at stake (Kandalepas v. Economou, 191 Ill. App. 3d 51; Walker v. State Board, 65 Ill. 2d 543) - the courts

12

and the public (juries) should guessing games. Fees should be closely scrutinized so that duplication and fat has been eliminated and that only "quality" time spent in the performance of actual LEGAL services is being compensated. It would take a major leap of faith to see credibility rather than guesswork in such a process - - fact-finding is not guesswork. "Reasonableness cannot be determined on the basis of conjecture" (Harris Trust v. American National Bank, 30 Ill. App.3d 591, 603).

Some of the more apparent obstacles to any credible analysis of Mr. Musburger's unspecified and bald "hours" (for which a lawyer may not testify or recover with showing and pleading specificity) are:

The preposterous one page bill show no specific legal task entries attributable to any disclosed person, let alone any attorney and allocation of the myriad of post billing entries (incoming calls - not legal work performed) to Mr. Meier alone is impossible. Accordingly he has not established and cannot establish any valued and ALL "hours" are facially insufficient and must be totally ignored and no monetary value can established or recovered with regard thereto. Established case law dictates that Mr. Musburger is required to first plead facts (Illinois is a fact - not notice pleading state) and have produced for his client when requested, and then at trial (where not first done the need for one should never arise) present the trial court with evidence sufficient to establish that the hours billed to the Mr. Meier were, at least, not duplications of hours billed to other clients, etc. etc.

Here there are no specific description whatsoever in Mr. Musburger's scant, jaw-dropping one (1) page bill of any legal service performed what so ever or which attorney performed it. See Board of Education v. County of Lake, 156 Ill. App. 3d 1064, 1072. All "hours" must pled and billed as having been for specifically described and necessary LEGAL services and inform what LAWYER performed them. When, as here, multiple persons (only one a lawyer) participated, before any fees can be awarded, the court "must assure itself that the attorneys were not duplicating one another's efforts." (Board of Education v. County of Lake at 1073). (*Not even the precision of hindsight makes this task doable.*)

A determination of skill and standing of the attorneys performing legal services may be based "on personal observation of the attorney" (Harris Trust v. American National Bank 230 Ill. App. 3d 591, 597) However, in this case that consideration should on never need to arise because the threshold requirement that not just "hours" must be pled, but all work and billed as having been for specifically described and necessary LEGAL services and inform what LAWYER performed them.

"Without a ruling on each billing entry. . . . there can be no way of determining what a reasonable fee might be" (Fitzgerald v. Lake Shore Animal Hospital, 183 Ill. App. 3d 655, 662). Other cases make clear that a "billing entry" is adequate only when it quantifies "what amount of time was expended on each task . . . . on a given day" (Mass v. Priester, 205 Ill. App. 3d 1060, 1065). These are the kind of relevant considerations which courts have in mind when they acknowledge that "time and labor required in a particular case is not the sole factor to be considered in the *quantum meruit* equation" (Lee v. Ingalls Memorial Hospital, 232 Ill. App. 3d 475, 479).

Accordingly, Musburger's vague and undetailed bill, complaint and proofs lacked were insufficient thus rendering the jury's fee verdict against the law and the manifest weight of the evidence

## CONCLUSION

Based on the forgoing argument and authorities this court should enter an order vacating the *ex parte* judgment entered herein January 30, 2007 without notice and/or, arresting judgment, and/or granting his motion for directed verdict denied at the close of Plaintiff's case prior submission of the case to the jury, set aside the verdict and enter judgment in his favor notwithstanding the verdict, and/or dismissing Plaintiff's *"Quantum Meruit"* claim, Count II of Plaintiff's Complaint, and this cause with prejudice and entering judgment in his favor granting of a new trial in the event a request for judgment is denied; and for such other further relief as this Court may deem appropriate, fair, just and proper in the premises.

Respectfully submitted.

Garry Meier, Defendant,

By _____

Walter P. Maksym, his attorney

Walter P. Maksym
Attorney at Law
2056 N. Lincoln Avenue
Chicago, IL 60614-4525
Telephone: 773-929-2923
Cook County Atty. No. 55061

# EXHIBIT O

APPEAL NO. 07-_____

---

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

---

LAW OFFICES OF TODD W. MUSBURGER, LTD.,

PLAINTIFF - APPELLEE,

v.

GARRY MEIER,

DEFENDANT - APPELLANT.

---

APPEAL FROM THE CIRCUIT COURT OF COOK COUNTY - LAW DIVISION
CASE NO. 04 L 3760 – HON. RONALD F. BARTKOWICZ, JUDGE PRESIDING

---

## DOCKETING STATEMENT

1.  COUNSEL ON APPEAL:

    Counsel for Appellant, Garry Meier:

    > Walter P. Maksym
    > Attorney for Appellant
    > 2056 N. Lincoln Avenue
    > Chicago, IL 60614-4525
    > Telephone: (773) 929-2923

    Counsel for Appellee, Law Offices of Todd W. Musburger, Ltd.:

    > Thomas R. Mulroy
    > Carlin R. Metzger
    > Jonathan P. Harmon
    > McGuireWoods, LLP
    > 77 West Wacker, Suite 4100
    > Chicago, IL 60601-1818

2.   COURT REPORTER:

    Name:

    McCorkle Court Reporters, Inc.
    200 N. LaSalle Street, Suite 300
    Chicago, IL 60601

3.   APPROXIMATE DURATION OF TRIAL COURT PROCEEDING TRANSCRIBED:

    Six (6) days.

4.   NATURE OF CASE:

    ( ) Bench trial

    (X) Other (Explain):

Jury Trial on the sole remaining Count II of Plaintiff-Appellee's Complaint sounding in *Quantum Meruit*. This appeal is brought by the Defendant-Appellant, Garry Meier (hereinafter referred to as the "Appellant"), pursuant to Supreme Court Rule Supreme Court Rule 303, from a Judgment of Circuit Court of Cook County, Law Division, Hon. Ronald F. Bartkowicz, Judge Presiding, entered on January 30, 2007 in the amount of $68,750.00 against Appellant and in favor of Plaintiff-Appellee, Law Offices of Todd W. Musburger, Ltd. (hereinafter referred to as the "Appellee"), following a jury verdict rendered in that amount the prior day, January 29, 2007 and from the final order entered on September 26, 2007 denying Appellant's timely filed Post-Trial Motion. Appellant appeals only from the Judgment and order denying his Post-Trial Motion and prays, *inter alia*, for reversal thereof and for such other relief as may be just and proper in the premises. See copies of date stamped copies of Notice of Appeal and Notice of Filing filed and served on October 18, 2007 attached.

