# EXHIBIT G

STATE OF ILLINOIS      )
                                 ) SS.
COUNTY OF COOK      )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| LAW OFFICES OF )<br>TODD W. MUSBURGER, LTD. )<br> )<br>            Plaintiff, )<br> )<br>   v. )<br> )<br> )<br>GARRY MEIER )<br> )<br>          Defendant. ) | No:    04 L 3760<br>Calendar Y |

GARRY MEIER, )
       Defendant-Counter Plaintiff )
                           )
   v. )
TODD W. MUSBURGER, LTD., d/b/a )
LAW OFFICES OF )
TODD W. MUSBURGER, LTD., )
       Plaintiff-Counter Defendant. )

### ANSWER AND AMENDED COUNTERCLAIM

     Now comes defendant GARRY MEIER, by and through his undersigned attorneys MICHAEL A. PEDICONE, LTD., and as and for his Verified Answer to the Verified Complaint states as follows:

### PARTIES

1.     Defendant denies each and every allegation contained in paragraph 1 of the Complaint.

2.     Defendant denies that he hosted the "Roe and Garry" afternoon talk show on WLS -AM radio ("WLS") in Chicago until February 19, 2004 as alleged in the Verified Complaint and affirmatively states that he last hosted such show on January 9, 2004.  Defendant admits the remaining allegations contained in paragraph 2 of the Complaint.

3.     Defendant admits that jurisdiction exists pursuant to 735 ILCS 5/2-209(a)(7) and denies each and every remaining allegation contained in paragraph 3 of the Complaint.

## FACTUAL BACKGROUND

4.     Defendant admits that he met with Todd W. Musburger in or about January 1998 and requested that Todd W. Musburger serve as his agent and attorney for the negotiating and drafting of Meier's anticipated 1999 WLS contract.  Defendant denies each and every remaining allegation contained in paragraph 4 of the Complaint.

5.     Defendant admits that he entered into a contract (hereinafter referred to as the "1998 Agreement Agreement") with Todd W. Musburger, Ltd.  A true and correct copy of the 1998 Agreement is attached hereto and marked as "Exhibit A."  Defendant admits that the 1998 Agreement provided that Todd W. Musburger, Ltd. would be his exclusive representative for negotiating and drafting his agreements in the entertainment fields of radio and television. Defendant admits that Todd W. Musburger, Ltd. agreed to provide advice and counseling as needed, and to use its best efforts to locate other broadcast outlets that would be interested in Defendant's services. Defendant denies each and every remaining allegation contained in paragraph 5 of the

Complaint.

6.  Defendant admits that he agreed to pay Todd W. Musburger, Ltd. the sum of five (5%) percent of the gross amount of agreements which Todd W. Musburger, Ltd. negotiated on his behalf. Defendant admits that he agreed to pay all expenses incurred by Todd W. Musburger, Ltd. on his behalf subject to the provisions of the agreement. Defendant denies each and every remaining allegation contained in paragraph 6 of the Complaint.

7.  Defendant denies each and every allegation contained in paragraph 7 of the Complaint.

8.  Defendant admits that Todd W. Musburger, Ltd. negotiated a five (5) year contract between Defendant and WLS, in which Defendant provided his services as a radio talk show host. Defendant admits receiving a signing bonus, large base salary that increased each year and a yearly bonus, the amount of which depended upon the ratings of the "Roe and Garry" show. Defendant denies each and every remaining allegation contained in paragraph 8 of the Complaint and denies that the term of this contract and his compensation have any relevance whatsoever to Plaintiff's claim for attorney fees which are not related to this 1999 WLS contract.

9.  Defendant admits that a true and accurate unsigned copy of the February 19, 1999 contract entered into between WLS and himself is attached to the Complaint as Exhibit A. Defendant admits that the term of the contract began February 19, 1999 and expired on February 18, 2004. Defendant denies that this 1999 WLS contract has any relevance whatsoever to Plaintiff's claim for the attorney fees which are not related to this 1999 WLS contract.

10.  Defendant admits that Exhibit B to the Complaint is a true and accurate copy of

Defendant's wife's March 1, 1999 letter to Todd W. Musburger. Defendant denies each and every remaining allegation contained in paragraph 10 of the Complaint and denies that Exhibit B to the Complaint has any relevance whatsoever to Plaintiff's claim for attorney fees which are not related to the 1999 WLS contract.

11.     Defendant admits that September 2002 was approximately eighteen (18) months prior to the expiration date of Defendant's contract with WLS. Defendant admits that he and his wife, Cynthia Fircak instructed Todd W. Musburger to explore and investigate potential deals with competing broadcast outlets interested in his services. Defendant denies each and every remaining allegation contained in paragraph 11 of the Complaint.

12.     Defendant admits that he and Cynthia Fircak asked Todd W. Musburger to contact Roe Conn's agent, George Hiltzik and negotiate an agreement with him whereby Todd W. Musburger would take the lead with respect to the negotiations with WLS and other broadcast entities, and would negotiate on behalf of both Defendant and Roe Conn. Defendant denies each and every remaining allegation contained in paragraph 12 of the Complaint

13.     Defendant admits that Defendant and his wife sought to triple Defendant's salary and instructed Todd W. Musburger to negotiate with WLS for such an increase. Defendant denies each and every remaining allegation contained in paragraph 13 of the Complaint.