GENERAL STATEMENT OF ISSUES PROPOSED TO BE RAISED:

(Failure to include an issue in this statement will not result in the waiver of the issue on appeal.):

2

- Whether the Circuit Court had Jurisdiction of the subject matter, Appellee and the claim.

- Whether the Circuit Court erred in entering of a void *ex parte* judgment on January 30, 2007 in favor of Appellee, the day following the jury verdict, without notice as is required by due process under the U.S. and Illinois Constitutions and compliance with General Order 2.1 of the Circuit Court of Cook and Supreme Court Rule 104(b).

- Whether Count II of Appellee's Verified Complaint for *"Quantum Meruit"* failed to state a cause of action and was not proven at trial.

- Whether the jury's verdict and judgment entered on Count II of Appellee's Verified Complaint for *"Quantum Meruit"* was Against the Law, the Proofs and the Manifest Weight of the Evidence.

- Whether the jury's verdict was against the manifest weight of the evidence because the evidence was uncontradicted that Appellant discharged Appellee for cause.

- Whether the Circuit Court erred in limiting Appellant's Expert's Disclosures and Amended Disclosures and disallowing related trial testimony.

- Whether the jury's verdict was against the law and the manifest weight of the evidence because the jury could not ignore Appellant's expert's uncontradicted opinions, particularly "zero" value.

- Whether Appellee's bald bill, complaint and proofs lacked sufficient detail and thus the jury's award of fees was against the law and the manifest weight of the evidence.

- Whether the Circuit Court otherwise erred by limiting, precluding and excluding Appellant's disclosed expert testimony from jury.

- Whether the Circuit Court otherwise erred refused to allow evidence at trial on all of Appellant's affirmative defenses

- Whether the Appellee, a non-existent entity, failed to join and name a necessary and indispensable party plaintiff.

3

- Whether the Circuit Court erred in denying Appellant's Motion for summary Judgment with respect to Count II.
- Whether the Circuit Court erred in denying Appellant's 2-619 Motion to Count II.
- Whether the Circuit Court erred in granting Appellee's Motions in Limini and denying Appellant's Motions in *Limini*.
- Whether the Circuit Court erred in its evidentiary rulings during the jury trial by excluding proper evidence and admitting irrelevant, immaterial and prejudicial evidence.
- Whether the Circuit Court erred in denying Appellant's Motion for a mistrial.
- Whether the Circuit Court erred by denying Appellant's Motion for a directed verdict at close of Appellee's case.
- Whether the Circuit Court denying Appellant's Motions to Dismiss.
- Whether the Circuit Court denying Appellant's Motion for Summary Judgment.
- Whether the Circuit Court denying Appellant's Motion for Mistrial.
- Whether the Circuit Court denying Appellant's Post-Trial Motion and renewal of his motions for dismissal, summary judgment, and for directed verdict denied at the close of Appellee's case and prior submission of the case to the jury.
- Whether the Circuit Court denying Appellant's Post-Trial Motion and renewal of his motions for dismissal, summary judgment, and for directed verdict denied at the close of Appellee's case and prior submission of the case to the jury.
- Whether the Circuit Court otherwise erred in its rulings and the verdict and judgment were otherwise against the law, the proofs and the manifest weight of the evidence.

I, as attorney for the Appellant, hereby certify that on October 18, 2007 (See copy of date-filed-stamped Request for Preparation of Record attached) and again on October 29, 2007 I asked the Clerk of the Circuit Court to prepare the record (See copy of date-filed-stamped Record on Appeal Request Form and Receipt attached), then paying the required fee deposit therefore. I did not need to personally request any Court Reporter to prepare a transcript of that dates proceeding in the above-referenced case because they,

4

the transcripts of the dates of the jury trial and hearing on Defendant's Post-Trial Motion in the above-captioned cause had previously been ordered by me, transcribed and filed* with said Clerk.

Date: November 7, 2007

Respectfully submitted,

Garry Meier, Defendant-Appellant,

By _____
Walter P. Maksym, his attorney

I hereby acknowledge receipt of an order for the preparation of a report of proceedings.

_____N/A*_____
(Court Reporter or Supervisor)

_____N/A*_____
(Date)

Walter P. Maksym
Attorney at Law
2056 N. Lincoln Avenue
Chicago, IL 60614-4525
Telephone: (773) 929-2923
Cook County Atty. No. 55061

5

# EXHIBIT P

**FILE COPY**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

Law Offices of Todd W. Musburger, Ltd.,         )
                                                )
                    Plaintiff,                  )
                                                )        Case No. 04 L 003760
        v.                                      )
                                                )        Hon. Ronald F. Bartkowicz
Garry Meier,                                    )        Judge Presiding - Calendar "Y"
                                                )
                    Defendant.                  )

### PETITIONER GARRY MEIER'S VERIFIED PETITION TO VACATE VOID JUDGMENT PURSUANT TO 735 ILCS 5/2-1401

NOW COMES Garry Meier, Petitioner, (hereinafter referred to as "Meier"), by Walter P. Maksym, his attorney, and petitions to vacate the Judgment entered herein January 30, 2007 in favor of "Law Offices of Todd W. Musburger, Ltd." pursuant to 735 ILCS 5/2-1401, stating as follows:

1.      That on April 1, 2004 by attorney Laura C. Scotellaro of McGuireWoods LLP, signed and filed a Verified Complaint on behalf of "Law Offices of Todd W. Musburger, Ltd." in the above-captioned case, purportedly verified by Todd W. Musburger. (See filed stamped copy of Verified Complaint attached hereto and incorporated herein pursuant to 735 ILCS 5/2-1401(b).)

2.      That following the jury trial conducted in this matter a verdict was rendered on January 29, 2007 in favor of "Law Offices of Todd W. Musburger, Ltd." and against Meier on Count II of the Verified Complaint for *quantum meruit* in the amount of in the amount of $68,750.00. (See copy of Jury Verdict attached pursuant to 735 ILCS 5/2-1401(b).)

3.      That thereafter, on January 30, 2007, a final Judgment in favor of "Law Offices of Todd W. Musburger, Ltd." and against Meier in the amount of $68,750.00. (See copy of Judgment attached pursuant to 735 ILCS 5/2-1401(b).)

4.      That it has since been discovered by Meier's undersigned counsel, following a routine telephone inquiry made to the Illinois Supreme Court Clerk's Office, that "Law Offices of Todd W. Musburger, Ltd." never registered with that Office as required by Supreme Court Rule 721 for all corporations before they can practice law in the State of Illinois.