14.     Defendant admits that Todd W. Musburger agreed to investigate other possible arrangements with competing radio stations as bother an alternative to WLS and to generate competitive interest. Defendant admits that Todd W. Musburger communicated to Defendant and Cynthia Fircak that he could not guarantee such an increase. Defendant denies each and every

-4-

remaining allegation contained in paragraph 14 of the Complaint

15.     Defendant admits Todd W. Musburger contacted George Hiltzik who agreed to allow Todd W. Musburger to take the lead in negotiating a renewal contract for both Defendant and Roe Conn. Defendant denies each and every remaining allegation contained in paragraph 15 of the Complaint

16.     Defendant lacks personal knowledge of the amount of time spent by Todd W. Musburger, Ltd. in negotiating with WLS and other radio stations for a contract which was satisfactory to Defendant, to either admit or deny the allegations, and therefore demands strict proof thereof. Defendant denies that Todd W. Musburger, Ltd.'s negotiation was either aggressive or effective. Defendant lacks personal knowledge concerning the amount of time Todd W. Musburger Ltd. may have spent researching radio ratings and salaries for similar radio talk show hosts, developing presentations for WLS and other radio stations, meeting with WLS officials and other radio stations, and drafting various proposals for WLS, to either admit or deny the allegations, and therefore demands strict proof thereof. Defendant denies each and every remaining allegation contained in paragraph 16 of the Complaint.

17.     Defendant admits that by early September 2003, WLS had provided him with several contractual offers for renewal, none of which were acceptable to him. Defendant denies that WLS offered him a ten (10) year contract pursuant to which he would be paid over $12,000,000. Defendant admits that WLS's offers at various times provided for a five (5) year term, followed by optional successive three (3) year and two (2) year terms, each of which were terminable at WLS's option. Defendant denies each and every remaining allegation contained in paragraph 17 of the

Complaint.

18.　　Defendant admits that he instructed Todd W. Musburger, Ltd. to not meet with anyone or have further discussions concerning Defendant with anyone pending meeting with him. Defendant admits that he requested a meeting with Todd W. Musburger on September 23, 2004. Defendant denies the each and every remaining allegation contained in paragraph 18 of the Complaint.

19.　　Defendant admits that on September 22, 2003, he sent Todd W. Musburger a letter terminating Todd W. Musburger, Ltd. As his agent and legal representative. Defendant admits that Exhibit C to the Complaint is a true and accurate copy of this letter. Defendant admits that he accused Todd W. Musburger of breaching his attorney client privilege by speaking to Roe Conn's agent, George Hiltzik and with making untruthful statements. Defendant denies each and every remaining allegation contained in paragraph 19 of the Complaint.

20.　　Defendant admits that on January 23, 2004, Todd W. Musburger, Ltd. sent him an invoice in the amount of $92,750.00. Defendant admits that a true and accurate copy of the January 23, 2004 invoice is attached to the Complaint and marked as Exhibit D. Defendant denies each and every remaining allegation contained in paragraph 20 of the Complaint.

21.　　Defendant admits that he has refused to pay any portion of the $92,750.00 claimed by Todd W. Musburger, Ltd. Defendant admits that his attorney Michael Pedicone threatened to file counterclaims against Todd W. Musburger, Ltd. if an action was filed against Defendant to recover the $92,750.00 claimed. Defendant admits that Exhibit E to the Complaint is a true and accurate copy of Michael Pedicone's letter of February 27, 2004. Defendant denies each and every remaining

-6-

allegation contained in paragraph 21 of the Complaint.

22-27. Defendant neither admits nor denies the allegations contained in these paragraphs which were contained in Count I of the Complaint on the basis that such Count I has been dismissed.

## COUNT II
## QUANTUM MERUIT

28.     Defendant is not required to make further answer to this paragraph of Count II of the Complaint as he set forth is answers above, to paragraphs 1 through 21 of the Complaint.

29.     Defendant denies each and every allegation contained in paragraph 29 of the Complaint.

30.     Defendant denies each and every allegation contained in paragraph 30 of the Complaint.

31.     Defendant denies each and every allegation contained in paragraph 31 of the Complaint.

32.     Defendant denies each and every allegation contained in paragraph 32 of the Complaint.

## AFFIRMATIVE DEFENSE NO. 1

1.     The plaintiff "The Law Offices of Todd W. Musburger, Ltd." is not an Illinois corporation and, upon information and belief, is not a legal entity which has capacity to sue.

## AFFIRMATIVE DEFENSE NO. 2

2.     From February 6, 1998 until September 22, 2003, Todd W. Musburger, Ltd. was legally obligated to use its best efforts in locating other broadcast outlets that would be interested in Defendant's services, pursuant to the parties' 1998 Agreement.

3.    From February 6, 1998 until September 22, 2003, Todd W. Musburger was legally obligated to negotiate and draft Defendant's agreements in the entertainment fields of radio and television and to provide advice and counseling as needed by Defendant.

4.    Defendant fully paid Todd W. Musburger, Ltd., the sum of five (5%) percent of the gross amount of the 1999 WLS agreement which Todd W. Musburger, Ltd. negotiated on Defendant's behalf, as required by the parties' 1998 Agreement.

5.    Defendant fully paid Todd W. Musburger, Ltd. all expenses incurred on his behalf as required by the parties' 1998 Agreement.