5.    That in order to determine the reason for said lack of any record of registration with Illinois Supreme Court Clerk's Office as is required by Supreme Court Rule 721 by Illinois Supreme Court Clerk's Office, thereafter, Petitioner's counsel conducted a routine internet inquiry via the official website (http://www.ilsos.gov/corporatellc/) maintained Office of the Illinois Secretary of State (hereinafter referred to as the "Secretary of State") that revealed upon submitting "Law Offices of Todd W. Musburger, Ltd." for an online inquiry that such name did not match any records in said Secretary of State's Corporation/LLC-GS Search database as shown on the true and correct print-out thereof attached hereto and incorporated herein pursuant to 735 ILCS 5/2-1401(b).

6.    That thereafter, Petitioner's counsel ordered and a Certification from the Secretary of State to formally confirm that no record existed with respect to "Law Offices of Todd W. Musburger, Ltd.".

7.    That thereafter, Petitioner's counsel obtained from the Secretary of State, a signed original Certification bearing its official seal dated October 5, 2007 that confirms, shows and proves that, as of said date, the Secretary of State's an examination of the records of said Office "... does not disclose that a corporation, either domestic or foreign, entitled "Law Offices of Todd W. Musburger, Ltd." was ever incorporated or licensed to transact business in this State". (See original signed Office of the Illinois Secretary of State's Original Certification bearing its official seal dated October 5, 2007 attached hereto and incorporated herein pursuant to 735 ILCS 5/2-1401(b).)

8.    That at all times relevant 805 ILCS 5/2.15 provided that corporate existence shall begin upon the filing of articles of incorporation and 805 ILCS 5/2.10 provided that a corporation must file its Certificate of Incorporation with the Secretary of State before operation as business can commence. Since all corporations are strict creatures of statute, Articles of Incorporation must be filed with the Secretary of State containing: (1) the name of the corporation, including indicia of corporate status (Inc., Ltd., Co., etc.); (2) the number of authorized shares; (3) the name and address of the registered agent and office; and (4) the name and address of each incorporator. Said Secretary of State's Certification established that the non-existent plaintiff "Law Offices of Todd W. Musburger, Ltd." never complied with said statutory provision and therefore never came into being.

9.    That by reason of the fact the non-existent plaintiff "Law Offices of Todd W. Musburger, Ltd." was never incorporated or licensed to transact business in this State under the Illinois Business Corporation's Act nor ever registered as an assumed business name in the County of Cook as required under the Assumed Business Name Act, "Law Offices of Todd W. Musburger, Ltd." never came into being and was at all times relevant a non-entity (not a natural or legal person), but a mere, never incorporated, unregistered, unlawfully assumed "fictitious" purported corporate name trade name that happened to included the misleading and false designation "Ltd.".

10.    That in Illinois, as stated above, since corporations are strictly creatures of statute, artificial persons that cannot exist without the authority of law and compliance with the procedures to establish cognizable corporations are mandatory, only duly and actually incorporated corporations, not sham or fictitious names such as the never incorporated, non-existent plaintiff, may possess and exercise those powers granted by statute, include the purely statutory right to sue, as was at that at all times relevant governed by 805 ILCS 5/3.10 that provided in pertinent part:

Sec. 3.10. General powers. Each corporation shall have power:

\* \* \*

(b) To sue and be sued, complain and defend, in its corporate name.

\* \* \*

11.    That therefore, at the time this case was filed on April 1, 2004 and at all times prior thereto and thereafter, including but not limited to the date said Judgment was entered, "Law Offices of Todd W. Musburger, Ltd." had never existed as a corporation and was thus a non-entity lacking the lawful authority, capacity and standing to file or maintain this or any lawsuit in the Courts of this State under 805 ILCS 5/3.10(b).

12.    That Petitioner's counsel also made an inquiry to the Office of the County Clerk of Cook County (hereinafter referred to as the "County Clerk") to determine whether the name "Law Offices of Todd W. Musburger, Ltd." had ever been duly registered as an assumed business name in the County of Cook as was at all times required under the Illinois Assumed Business Name Act and discovered that it had never been so registered.

3

13.    That thereafter, Petitioner's counsel ordered and obtained a Certification from the County Clerk to formally confirm that no record existed with respect to "Law Offices of Todd W. Musburger, Ltd.".

14.    That thereafter, Petitioner's counsel obtained from the County Clerk, a signed original Certification bearing its official seal dated October 5, 2007 that confirms, shows and proves that, as of said date, as of said date, the County Clerk's examination of the records of said Office discloses that the non-existent plaintiff "Law Offices of Todd W. Musburger, Ltd." was never registered as an assumed business name in the County of Cook as required under the Assumed Business Name Act of Illinois. (See original of Office of the County Clerk of Cook County's signed certification [and receipt] obtained October 5, 2007 bearing its official seal attached hereto and incorporated herein pursuant to 735 ILCS 5/2-1401(b).)

15.    That at all times relevant, an Illinois corporation had no legal right to use any name other than that under which it is organized and use by a corporation of a name different from its legal corporate name was against the public policy of the State, that was at all times relevant embodied in Illinois Business Corporations Act and the Illinois Assumed Business Name Acts.

16.    That at all times relevant of the Illinois Business Corporations Act (805 ILCS 5/4.05) provided in pertinent part:

Sec. 4.05. Corporate name of domestic or foreign

(a) The corporate name of a domestic corporation or of a foreign corporation organized, existing or subject to the provisions of this Act:

(1) Shall contain, separate and apart from any other word or abbreviation in such name, the word "corporation", "company", "incorporated", or "limited", or an abbreviation of one of such words...

* * *

(7) Shall be the name under which the corporation shall transact business in this State unless the corporation shall also elect to adopt an assumed corporate name or names as provided in this Act; provided, however, that the corporation may use any divisional designation or trade name without complying with the requirements of this Act, provided the corporation also clearly discloses its corporate name.|

4

\* \* \*

17.    That at all times relevant of the Illinois Business Corporations Act (805 ILCS 5/4.15) provided in pertinent part:

Sec. 4.15. Assumed corporate name.

(a) A domestic corporation or a foreign corporation admitted to transact business or attempting to gain admission to transact business may elect to adopt an assumed corporate name that complies with the requirements of paragraphs (2), (3), (4), (5) and (6) of subsection (a) of Section 4.05 of this Act with respect to corporate names.