6.    Defendant fully performed all of his obligations under the parties 1998 Agreement.

7.    The services which Todd W. Musburger, Ltd. claims that it provided to Defendant, and for which Todd W. Musburger Ltd. sent Defendant an invoice in the amount of $92,750.00 were required to have been provided to Defendant pursuant to the parties' 1998 Agreement.

8.    The parties' 1998 Agreement did not provide for additional compensation to Todd W. Musburger, Ltd. for the provision of services required to be performed by it thereunder.

## AFFIRMATIVE DEFENSE NO. 3

9.    At all times material hereto, Todd W. Musburger, Ltd. owed Defendant fiduciary duties of loyalty, confidentiality and honesty.

10.    In or about 2003, Defendant and Todd W. Musburger, Ltd. agreed that in addition to negotiating with WLS for a renewal of the agreement which would expire on February 18, 2004, Todd W. Musburger, Ltd. would pursue broadcasting opportunities for Defendant with WGN radio and WSCR radio in Chicago.

11.     At all times material hereto, Rule 1.7 of the Illinois Supreme Court's Rules for Professional Responsibility governing the conduct of attorneys provided as follows:

Rule 1.7. Conflict of Interest: General Rule

(a)     A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1)     the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2)     each client consents after disclosure.

(b)     A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1)     the lawyer reasonably believes the representation will not be adversely affected; and

(2)     the client consents after disclosure.

(c)     When representation of multiple clients in a single matter is undertaken, the disclosure shall include explanation of the implications of the common representation and the advantages and risks involved.

12.     At all times material hereto, Dan Bernstein was an afternoon sports talk show host at WSCR.

13.     At all times material hereto, Todd W. Musburger, Ltd. represented Dan Bernstein in connection with his engagement with WSCR and his interests in other broadcast outlets.

14.     Beginning in 2003, and at all times material hereto with respect to WSCR, Todd W. Musburger, Ltd.'s representation of Dan Bernstein was directly adverse to that of Defendant.

-9-

15.    At no time did Todd W. Musburger, Ltd. disclose to Defendant that it represented Dan Bernstein.

16.    At no time did Todd W. Musburger, Ltd. obtain Defendant's consent to the representation of Dan Bernstein.

17.    Todd W. Musburger, Ltd. did not reasonably believe that the representation of Dan Bernstein would not adversely affect the relationship with Defendant.

18.    Todd W. Musburger, Ltd.'s representation of Defendant was materially limited by Todd W. Musburger, Ltd.'s responsibilities to Dan Bernstein.

19.    Todd W. Musburger, Ltd.'s representation of Defendant was materially limited by Todd W. Musburger, Ltd.'s own financial interests attributable to maintaining Dan Bernstein at WSCR.

20.    On September 4, 2003, Todd W. Musburger, Ltd. sent a new fee agreement to Defendant which contained several new provisions, including the following language:

(a)    We may render similar services to others, including persons of the same general qualifications and eligibility for similar employment, and such representation shall not constitute a violation of our fiduciary or other obligations hereunder.

A true and accurate copy of that proposed fee agreement dated September 3, 2003 is attached hereto and incorporated herein as Exhibit F.

21.    At the time Todd W. Musburger, Ltd. sent Defendant Exhibit F, it failed to advised Defendant to obtain independent legal advice concerning said agreement,

notwithstanding that Todd W. Musburger Ltd. owed already Defendant fiduciary duties and the timing of the proposed agreement was coercive in the context of the negotiations with WLS radio.

22.     Defendant refused to sign Exhibit F.

23.     Upon information and belief, the tendering by Todd W. Musburger, Ltd. of the September 3, 2003 proposed fee agreement was related to Todd W. Musburger, Ltd.'s interest in representing afternoon on-air radio personality John Williams in connection with his contract renewal negotiations at WGN radio.

24.     Upon information and belief, Todd W. Musburger, Ltd. represented John Williams in connection with his engagement with WGN radio and his interests in other broadcast outlets.

25.     During the period that Todd W. Musburger, Ltd. represented both John Williams and Defendant, its representation of John Williams was directly adverse to that of Defendant.

26.     At no time did Todd W. Musburger, Ltd. disclose to Defendant that it represented John Williams.

27.     At no time did Todd W. Musburger, Ltd. obtain Defendant's consent to the representation of John Williams.

28.     Todd W. Musburger, Ltd. did not reasonably believe that the representation of John Williams in connection with WGN radio would not adversely affect the relationship with Defendant.

29.    Todd W. Musburger, Ltd.'s representation of Defendant was materially limited by Todd W. Musburger, Ltd.'s responsibilities to John Williams.

30.    Todd W. Musburger, Ltd.'s representation of Defendant was materially limited by Todd W. Musburger, Ltd.'s own financial interests attributable to maintaining John Williams at WGN Radio.

31.    Todd W. Musburger Ltd.'s representation of Dan Bernstein in connection with WSCR compromised its ability to effectively negotiate a radio deal with WSCR for Defendant.

32.    Such undisclosed and un-consented representation by Todd W. Musburger, Ltd. of Dan Bernstein constituted a conflict of interest and was a violation of the fiduciary duties owed to the Defendant.

33.    Todd W. Musburger Ltd.'s representation of John Williams in connection with WGN compromised its ability to effectively negotiate a radio deal with WGN for Defendant.

34.    Such undisclosed and un-consented representation by Todd W. Musburger, Ltd. of John Williams constituted a conflict of interest and was a violation of the fiduciary duties owed to the Defendant.