(b) As used in this Act, "assumed corporate name" means any corporate name other than the true corporate name, except that the following shall not constitute the use of an assumed corporate name under this Act:

(1) the identification by a corporation of its business with trademark or service mark of which it is the owner or licensed user; and

(2) the use of a name of a division, not separately incorporated and not containing the word "corporation", "incorporated", or "limited" or an abbreviation of one of such words, provided the corporation also clearly discloses its corporate name.

(c) Before transacting any business in this State under an assumed corporate name or names, the corporation shall, for each assumed corporate name, pursuant to resolution by its board of directors, execute and file in duplicate in accordance with Section 1.10 of this Act, an application setting forth:

(1) The true corporate name.
(2) The state or country under the laws of which it is organized.
(3) That it intends to transact business under an assumed corporate name.
(4) The assumed corporate name which it proposes to use.

\* \* \*

18.    That all times relevant the Illinois Assumed Business Name Act (805 ILCS 405) provided in pertinent part:

\* \* \*

Sec. 1. Certificate; misrepresentation. No person or persons shall conduct or transact business in this State under an assumed name, or under any designation, name or style, corporate or otherwise, other than the real name or names of the individual or individuals conducting or transacting such business, unless such person or persons shall file in the office of the County Clerk of the County in which such person or persons conduct or transact or intend to conduct or transact such business, a certificate setting forth the name under which the business is, or is to be, conducted or transacted, and the true or real full name or names of the person or persons owning, conducting or transacting the same, with the post office

5

address of addresses of such person or persons and every address where such business is, or is to be, conducted or transacted in the county. ...

\* \* \*

Sec. 5. Any person or persons carrying on, conducting, or transacting business as aforesaid, who shall fail to comply with the provisions of this Act, shall be guilty of a Class C misdemeanor, and each day any person or persons conducts business in violation of this Act shall be deemed a separate offense.

\* \* \*

19.    That in addition to the fact the non-existent plaintiff never acquired the legal capacity to sue and was not a non-entity (not a natural or legal person), but a mere, never incorporated, assumed purported corporate name, an unregistered, unlawfully assumed "fictitious" trade name that happened to included the misleading and false designation "Ltd." but never actually existed as such, "Law Offices of Todd W. Musburger, Ltd." never acquired the legal capacity to sue Meier or anyone else. Therefore, said non-existent plaintiff, a mere fictitious assumed name, never possessed the legal authority "standing" - the right or capacity legal to sue - to obtain a verdict, and no judgment could be awarded against Meier because, due the not-existence of "Law Offices of Todd W. Musburger, Ltd.", the court never acquired subject mater jurisdiction of it nor the case and no viable and valid action was ever commenced, the invalid Verified Complaint was no complaint at all, and no justiciable issue was presented to the court through proper pleadings herein in the eyes of the law.

20.    That Petitioner's counsel subsequently obtained from the Illinois Supreme Court Clerk's, a signed original Certification bearing its official seal, dated October 9, 2007 that confirms, shows and proves that, as of said date, an examination of the records of said Office disclosed that the non-existent plaintiff "Law Offices of Todd W. Musburger, Ltd." was never registered to practice law under Illinois Supreme Court Rule 721(c) as is confirmed, shown and proved by the Illinois Supreme Court Clerk's original Certificate dated October 9, 2007 revealing no record of registration of "Law Offices of Todd W. Musburger, Ltd." (See Illinois Supreme Court Clerk's original Certificate dated October 9, 2007 revealing no record of registration of "Law Offices of Todd W. Musburger, Ltd." attached hereto and incorporated herein pursuant to 735 ILCS 5/2-1401(b).)

6

21.     That at all times relevant Illinois Supreme Court Rule 721 provided in pertinent part:

* * *

(c) No corporation, association, limited liability company, or registered limited liability partnership shall engage in the practice of law in Illinois, or open or maintain an establishment for that purpose in Illinois, without a certificate of registration issued by this court.

* * *

(e) An application for registration shall be in writing signed by an authorized shareholder of the corporation, ... and filed with the clerk of this court.... The application shall contain the following:

(1) the name and address of the corporation...

(2) the statute under which it is formed....

* * *

22.     That at all times relevant the Illinois Attorney Act (705 ILCS 205/1) provided in pertinent part:

* * *

Sec. 1. No person shall be permitted to practice as an attorney or counselor at law within this State without having previously obtained a license for that purpose from the Supreme Court of this State. No person shall receive any compensation directly or indirectly for any legal services other than a regularly licensed attorney, nor may an unlicensed person advertise or hold himself or herself out to provide legal services.

* * *

Any person practicing, charging or receiving fees for legal services or advertising or holding himself or herself out to provide legal services within this State, either directly or indirectly, without being licensed to practice as herein required, is guilty of contempt of court and shall be punished accordingly, upon complaint being filed in any Circuit Court of this State. Such proceedings shall be conducted in the Courts of the respective counties where the alleged contempt has been committed in the same manner as in cases of indirect contempt and with the right of review by the parties thereto.

23.     That by reason of the foregoing under "Law Offices of Todd W. Musburger, Ltd." could not ever qualify for either a law license or be registered to practice law under Illinois Supreme Court Rule 711, as is shown and proved by the Illinois Supreme Court Clerk's original

7

Certificate dated October 9, 2007 revealing no record of registration of "Law Offices of Todd W. Musburger, Ltd." (See Illinois Supreme Court Clerk's original Certificate dated October 9, 2007 revealing no record of registration of "Law Offices of Todd W. Musburger, Ltd." attached hereto and incorporated herein pursuant to 735 ILCS 5/2-1401(b).)

    24.    That as the Verified Complaint plainly reveals by reason of the fact that those who may have operated under "Law Offices of Todd W. Musburger, Ltd." violated 705 ILCS 205/1 Illinois Supreme Court Rule 711 by claiming compensation legal services to Meier the non-existent plaintiff name for the reasons herein stated.

    25.    That by reason of said plaintiff's non-existence, as show from the Illinois Secretary of State's Certification attached hereto and incorporated herein, at the time this case was filed and at all time thereafter, including but not limited to the dates said Verdict was rendered and Judgment was entered, the non-existent plaintiff "Law Offices of Todd W. Musburger, Ltd." was never incorporated and therefore, because it did not lawfully exist as an actual corporation, it could not satisfy the basic requirements Illinois Supreme Court Rule 711 and so could not in anyway be licensed or authorized to do any business, including but not limited to the practice law in the State of Illinois.