35.    The violations of these fiduciary duties owed to Defendant are so serious and damaging to Defendant's contract negotiations as to require the disgorgement of all fees which Todd W. Musburger, Ltd. received or claims it has a right to receive in connection with its representation of Defendant.

## AFFIRMATIVE DEFENSE NO. 4

36.     Defendant incorporates by reference, as if fully set forth herein, the allegations contained in paragraph 9 of his Affirmative Defense No. 3.

37.     In early August 2003, Todd W. Musburger, Ltd. received a written proposal from WLS for a contract renewal for Defendant ("August Proposal").

38.     Both Defendant and Todd W. Musburger, Ltd. were in agreement that WLS' proposal was a waste of time and unacceptable for a number of reasons.

39.     Shortly after having received this August Proposal, Defendant and Todd W. Musburger agreed that their negotiation strategy with WLS would include an absence of contact with Zemira Jones, the President and General Manager of WLS for the time being.

40.     Immediately prior to September 10, 2003, this strategy of avoiding contact with Zemira Jones concerning Defendant's renewal remained in effect.

41.     On September 10, 2003, Defendant telephoned attorney Todd W. Musburger and left a voice mail for him directing him to not meet with anyone or have any further discussions concerning his renewal matter until after he had an opportunity to personally meet with Todd W. Musburger. Defendant requested that such meeting be held on September 23, 2003. Defendant further instructed Todd W. Musburger that he should cancel any appointments which he may have already had in place with respect to his negotiations.

42.     Todd W. Musburger received the Defendant's voice mail in a timely manner.

43.     Upon information and belief, upon hearing Defendant's voice mail, Todd W. Musburger believed that Defendant was considering terminating the parties' professional

relationship.

44.    Upon information and belief, after hearing Defendant's email, Todd W. Musburger hastily arranged a meeting for September 11, 2003 with Zemira Jones and Mike Packer to discuss Defendant's renewal contract.

45.    Upon information and belief, Todd W. Musburger arranged this September 11, 2003 meeting to attempt to reach an agreement for renewal of Defendant's WLS contract prior to his being terminated.

46.    In arranging this September 11, 2003 meeting with Zemira Jones, Todd W. Musburger disregarded the explicit instructions of the Defendant communicated in the September 10, 2003 email.

47.    In arranging this September 11, 2003 meeting with Zemira Jones, Todd W. Musburger breached the fiduciary duties of honesty and loyalty which he owed Defendant.

48.    In arranging this September 11, 2003 meeting with Zemira Jones, Todd W. Musburger sought to benefit himself, while undermining the Defendant's negotiation strategy.

49.    On September 11, 2003, Todd W. Musburger prepared a letter to Defendant informing him as follows:

> "I am sorry that you feel the meetings and conversations that I have scheduled should not be pursued at this time.  Unfortunately, I have other business with Zemira Jones scheduled for today.   Although I cannot reschedule, I will inform him of your wishes."

50.    Upon information and belief, this September 11, 2003 letter contained knowingly

-14-

false statements that the meeting with Zemira was previously scheduled for business not relating to Defendant.

51.    Later in the day on September 11, 2003, Todd W. Musburger prepared an additional letter restating that:

> "we had a previously scheduled meeting today with Zemira and Mike Packer. It is evident that ABC is poised to finalize an agreement with us in the financial range that Garry is seeking. This would take the program to the highest level ever reached in Chicago radio."

52.    Upon information and belief, this second September 11, 2003 letter repeated the knowingly false statements that the meeting with Zemira was previously scheduled for business not relating to Defendant and contained the additional falsehood that ABC was poised to finalize an agreement in the financial range that the Defendant had been seeking.

53.    On September 12, 2003, Defendant sent Todd W. Musburger a letter emphasizing that having contact with Zemira undermined Defendant's negotiation strategy and was contradictory to Defendant's instructions.

54.    Defendant further requested in his letter as follows:

> "Once again, I am requesting that you refrain from meeting with or engaging in conversations with any of the parties involved with ABC or the interested competitors concerning my interests; that includes George Hiltzik. To the extent that contact is inadvertent or unavoidable, please inform the party that you are present that day to discuss only your other client's affairs and not mine."

55.    In response to Todd W. Musburger's September 11, 2003 letter in which he

sought to be fully compensated for his work to date, Defendant wrote him in his September 12, 2003 letter as follows:

> "I was unaware that you were entitled to any compensation in addition to that which you have been receiving, for the work which you have done to date. To the extent that you believe have such a right to compensation, please (a) explain in writing the basis for that position and (b) provide me with detailed records of time expended on my behalf with descriptions of the work performed. Kindly provide all of this to me sufficiently prior to our meeting on September 23rd so that I can carefully review it, if you are in fact able to meet with us on that date. At that time, we can discuss any remaining issues raised in your letter and the future, if any of our professional relationship."

56.    On September 13, 2003, Cynthia Fircak sent Todd Musburger an email reiterating Defendant's concern that Todd W. Musburger had disregarded his instructions and met with Zemira Jones at WLS.

57.    Cynthia Fircak also requested in her email that Todd W. Musburger provide Garry and her immediately with any written numbers which he received from Zemira Jones at his meeting.

58.    Cynthia Fircak also informed Todd W. Musburger in her email that Defendant did not want Todd W. Musburger to contact Zemira Jones to get written numbers if he did not already have them.