    26.    That by reason of it being a non-existent plaintiff, "Law Offices of Todd W. Musburger, Ltd." could not lawfully possess, own, claim, assert, bring, file, prosecute or maintain before this Court any cause of action nor did it have standing to sue in order to bring this or any other suit or any Court of this State nor secure or enforce any judgment that might be obtained therefrom under any circumstances. Said non-existent plaintiff, "Law Offices of Todd W. Musburger, Ltd." therefore lacked the lawful authority and capacity to sue in said assumed and fictitious name thereby non conferring jurisdiction upon it or with respect to this case.

    27.    That 805 ILCS 105/101.20 provides:

Sec. 101.20. Certificates and certified copies of certain documents to be received in evidence. All certificates issued by the Secretary of State in accordance with the provisions of this Act and all copies of documents filed in the Secretary's office in accordance with the provisions of this Act when certified by him or her, shall be taken and received in all courts, public offices, and official bodies as prima facie evidence of the facts therein stated. A certificate by the Secretary of State under the Great Seal of the State of Illinois, as to the existence or nonexistence of the facts relating to corporations which would not appear from a certified copy of any of the foregoing documents or certificates shall be taken and

8

received in all courts, public offices, and official bodies as prima facie evidence of the existence or nonexistence of the facts therein stated. (Source: P.A. 84-1423.)

28.    That by reason of the foregoing matters of public record of which this court ought take judicial notice of the documents attached that show said Verdict and Judgment are void *ab initio* and these entire proceedings are a nullity by reason of the fact said Verdict was rendered and said Judgment was entered in favor of a non-existent plaintiff, a non-entity and mere fictitious name never registered in accordance with law that could therefore did not and could never have either the requisite capacity or interest to bring this or any an action at law.

29.    That this because the entry of said void Judgment violated the due process rights of the Petitioner, under 735 ILCS 5/2-1401(f) Petitioner is not required to allege or prove due diligence or meritorious reason for obtaining relief because he seeks to vacate a void judgment and reinvest this Court jurisdiction for sole and limited purpose of determining whether an inspection of the record and the matters raised show a prior want of jurisdiction rendering said Judgment invalid.

30.    That by reason of the foregoing and one or more of the above reasons show lack of existence, registration, capacity and standing, this Honorable Court is obligated under 805 ILCS 105/101.20 to take judicial notice of said public records pursuant that establish no jurisdiction over the non-existant plaintiff "Law Offices of Todd W. Musburger, Ltd." and this cause, and must then grant this Petition and, in so doing, find that jurisdiction over this dispute was never conferred on this Court and therefore said Judgment entered herein on January 30, 2007 is void *ab initio*, and therupon perform its non-discretionary duty to to expunge from its records said void act of which it has knowledge by these presents by promptly entering an order vacating said Judgment.

WHEREFORE, Petitioner respectfully prays that this Court take judicial notice of said public records establishing no jurisdiction over the non-existant Plaintiff "Law Offices of Todd W. Musburger, Ltd." and this cause, find that Judgment entered herein on January 30, 2007 is void *ab initio* and that said complaint and these proceedings are a legal nullity, enter an order dismissing the Verified Complaint and Count II thereof pursuant to 735 ILCS 5/2-619(a)(2) and

9

setting aside and vacating said Judgment pursuant to 735 ILCS 5/2-1401(f), and for such other further relief as this Court may deem appropriate, fair, just and proper in the premises.

Respectfully submitted,

Garry Meier, Petitioner,

By _____
Walter P. Maksym, his attorney

## VERIFICATION BY CERTIFICATION

Under the penalties provided by law and pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that I am the attorney of record for the Petitioner, Garry Meier, that I has read the foregoing Petition to Vacate Judgment Pursuant to 735 ILCS 5/2-1401 and exhibits filed herein as attachments thereto and, that to the best of his knowledge, information, and belief, said Certifications and Receipt are true and correct original public documents that were duly issued by the public offices therein stated and personally obtained by me, that the aforementioned print-out was obtained by me from said Illinois Secretary of State's Corporation/LLC-OS Search database via the internet from its said website (http://www.ilsos.gov/corporatellc/), and that the copies of the Verified Complaint, Verdict and Judgment referenced therein and attached hereto are therein referenced they are true and correct copies of the court documents filed in this cause they purport to be and other matters therein stated are true to the best of my knowledge information and belief, except for the matters which may therein be stated on information and belief, which I verily believe to be true.

_____
Walter P. Maksym, Attorney for Petitioner

Walter P. Maksym
Attorney at Law
2056 N. Lincoln Avenue
Chicago, IL 60614-4525
Telephone: (773) 929-2923
Cook County Atty. No. 55061

# EXHIBIT Q

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

LAW OFFICES OF TODD W.
MUSBURGER, LTD.,

    Plaintiff,

    v.

GARRY MEIER, an individual,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)

No. 04 L 3760

FILED 8 - 16
2007 NOV 27 PM 3: 26
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

## MOTION TO DISMISS GARRY MEIER'S PETITION TO
## VACATE JUDGMENT PURSUANT TO 735 ILCS 5/2-615

Plaintiff Law Offices of Todd W. Musburger, Ltd. ("Musburger"), by its attorneys McGuireWoods LLP, moves to dismiss Defendant Garry Meier's ("Meier") Petition to Vacate the Judgment pursuant to 735 ILCS 5/2-615 and states as follows:

### INTRODUCTION

This is a *quantum meruit* action brought by Musburger to collect fees for the legal services performed by Musburger for Meier between September 2002 and September 2003. During the course of the litigation, Meier filed motions to dismiss, motions for summary judgment, motions *in limine*, and counterclaims. After approximately three years of litigation and a week-long trial, on January 29, 2007 a Cook County jury awarded Musburger $68,750 on the single count remaining at issue – Musburger's *quantum meruit* claim. Following the trial, Meier filed a post trial motion which was denied on September 26, 2007.

Now, after years of litigation and months of post-trial briefing, Meier has filed a Petition to vacate the judgment pursuant to 735 ILCS 5/2-1401, claiming that years of litigation and the judgment in this case is a nullity because the name of the Plaintiff in the caption should have been "Todd W. Musburger, Ltd." rather than "The Law Offices of Todd W. Musburger, Ltd."

The law is clear that this is a case of misnomer, which is not a basis for vacating a judgment. Additionally, the Illinois Supreme Court has expressly held that a law firm's failure to register with the Supreme Court pursuant to Supreme Court Rule 721 does not affect the validity of a judgment for attorney's fees.