59.    Cynthia Fircak also requested Todd W. Musburger provide she and Defendant with an email setting forth in detail what occurred when he spoke with Zemira and Mike Packer on September 11, 2003. A true and correct copy of this September 13, 2003 email to Todd W.

-16-

Musburger is attached hereto as Exhibit G and incorporated herein.

60.    Upon information and belief, Todd W. Musburger again met with Zemira Jones and Mike Packer on September 18, 2003 to request new numbers in writing.

61.    Upon information and belief, Todd W. Musburger explained to Zemira Jones and Mike Packer that he was about to be fired and needed these new numbers on paper.

62.    Zemira Jones failed to provide Todd W. Musburger with the numbers he requested and Todd W. Musburger failed to reveal to Defendant that he engaged in a second meeting with Zemira Jones, contrary to Defendant's instructions.

63.    Upon information and belief, Defendant's conduct in conducting secret meetings with Zemira Jones, knowing that his client, Defendant had expressly forbid such discussions constitutes serious and repeated breaches of Todd W. Musburger's fiduciary duties of honest and loyalty to Defendant.

64.    As of September 22, 2003, Todd W. Musburger had failed to provide Defendant with any written numbers or email detailing what occurred at the September 11, 2003 meeting.

65.    As of September 22, 2003, Todd W. Musburger, Ltd. had failed to provide Defendant with the amount of attorney fees which he was seeking for his work performed to date.

66.    As of September 22, 2003, Todd W. Musburger, Ltd. had failed to provide any detailed records of time expended on Defendant's behalf with descriptions of the work performed.

-17-

67.    On September 22, 2003, Defendant terminated the services of Todd W. Musburger for breach of his fiduciary duties and dishonesty.

68.    As of the October 25, 2004, more than one year latter, Todd W. Musburger, Ltd. had failed to provide any detailed records of time expended on Defendant's behalf with descriptions of the work performed.

69.    The violations of these fiduciary duties greatly damaged Meier in the negotiation of a radio contract with WLS and other broadcast entities.

70.    The violations of these fiduciary duties owed to Defendant are so serious as to require the disgorgement of all fees which Todd W. Musburger, Ltd. received or claims it has a right to receive in connection with its representation of Defendant.

WHEREFORE, Defendant GARRY MEIER prays that this court enter an order dismissing Count II of the verified Complaint and awarding him costs.

## COUNTERCLAIM

Now comes Defendant-Counter Plaintiff, Garry Meier, by and through his attorneys, Michael A. Pedicone, Ltd., and as and for his Counterclaim against Todd W. Musburger, Ltd., d/b/a Law Offices of Todd W. Musburger, Ltd. states as follows:

## PARTIES

1.    Garry Meier ("Meier") is an on-air radio personality who most recently co-hosted an afternoon radio program known as the "Roe and Garry" show with Roe Conn ("Conn") on WLS-AM radio ("WLS")in Chicago, Illinois.  Meier last hosted the Roe and Garry show on

-18-

January 9, 2004. Meier has had a long and successful and award winning radio career in the Chicagoland area.

2.    Todd W. Musburger, Ltd. is an Illinois professional corporation organized for the purpose of the practice of law. It has done business as Law Offices of Todd W. Musburger, Ltd. Todd W. Musburger, Ltd. holds itself out as an entertainment law firm that focuses on negotiating and drafting personal services contracts for broadcasters, writers, performers and directors.

## JURISDICTION

3.    Jurisdiction over Todd W. Musburger, Ltd. exists pursuant to 735 ILCS 5/2-209(a)(11) because Todd W. Musburger breached one or more fiduciary duties within the State of Illinois and pursuant to 735 ILCS 5/2-209(a)(7) because Todd W. Musburger, Ltd. entered into a contract with Meier in Illinois, the performance of which was to occur within the State of Illinois.

## FACTUAL BACKGROUND

4.    In or about January 1998, while employed as an on-air radio personality at WLS-AM radio in Chicago, Meier met with Todd W. Musburger, the founder of Todd W. Musburger, Ltd, and requested that he serve as Meier's agent and attorney in connection with negotiating a renewal of Meier's agreement with WLS. Meier's WLS agreement was to expire on February 18, 1999.

5.    On February 6, 1998, Meier and Todd W. Musburger, Ltd. entered into a contract, (the "1998 Agreement") whereby Todd W. Musburger, Ltd. Agreed to provide its services as Meier's agent and exclusive legal representative for the negotiating and drafting of Meier's

-19-

agreements in the entertainment fields of radio and television. Todd W. Musburger Ltd. agreed to use its best efforts in locating other broadcast outlets that would be interested in Meier's services.

6.    In or about February 1999, the Meier entered into an agreement for his services with WLS.

7.    Defendant fully paid Todd W. Musburger, Ltd., the sum of five (5%) percent of the gross amount of the 1999 WLS agreement which Todd W. Musburger, Ltd. negotiated on Defendant's behalf, as required by the parties' 1998 Agreement. Defendant fully paid Todd W. Musburger, Ltd. all expenses incurred on his behalf as required by the parties' 1998 Agreement.

8.    In or about January 2003, Todd W. Musburger, Ltd. began work on Meier's anticipated contract negotiations with WLS. Meier's February 1999 agreement was to expire February 18, 2004.

<u>**COUNT I**</u>
<u>**BREACH OF FIDUCIARY DUTY**</u>

9.    At all times material hereto, Todd W. Musburger, Ltd. owed Defendant fiduciary duties of loyalty, confidentiality and honesty.