## STANDARD

Section 2-1401 of the Code of Civil Procedure invokes the equitable powers of the circuit court, which allow it to prevent enforcement of a judgment when it would be unfair, unjust, or unconscionable. *Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d 371, 379 (2005). By declaring a prior order void, a "court must be mindful that it is setting aside a final judgment based upon a collateral attack." *Id.* at 380. Courts caution that a judgment should be characterized as void "only when no other alternative is possible." *Id.*

Proceedings under section 2-1401 are subject to the usual rules of civil procedure. *People v. Vincent*, 226 Ill. 2d 1, 6 (2007). "Like a complaint, the petition may be challenged by a motion to dismiss for its failure to state a cause of action or if, on its face, it shows that the petitioner is not entitled to relief." *Klein v. La Salle National Bank*, 155 Ill. 2d 201, 205 (1993). Pursuant to 735 ILCS 5/2-615, pleadings that are "substantially insufficient in law" are subject to dismissal with prejudice. *Reed v. Doctor's Assocs.*, 355 Ill. App. 3d 865, 872, 875-76 (5th Dist. 2005). Although all reasonable inferences from well-pleaded facts must be drawn in the non-movant's favor, the onus remains on the non-movant to sufficiently plead a set of facts that would warrant the relief sought. *Nesby v. Country Mut. Ins. Co.*, 346 Ill. App. 3d 564, 566 (5th Dist. 2004).

\4875675.1

## ARGUMENT

### I.    MISNOMER OF PLAINTIFF DOES NOT MAKE THE JUDGMENT A NULLITY

Meier first argues that the judgment is a nullity because at the time the judgment was entered, the named Plaintiff, Law Offices of Todd W. Musburger, Ltd., was not incorporated with the State of Illinois and was not registered as an assumed name. Instead, the firm was properly incorporated as "Todd W. Musburger, Ltd." Meier's argument has no merit because this is a case of misnomer. The name of the captioned Plaintiff in this case should have been "Todd W. Musburger, Ltd.," but was mis-styled as "Law Offices of Todd. W. Musburger, Ltd." Several Illinois courts have addressed and rejected the _exact_ argument Meier advances in his Petition.

Section 2-401(b) of the Code of Civil Procedure, entitled "Designation of parties—Misnomer," states:

> (b) Misnomer of a party is not a ground for dismissal but the name of any party may be corrected at any time, before or after judgment, on motion, upon any terms and proof that the court requires.

735 ILCS 5/2-401.

A misnomer is a "mistake in naming a person, place, or thing." Black's Law Dictionary (8th ed. 2004). It occurs when a party is styled incorrectly under a name other than its own name. _Illinois Institute of Technology Research Institute v. Industrial Com'n_, 314 Ill. App. 3d 149, 156 (1st Dist. 2000). "Misnomer exists when actual notice of the suit is given to the real parties in interest by the complaint [but] does not refer to a person by his or her correct name." _Id._ Courts determine whether a misnomer occurred by looking to the parties' intent. _Sharpness v. Grondfelt_, 307 Ill. App. 3d 676 (2d Dist. 1999).

Under, section 2-401(b) of the Civil Code of Procedure, a "[m]isnomer of a party is not a ground for dismissal." _See Wheaton v. Steward_, 353 Ill. App. 3d 67, 70 (1st Dist. 2004); _Rapier_

*v. First Bank and Trust Co. of Illinois*, 309 Ill. App. 3d 71, 80 (1st Dist. 1999). "While an opposing party may require that a misnomer be corrected, he or she cannot force a dismissal for the misnomer." *Bristow v. Westmore Builders*, 266 Ill. App. 3d 257, 261 (2d Dist. 1994) (*citing Sjostrom v. McMurray*, 47 Ill. App. 3d 1040, 1043 (2d Dist. 1977)). "One purpose of the misnomer provision of the Code is to avoid dismissal of cases on a purely technical basis and to allow the action to reach its substantive merits." *Greil v. Travelodge International, Inc.*, 186 Ill. App. 3d 1061, 1066 (1st Dist. 1989).

In *Bristow*, plaintiff initially filed suit under the name "Manning Bristow Painting and Decorating, Inc." when the correct legal entity was "Manning Bristow d/b/a Manning Bristow Painting and Decorating." *Bristow*, 266 Ill. App. 3d at 258. Like Meier in his Petition, the defendants argued that the plaintiff was a "nonexistent legal entity." *Id.* at 259. The court held that it was a case of misnomer which resulted in no prejudice to the defendant. *Id.* at 262. The plaintiff merely "misstyled itself as a corporation instead of a sole proprietorship." *Id.* at 261. The court reasoned that the parties were fully aware of the actual litigants' identities; an actual plaintiff existed; and the facts in the record identified an entity capable of suing. *Id.* at 262. Additionally, there was no evidence that plaintiff sought to take advantage of a misnomer as a means to avoid dismissal for failure to comply with rules. *Id.* Finally, the court noted that "to embrace defendants' hypertechnical argument would be . . . contrary to the spirit of section 1-106 of the Code of Civil Procedure, which provides that the Act be liberally construed in order to facilitate a speedy and final determination according to the substantive rights of the parties." *Id.*

The appellate court in *Bristow* followed the reasoning articulated in *Calvert Distillers, Co. v. Vesolowski*, 14 Ill. App. 3d 634 (1st Dist. 1973). In *Calvert*, the defendant also claimed that the judgment was a nullity because the plaintiff was not a proper legal entity. *Id.* at 635.

The plaintiff misnamed itself as a division of a corporation ("Calvert Distillers, Co."), rather than the corporation itself ("House of Seagram, Inc."). *Id.* at 636. The court found the judgment was not a nullity, reasoning that the misnomer was clear and that there was in fact an actual plaintiff. *Id.* Additionally, "[a]ll parties were fully aware of the identity of the actual litigants and the contract in question." *Id. See also Sjostrom v. McMurray*, 47 Ill. App. 3d 1040, 1042-1043 (2d Dist. 1977).

This case is similarly one of misnomer. The captioned Plaintiff should have been identified as "Todd W. Musburger, Ltd.," rather than "The Law Offices of Todd W. Musburger, Ltd." The correct entity, Todd W. Musburger, Ltd., was properly incorporated with the State of Illinois on May 17, 1982. (*See* Illinois Secretary of State Record for Todd W. Musburger, Ltd., produced in this litigation to Meier with Bates numbers 511-514 and attached hereto as Exhibit A.) Todd W. Musburger, Ltd., is a corporate entity fully capable of suing Meier. It is undisputed that both litigants were fully aware of the true identities of parties. After all, Todd Musburger was Meier's attorney. Todd Musburger brought this action against his former client, Garry Meier, to collect attorneys fees for the work he had personally performed for Meier. Both Todd Musburger and Garry Meier were in the same court room each day of the week-long trial of this case. The correct parties were involved in this suit; the plaintiff was simply misnamed. As a consequence of this error Musburger has received no advantage, and Meier has suffered no prejudice. Meier cannot reasonably argue that he was not aware of the nature of the claim or the true identity of the Plaintiff. Therefore, the Meier's Petition to Vacate should be dismissed.