10.    In or about 2003, Defendant and Todd W. Musburger, Ltd. agreed that in addition to negotiating with WLS for a renewal of the agreement which would expire on February 18, 2004, Todd W. Musburger, Ltd. would pursue broadcasting opportunities for Defendant with WGN radio and WSCR radio in Chicago.

11.    At all times material hereto, Rule 1.7 of the Illinois Supreme Court's Rules for

-20-

Professional Responsibility governing the conduct of attorneys provided as follows:

Rule 1.7. Conflict of Interest: General Rule

(a)    A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

    (1)    the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

    (2)    each client consents after disclosure.

(b)    A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

    (1)    the lawyer reasonably believes the representation will not be adversely affected; and

    (2)    the client consents after disclosure.

(c)    When representation of multiple clients in a single matter is undertaken, the disclosure shall include explanation of the implications of the common representation and the advantages and risks involved.

12.    At all times material hereto, Dan Bernstein was an afternoon sports talk show host at WSCR.

13.    At all times material hereto, Todd W. Musburger, Ltd. represented Dan Bernstein in connection with his engagement with WSCR and his interests in other broadcast outlets.

14.    Beginning in 2003, and at all times material hereto with respect to WSCR, Todd W. Musburger, Ltd.'s representation of Dan Bernstein was directly adverse to that of Defendant.

15.    At no time did Todd W. Musburger, Ltd. disclose to Defendant that it represented Dan Bernstein.

16.    At no time did Todd W. Musburger, Ltd. obtain Defendant's consent to the representation of Dan Bernstein.

17.    Todd W. Musburger, Ltd. did not reasonably believe that the representation of Dan Bernstein would not adversely affect the relationship with Defendant.

18.    Todd W. Musburger, Ltd.'s representation of Defendant was materially limited by Todd W. Musburger, Ltd.'s responsibilities to Dan Bernstein.

19.    Todd W. Musburger, Ltd.'s representation of Defendant was materially limited by Todd W. Musburger, Ltd.'s own financial interests attributable to maintaining Dan Bernstein at WSCR.

20.    On September 4, 2003, Todd W. Musburger, Ltd. sent a new fee agreement to Defendant which contained several new provisions, including the following language:

    (a)    We may render similar services to others, including persons of the same general qualifications and eligibility for similar employment, and such representation shall not constitute a violation of our fiduciary or other obligations hereunder.

A true and accurate copy of that proposed fee agreement dated September 3, 2003 is attached hereto and incorporated herein as Exhibit F.

21.    At the time Todd W. Musburger, Ltd. sent Defendant Exhibit F, it failed to advised Defendant to obtain independent legal advice concerning said agreement, notwithstanding that

Todd W. Musburger Ltd. owed already Defendant fiduciary duties and the timing of the proposed agreement was coercive in the context of the negotiations with WLS radio.

22.     Defendant refused to sign Exhibit F.

23.     Upon information and belief, the tendering by Todd W. Musburger, Ltd. of the September 3, 2003 proposed fee agreement was related to Todd W. Musburger, Ltd.'s interest in representing afternoon on-air radio personality John Williams in connection with his contract renewal negotiations at WGN radio.

24.     Upon information and belief, Todd W. Musburger, Ltd. represented John Williams in connection with his engagement with WGN radio and his interests in other broadcast outlets.

25.     During the period that Todd W. Musburger, Ltd. represented both John Williams and Defendant, its representation of John Williams was directly adverse to that of Defendant.

26.     At no time did Todd W. Musburger, Ltd. disclose to Defendant that it represented John Williams.

27.     At no time did Todd W. Musburger, Ltd. obtain Defendant's consent to the representation of John Williams.

28.     Todd W. Musburger, Ltd. did not reasonably believe that the representation of John Williams in connection with WGN radio would not adversely affect the relationship with Defendant.

29.     Todd W. Musburger, Ltd.'s representation of Defendant was materially limited by Todd W. Musburger, Ltd.'s responsibilities to John Williams.

30.    Todd W. Musburger, Ltd.'s representation of Defendant was materially limited by Todd W. Musburger, Ltd.'s own financial interests attributable to maintaining John Williams at WGN Radio.

31.    Todd W. Musburger Ltd.'s representation of Dan Bernstein in connection with WSCR compromised its ability to effectively negotiate a radio deal with WSCR for Defendant.

32.    Such undisclosed and un-consented representation by Todd W. Musburger, Ltd. of Dan Bernstein constituted a conflict of interest and was a violation of the fiduciary duties owed to the Defendant.

33.    Todd W. Musburger Ltd.'s representation of John Williams in connection with WGN compromised its ability to effectively negotiate a radio deal with WGN for Defendant.

34.    Such undisclosed and un-consented representation by Todd W. Musburger, Ltd. of John Williams constituted a conflict of interest and was a violation of the fiduciary duties owed to the Defendant.

35.    In early August 2003, Todd W. Musburger, Ltd. received a written proposal from WLS for a contract renewal for Defendant ("August Proposal").

36.    Both Defendant and Todd W. Musburger, Ltd. were in agreement that WLS' proposal was a waste of time and unacceptable for a number of reasons.

37.    Shortly after having received this August Proposal, Defendant and Todd W. Musburger agreed that their negotiation strategy with WLS would include an absence of contact with Zemira Jones, the President and General Manager of WLS for the time being.