Alternatively, Musburger asks this Honorable Court for leave to amend the complaint and judgment order by correcting the name of the captioned Plaintiff. Section 2-401(b) of the Code of Civil Procedure provides that "the name of a party may be corrected at any time, before or

after judgment, on motion, upon any terms and proof that the court requires." 735 ILCS 5/2-401(b).

## II.   AN AWARD OF ATTORNEY FEES TO AN UNREGISTERED LAW FIRM IS NOT VOID

Meier next argues that the judgment is a "nullity" because The Law Offices of Todd W. Musburger, Ltd. was not properly registered pursuant to Illinois Supreme Court Rule 721. There is no dispute that Todd Musburger is and has been at all relevant times a duly licensed attorney authorized to practice law in Illinois. There is no dispute that his law firm is properly incorporated in Illinois. Meier's argument – which has been expressly rejected by the Illinois Supreme Court in *Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d 371, 379 (2005) – is that Musburger's failure to register pursuant to Supreme Court Rule 721 bars Musburger from collecting his attorneys fees.[1]

### A.    Failure to Register Pursuant To Supreme Court Rule 721(c) Does Not Bar An Award Of Attorney's Fees

Supreme Court Rule 721(c) requires that law firms register with the Supreme Court of Illinois. Ill. Sup. Ct., R 721. The initial application requires a payment of a $50 fee, and renewal applications require payment of a $40 fee. Ill. Sup. Ct., R 721(e-f). Rule 721 was enacted by the legislature to generate revenue, not to protect the public welfare. *Joseph P. Storto, P.C. v. Becker*, 341 Ill. App. 3d 337, 344 (2d Dist. 2003). A law firm's failure to pay its corporate registration fees does not undermine the public's trust that its licensed attorneys can practice law competently. *Id.* The purpose of the rule is to give law firms the tax and limited liability advantages of incorporation. *Ford Motor Credit v. Sperry*, 214 Ill. 2d at 388.

---

[1] Since learning of Rule 721's registration requirement, Musburger has paid its filing fee and filed its registration with the Illinois Supreme Court. Musburger is currently in full compliance with Rule 721.

\4875675.1

In *Storto*, a law firm that failed to register with the Supreme Court sued its former client for unpaid fees. *Storto*, 341 Ill. App. 3d at 338. The court held that contractual obligations owed to a law firm not properly registered under Rule 721(c) cannot be voided absent a showing of prejudice. *Id.* at 343. The court found that there was no prejudice to the defendant because Rule 271(c) was not enacted for the protection of public safety. *Id.* Moreover, the court found that denying the earned fees would be a disproportionate remedy. *Id.*

The Illinois Supreme Court recently addressed the issue of whether a law firm's failure to register as a professional service corporation pursuant to Rule 721(c) nullifies the proceedings in which the firm participated, and causes the resulting judgments of such proceedings to be void. *Ford Motor Credit v. Sperry*, 214 Ill. 2d at 378-9. In *Sperry*, the defendant moved to vacate an award of attorneys fees to the plaintiff pursuant to 735 ILCS 5/2-1401(f), arguing that (1) a corporation is prohibited from practicing law unless it falls within the scope of the Professional Service Corporation Act, 805 ILCS 10/1 et seq.; and (2) because the law firm failed to register pursuant to Rule 721(c), it engaged in the unauthorized practice of law, which voided the award of attorney fees. *Id.* at 374. The Illinois Supreme Court rejected these arguments and held that an award of attorney fees to an unregistered law firm is not void. *Id.* at 390.

The Court noted that it has created comprehensive regulation of attorneys and disciplinary proceedings for misconduct. *Id.* at 384. These regulations include ethical guidelines in the Rules of Professional Conduct, investigation and enforcement by the Attorney Registration and Disciplinary Commission, and oversight by the office of an Administrator. *Id.* These regulations are intended to safeguard the public and assure the integrity of our legal system. *Id.* In contrast, Rule 721 is designed to permit licensed lawyers to organize and operate as professional service corporations to limit their liability. *Id.* at 384. By failing to register, the law

firm loses its right to invoke the corporate protections of limited liability, not to earn and collect fees. *Id.* at 388. But a failure to register does **not** preclude the recovery of an award for attorneys fees.

The Court also adopted the analysis of Rule 721 provided in the *Storto* decision. *Id.* at 386. A violation of the registration requirement does **not** mean the lawyers of an unregistered firm lack either the authority or the competence to practice law. *Id.* at 387. "The material inquiry in assessing whether there has been an unauthorized practice of law is whether the individual who acts on behalf of a client is duly licensed." *Id.* During the entire course of the proceedings, the plaintiff was represented by a duly licensed attorney. *Id.* at 390. Thus, the legal services provided were authorized and the award of attorney fees was proper. *Id.*

In this case, as in *Storto* and *Sperry*, Meier argues that the judgment is a nullity because Musburger failed to register pursuant to Rule 721(c). This argument has been consistently and repeatedly rejected by Illinois courts. Todd W. Musburger is a duly licensed attorney in good standing with the court. At all times during his representation of Defendant, he was authorized to practice law. Although he failed to properly register his law firm (a defect which has since been remedied), his legal services are authorized, and he is entitled to compensation for them. Therefore, he has standing to bring this action for recovery of his fees. Additionally, Meier fails to allege he suffered any prejudice from Musburger's failure to register pursuant to Rule 721.

B.    *Meier's References To The Attorney Act and Illinois Supreme Court Rule 711 Have No Bearing On The Validity Of The Judgment In This Case*

Lastly, Meier claims Musburger violated the Attorney Act, 705 ILCS 205/1 and Illinois Supreme Rule 711. These provisions have no bearing on this case because Todd W. Musburger is a licensed attorney.

705 ILCS 205/1 provides that "No person shall be permitted to practice as an attorney or counselor at law within this State without having previously obtained a license for that purpose from the Supreme Court of this State." Supreme Court Rule 711 allows supervised senior law students or graduates to represent parties before the court. These provisions are inapplicable to this case because Todd W. Musburger is a licensed attorney with the State of Illinois.