38.     Immediately prior to September 10, 2003, this strategy of avoiding contact with Zemira Jones concerning Defendant's renewal remained in effect.

39.     On September 10, 2003, Defendant telephoned attorney Todd W. Musburger and left a voice mail for him directing him to not meet with anyone or have any further discussions concerning his renewal matter until after he had an opportunity to personally meet with Todd W. Musburger. Defendant requested that such meeting be held on September 23, 2003. Defendant further instructed Todd W. Musburger that he should cancel any appointments which he may have already had in place with respect to his negotiations.

40.     Todd W. Musburger received the Defendant's voice mail in a timely manner.

41.     Upon information and belief, upon hearing Defendant's voice mail, Todd W. Musburger believed that Defendant was considering terminating the parties' professional relationship.

42.     Upon information and belief, after hearing Defendant's email, Todd W. Musburger hastily arranged a meeting for September 11, 2003 with Zemira Jones and Mike Packer to discuss Defendant's renewal contract.

43.     Upon information and belief, Todd W. Musburger arranged this September 11, 2003 meeting to attempt to reach an agreement for renewal of Defendant's WLS contract prior to his being terminated.

44.     In arranging this September 11, 2003 meeting with Zemira Jones, Todd W. Musburger disregarded the explicit instructions of the Defendant communicated in the September

-25-

10, 2003 email.

45.     In arranging this September 11, 2003 meeting with Zemira Jones, Todd W. Musburger breached the fiduciary duties of honesty and loyalty which he owed Defendant.

46.     In arranging this September 11, 2003 meeting with Zemira Jones, Todd W. Musburger sought to benefit himself, while undermining the Defendant's negotiation strategy.

47.     On September 11, 2003, Todd W. Musburger prepared a letter to Defendant informing him as follows:

> "I am sorry that you feel the meetings and conversations that I have scheduled should not be pursued at this time.  Unfortunately, I have other business with Zemira Jones scheduled for today.   Although I cannot reschedule, I will inform him of your wishes."

48.     Upon information and belief, this September 11, 2003 letter contained knowingly false statements that the meeting with Zemira was previously scheduled for business not relating to Defendant.

49.     Later in the day on September 11, 2003, Todd W. Musburger prepared an additional letter restating that:

> "we had a previously scheduled meeting today with Zemira and Mike Packer.  It is evident that ABC is poised to finalize an agreement with us in the financial range that Garry is seeking.  This would take the program to the highest level ever reached in Chicago radio."

50.     Upon information and belief, this second  September 11, 2003 letter repeated the knowingly false statements that the meeting with Zemira was previously scheduled for business not relating to Defendant and contained the additional falsehood that ABC was poised to finalize

-26-

an agreement in the financial range that the Defendant had been seeking.

51.    On September 12, 2003, Defendant sent Todd W. Musburger a letter emphasizing that having contact with Zemira undermined Defendant's negotiation strategy and was contradictory to Defendant's instructions.

52.    Defendant further requested in his letter as follows:

> "Once again, I am requesting that you refrain from meeting with or engaging in conversations with any of the parties involved with ABC or the interested competitors concerning my interests; that includes George Hiltzik. To the extent that contact is inadvertent or unavoidable, please inform the party that you are present that day to discuss only your other client's affairs and not mine."

53.    In response to Todd W. Musburger's September 11, 2003 letter in which he sought to be fully compensated for his work to date, Defendant wrote him in his September 12, 2003 letter as follows:

> "I was unaware that you were entitled to any compensation in addition to that which you have been receiving, for the work which you have done to date. To the extent that you believe have such a right to compensation, please (a) explain in writing the basis for that position and (b) provide me with detailed records of time expended on my behalf with descriptions of the work performed. Kindly provide all of this to me sufficiently prior to our meeting on September 23rd so that I can carefully review it, if you are in fact able to meet with us on that date. At that time, we can discuss any remaining issues raised in your letter and the future, if any of our professional relationship."

54.    On September 13, 2003, Cynthia Fircak sent Todd Musburger an email reiterating Defendant's concern that Todd W. Musburger had disregarded his instructions and met with Zemira Jones at WLS.

55.    Cynthia Fircak also requested in her email that Todd W. Musburger provide Garry

-27-

and her immediately with any written numbers which he received from Zemira Jones at his meeting.

56.     Cynthia Fircak also informed Todd W. Musburger in her email that Defendant did not want Todd W. Musburger to contact Zemira Jones to get written numbers if he did not already have them.

57.     Cynthia Fircak also requested Todd W. Musburger provide she and Defendant with an email setting forth in detail what occurred when he spoke with Zemira and Mike Packer on September 11, 2003. A true and correct copy of this September 13, 2003 email to Todd W. Musburger is attached hereto as Exhibit G and incorporated herein.

58.     Upon information and belief, Todd W. Musburger again met with Zemira Jones and Mike Packer on September 18, 2003 to request new numbers in writing.

59.     Upon information and belief, Todd W. Musburger explained to Zemira Jones and Mike Packer that he was about to be fired and needed these new numbers on paper.

60.     Zemira Jones failed to provide Todd W. Musburger with the numbers he requested and Todd W. Musburger failed to reveal to Defendant that he engaged in a second meeting with Zemira Jones, contrary to Defendant's instructions.

61.     Upon information and belief, Defendant's conduct in conducting secret meetings with Zemira Jones, knowing that his client, Defendant had expressly forbid such discussions constitutes serious and repeated breaches of Todd W. Musburger's fiduciary duties of honest and loyalty to Defendant.

-28-

62.    As of September 22, 2003, Todd W. Musburger had failed to provide Defendant with any written numbers or email detailing what occurred at the September 11, 2003 meeting.

63.    As of September 22, 2003, Todd W. Musburger, Ltd. had failed to provide Defendant with the amount of attorney fees which he was seeking for his work performed to date.

64.    As of September 22, 2003, Todd W. Musburger, Ltd. had failed to provide any detailed records of time expended on Defendant's behalf with descriptions of the work performed.

65.    On September 22, 2003, Defendant terminated the services of Todd W. Musburger for breach of his fiduciary duties and dishonesty.

66.    As of the October 25, 2004, more than one year latter, Todd W. Musburger, Ltd. had failed to provide any detailed records of time expended on Defendant's behalf with descriptions of the work performed.

67.    The violations of these fiduciary duties greatly damaged Meier in the negotiation of a radio contract with WLS and other broadcast entities.

68.    The violations of these fiduciary duties owed to Defendant are so serious as to require the disgorgement of all fees which Todd W. Musburger, Ltd. received or claims it has a right to receive in connection with its representation of Defendant.

WHEREFORE, Defendant-Counter Plaintiff, GARRY MEIER prays that this court enter judgment in favor of Defendant-Counter Plaintiff and against Plaintiff-Counter Defendant Todd W. Musburger, Ltd., d/b/a Law Offices of Todd W. Musburger, Ltd. in an amount in excess of the jurisdictional limit of the Law Division of the Circuit Court of Cook County.

-29-

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

71.    Defendant-Counter Plaintiff Garry Meier incorporates by reference as if fully set forth herein, the allegations contained in paragraphs 1 through 71 of this Complaint.

72.    Subsequent to the termination of the services of Todd W. Musburger on September 22, 2003, Meier relied upon his wife, Cynthia Fircak to negotiate with WLS and other broadcast entities for an agreement following the expiration of the 1999 WLS agreement.

73.    As of April 1, 2004, Meier continued to be in sensitive and difficult contract negotiations with WLS, WGN and WSCR.

74.    On April 1, 2004, Plaintiff-Counter Defendant Todd W. Musburger Ltd.  filed a complaint against Meier in the Circuit Court of Cook County seeking payment of legal fees claimed to have been incurred in connection with the negotiation of a broadcast agreement intended to be effective following the expiration of Meier's 1999 WLS agreement.

75.    Plaintiff-Counter Defendant Todd W. Musburger, Ltd. attached as Exhibit A to its Complaint, a complete copy of Meier's 1999 WLS contract, thereby making public the financial terms and conditions of his recently expired broadcast agreement.

76.    Exhibit A was a confidence and secret of Meier's, the disclosure of which violated Meier's attorney-client privilege and was prohibited from disclosure by Illinois Supreme Court Rules of Professional Conduct.

77.    The disclosure of Exhibit A was not necessary to establish or collect the fee sought

-30-

by Todd W. Musburger, Ltd.

78.    Todd W. Musburger's conduct in attaching Exhibit A to his complaint was extreme and outrageous.

79.    Meier suffered severe emotional distress by having his confidences made public.

80.    Todd W. Musburger knew that severe emotional distress was certain or substantially certain to result from such conduct.

WHEREFORE, Defendant-Counter Plaintiff, GARRY MEIER prays that this court enter judgment in favor of Defendant-Counter Plaintiff and against Plaintiff-Counter Defendant Todd W. Musburger, Ltd., d/b/a Law Offices of Todd W. Musburger, Ltd. in an amount in excess of the jurisdictional limit of the Law Division of the Circuit Court of Cook County.

## COUNT III
## PUBLIC DISCLOSURE OF PRIVATE FACTS

81.    Defendant-Counter Plaintiff Garry Meier incorporates by reference as if fully set forth herein, the allegations contained in paragraphs 1 through 81 of this Complaint.

82.    The filing of the complaint by Todd W. Musburger, Ltd. resulted in widespread publicity in both the Chicago Tribune and Chicago Suntimes newspapers immediately.

83.    Upon information and belief, Todd W. Musburger, Ltd., or its agents informed news media representatives of the filing of the complaint.

84.    The disclosures made in Exhibit A to the Complaint were private and not public facts.

-31-

85.     The disclosure of contents of Exhibit A to the public would be highly offensive to a reasonable person.

86.     Meier was damaged by the public release of his private information.

WHEREFORE, Defendant-Counter Plaintiff, GARRY MEIER prays that this court enter judgment in favor of Defendant-Counter Plaintiff and against Plaintiff-Counter Defendant Todd W. Musburger, Ltd., d/b/a Law Offices of Todd W. Musburger, Ltd. in an amount in excess of the jurisdictional limit of the Law Division of the Circuit Court of Cook County.

## A TRIAL BY JURY IS DEMANDED

Respectfully submitted,

By: _____

Attorney for Garry Meier

Michael A. Pedicone

MICHAEL A. PEDICONE, LTD.

30 North Michigan Avenue

Suite 1201

Chicago, Illinois 60602

312/726-4570

Atty. No.: 11502

-32-

## VERIFICATION

I, Garry Meier, the undersigned, certify under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, that the statements set forth in this Answer, Affirmative Defenses and Amended Counterclaim are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Date: January 19, 2005

_____
Garry Meier