## CONCLUSION

WHEREFORE, Plaintiff Law Offices of Todd W. Musburger respectfully requests that this Court dismiss Defendant Garry Meier's ("Meier") Petition to Vacate the Judgment pursuant to 735 ILCS 5/2-615 with prejudice. In addition, Musburger respectfully requests that this Court amend the Judgment Order to correct the misnomer of the Plaintiff, to reflect that the Judgment is in favor of Todd W. Musburger, Ltd.

Dated: November 27, 2007

Respectfully submitted

LAW OFFICES OF TODD W. MUSBURGER, LTD.

By: _____
One of Its Attorneys

Jonathan P. Harmon
Carlin R. Metzger
Susan E. Groh
McGuireWoods LLP
77 West Wacker Drive
Suite 4400
Chicago, IL 60601-1681
Phone: 312.849.8100
Attorney No. 40426

\4875675.1                                          9

Certificate ___5274-109-2___



# STATE OF ILLINOIS
## OFFICE OF
## THE SECRETARY OF STATE

## To all to whom these Presents Shall Come, Greeting:

## Whereas,

ARTICLES OF INCORPORATION, DULY SIGNED AND VERIFIED OF
TODD W. MUSBURGER, LTD. INCORPORATED UNDER THE LAWS OF THE
STATE OF ILLINOIS HAVE BEEN FILED IN THE OFFICE OF THE
SECRETARY OF STATE AS PROVIDED BY THE BUSINESS CORPORATION
ACT OF ILLINOIS, IN FORCE JULY 13, A.D. 1933.

*Now Therefore, I,* Secretary of State of the State
*of Illinois by virtue of the powers vested in me by law, do hereby
issue this certificate and attach thereto a copy of the Application
of the aforesaid corporation.*

*In Testimony Whereof, I hereto set my hand and cause to
be affixed the Great Seal of the State of Illinois.
Done at the City of Springfield, this ___17th___
day of ___May___ A.D. 19 __82__ and
of the Independence of the United States
the two hundred and ___6th___*

_/s/_  Jim Edgar

SECRETARY OF STATE

EXHIBIT

A

**MUS 0511**

# ARTICLES OF INCORPORATION

TO: _____, Secretary of State

The name and address of the incorporators are as follows:

| Name | Number | Street | City | State | Zip Code |
|------|--------|--------|------|-------|----------|
| Todd W. Musburger | 2770 Prairie | | Evanston | IL | 60201 |

The above named incorporators, being one or more natural persons of the age of twenty-one years or more or a corporation, and having subscribed to the shares of the corporation to be organized pursuant hereto, for the purpose of forming a corporation under "The Business Corporation Act" of the State of Illinois, do hereby adopt the following Articles of Incorporation:

## ARTICLE ONE

The name of the corporation hereby incorporated is: _____ Todd W. Musburger, Ltd.

## ARTICLE TWO

The name and address of the initial registered agent and registered office are:

Registered agent _____ Todd W. Musburger

Registered office _____ 155 North Michigan Avenue, Suite 500

City, Zip code, County _____ Chicago, Illinois  60601 _____ Cook

## ARTICLE THREE

The duration of the corporation is ☒ perpetual  OR _____ years

## ARTICLE FOUR

The purposes for which the corporation is organized are:

Professional corporation:  to practice the sole and specific profession of law rendering that type of professional service and services ancillary thereto.

The Corporation is doing business at 155 North Michigan Avenue, Chicago, Illinois  60601

**MUS 0512**

## ARTICLE EIGHT

**Paragraph 1:** It is estimated that the value of all property to be owned by the corporation for the following year wherever located will be $ __1000.00__

**Paragraph 2:** It is estimated that the value of the property to be located within the State of Illinois during the following year will be $ __1000.00__

**Paragraph 3:** It is estimated that the gross amount of business which will be transacted by the corporation during the following year will be $ __12,000.00__

**Paragraph 4:** It is estimated that the gross amount of business which will be transacted at or from places of business in the State of Illinois during the following year will be $ __12,000.00__

NOTE: If all the property of the corporation is to be located in this State and all of its business is to be transacted at or from places of business in this State, or if the incorporators elect to pay the initial franchise tax on the basis of its entire stated capital and paid-in surplus, then the information called for in Article Eight need not be stated. The basis for computation of franchise taxes payable by domestic corporations is set forth in Section 132 of the Business Corporation Act.

Signatures of incorporators:

NOTE: If a corporation acts as incorporator the name of the corporation and the state of incorporation shall be shown and the execution must be by its President or Vice-President and verified by him, and the corporate seal shall be affixed and attested by its Secretary or an Assistant Secretary.

As an incorporator, I declare that this document has been examined by me and is, to the best of my knowledge and belief, true, correct and complete.

MUS 0513

<u>MEMORANDUM OF</u>

<u>RECORDING</u>

The original of the foregoing Certificate of Incorporation, together with the duplicate original of the Articles of Incorporation affixed thereto, was filed for record in the Office of the Recorder of Deeds of the County of     Cook     , in the State of Illinois, on the 2nd  day of  June    , A. D. 19 82, at the hour of   9: 34 o'clock, A .M. and was thereafter recorded, in the said Office, as document numbered    26246805

MUS 0514

# EXHIBIT R

Order                                    CCG N002-300M-2/24/05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Law Offices of Todd W. Musburger, Ltd.

v.                                    } No. 04 L 3760

Garry Meier

## ORDER

This cause coming to be heard on Plaintiff's 2005 Motion to Dismiss Defendant's Petition to Vacate Judgement pursuant to 735 ILCS 5/2-1401, the parties having fully briefed the Motion, and presented argument before the Court, and the Court being fully advised in the premises, IT IS HEREBY ORDERED:

(1) Plaintiff's Motion to Dismiss Defendant's Petition is GRANTED;

(2) Defendant's Petition to Vacate Judgment is DISMISSED with prejudice;

(3) Defendant is granted leave to cite additional authority, and the Court has considered Anistech v. Hedgpeth, Ill. App. 4th Dist., No. 1-05-0676, Nov. 17, 2005.

Atty. No.: 40426

Name: McGuireWoods / Carlin Metzger          ENTERED:

Atty. for: Plaintiff

Address: 77 W. Wacker, Ste 4100

Dated: _____

City/State/Zip: Chicago IL 60601

Telephone: 312 - 849 - 8100

Judge Ronald F. Bartkowicz
ENTERED

MAR 14 2008

Judge     Circuit Court - 193     Judge's No.

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS